# Exhibit A

| 2120 - Served | 2121 - Served |
|---|---|
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| SUMMONS | ALIAS - SUMMONS |

(2/28/11) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, _____CHANCERY_____ DIVISION

No. 2014CH00937
CALENDAR/ROOM 14
Hangtime, Inc. 00:00
Class Action
c/o Incorporating Services, Ltd.

3600 South Dupont Highway, Dover, Delaware 19901

ZACHARY GOODMAN, individually and on behalf of all others similarly situated,
(Name all parties)

v.

HANGTIME, INC., a Delaware corporation

## ⊙ SUMMONS ◯ ALIAS SUMMONS

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

⊙ Richard J. Daley Center, 50 W. Washington, Room ___802___, Chicago, Illinois 60602

◯ District 2 - Skokie       ◯ District 3 - Rolling Meadows       ◯ District 4 - Maywood
5600 Old Orchard Rd.        2121 Euclid                          1500 Maybrook Ave.
Skokie, IL 60077            Rolling Meadows, IL 60008            Maywood, IL 60153

◯ District 5 - Bridgeview   ◯ District 6 - Markham               ◯ Child Support
10220 S. 76th Ave.         16501 S. Kedzie Pkwy.                28 North Clark St., Room 200
Bridgeview, IL 60455       Markham, IL 60428                    Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 44146

Name: Edelson PC

Atty. for: Plaintiff Zachary Goodman

Address: 350 North LaSalle Street, Suite 1300

City/State/Zip: Chicago, Illinois 60654

Telephone: (312) 589-6370

WITNESS DOROTHY BROWN JAN 1 6 2014

_Dorothy Brown_
Clerk of Court

Date of service: 1/21/14
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____
                                                        (Area Code)   (Facsimile Telephone Number)

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| ZACHARY GOODMAN, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff,*<br><br>v.<br><br>HANGTIME, INC., a Delaware corporation,<br><br>    *Defendant.* | Case No. |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Zachary Goodman ("Goodman") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Hangtime, Inc. ("Hangtime") to stop its practice of making unauthorized promotional text message calls to the cellular telephones of consumers nationwide, and to obtain redress for all persons injured by its conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1.  Defendant operates an online social networking service. In an attempt to promote its mobile application, Defendant made (or directed to be made on its behalf) unauthorized promotional text message calls to the cellular telephones of consumers throughout the country—without prior consent—in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

2.  Neither Plaintiff nor any other member of the putative Class has ever provided Defendant with their cellular telephone numbers, let alone provided it with consent to send them promotional text messages.

1.

3.     By making the unauthorized promotional text message calls at issue, Defendant caused Plaintiff and the members of the Class actual harm, including the aggravation and nuisance, as well as the invasion of privacy, that necessarily accompanies the receipt of unsolicited and harassing text message calls and the monies paid to their wireless carriers for the receipt of such text message calls.

4.     On behalf of himself and the putative Class, Plaintiff seeks an injunction requiring Defendant to cease all unauthorized text message call activities alleged herein and an award of statutory damages to Plaintiff and the other members of the putative Class, together with costs and reasonable attorneys' fees.

## PARTIES

5.     Plaintiff Zachary Goodman is natural person and citizen of the State of Illinois.

6.     Defendant Hangtime, Inc. is a corporation incorporated in and existing under the laws of the State of Delaware with its principal place of business located at 520 Townsend Street, Suite 300, San Francisco, California 94103. Defendant does business throughout Cook County, the State of Illinois, and the United States.

## JURISDICTION AND VENUE

7.     The Court has personal jurisdiction over this action pursuant to 735 ILCS 5/2-209(a) because Defendant conducts business transactions in this State, committed tortious acts within this State, and because Defendant made unauthorized text message calls to Plaintiff in this State.

8.     Venue is proper because Defendant conducts business transactions in Cook County, the causes of action at issue arose in substantial part in Cook County, and Plaintiff Goodman resides in Cook County.

## FACTUAL BACKGROUND

9.     In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and e-mail have increasingly looked to alternative technologies through which to send bulk correspondence cheaply. As such, many marketers have turned to disseminating advertisements or promotions through mass SMS[1] messages.

10.     An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

11.     Given the relatively low cost associated with sending bulk SMS messages, mobile app developers—such as Hangtime—have turned to this form of advertising in order to promote their services (and in turn, build their user bases).

12.     In attempt to market its mobile app and grow its user base, Hangtime engaged in this especially pernicious form of advertising. The details of the campaign are straightforward: each time a user registered for Hangtime on their mobile device (such as a cell phone), Hangtime would "scrape" the cell phone numbers stored in its users' address books and automatically send pre-programmed promotional text messages *en masse* to such contacts encouraging them to download its application.

13.     For instance, on or around January 15, 2014, Defendant made (or caused to be made) a promotional text message call to Plaintiff Goodman's cellular telephone.

14.     The text message call originated from a phone number—"(415) 815-3839"—that

---

[1]     A "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.

Plaintiff did not recognize. The body of the text message (the "Hangtime Promotional Text")
read:

> [Name of Hangtime user][2] shared
> events with you on
> Hangtime http://
> hangti.me/[hyperlink to Hangtime's website][3]

15.     Each Hangtime Promotional Text received by Plaintiff and the other putative
Class members were substantially similar in that they all contained a direct hyperlink to
Defendant's website, wherein it encouraged consumers to download Defendant's mobile app.
These hyperlinks were not specific to the recipient; rather, they directed every recipient to
Defendant's main webpage at http://www.hangti.me.

16.     Tellingly, if consumers, including Plaintiff or the other putative Class members,
navigated to the hyperlink contained in the Hangtime Promotional Text —to see what the
purported sender of the text message call supposedly wanted to "share" with them—the effect of
Defendant's text message marketing campaign becomes apparent. That is, after consumers
clicked on the hyperlink, Defendant would immediately direct them to its webpage (which, at all
times relevant, it owned, created, and controlled), wherein the consumer is urged to download
Defendant's mobile application.

17.     Defendant created the promotional text message program at issue, and maintained
control over the manner and means by which such text messages were sent.

18.     Defendant made these unauthorized text message calls to consumers to solicit

---

[2]     It's also important to note that the phone number that the message was sent from did not
belong to the Hangtime user who's name appeared in the text message at issue.

[3]     The name of the Hangtime user that appeared in the body of the text message has been
redacted, along with the hyperlink to Hangtime's website, as it reveals an unrelated consumer's
confidential information.

them to register for its service.

19.     Because these text messages are unsolicited and unexpected invasions of personal privacy, they have led to significant backlash from consumers.[4]

20.     Plaintiff and other putative Class members did not consent to, request, or otherwise desire or permit Defendant to transmit or make any promotional text message calls to their cellular telephones, including the Hangtime Promotional Text. Defendant does not seek to obtain consent of the recipients to be part of its service, nor is any Hangtime user required or prompted to demonstrate the consent of individuals in his or her address book to receive promotional messages, or, for that matter, even agree to gain the consent of the those individuals members before text message calls are sent to the them. A consumer's participation in the promotional text messages is "opt-out," meaning that a consumer receives the text messages before ever being given the chance to consent to receive them.

21.     Moreover, none of the promotional text message calls made by Defendant provided Plaintiff or the other putative Class members with an reasonable opportunity to opt out of receiving future promotional text message calls.

22.     The promotional text message calls alleged herein were not made by any other individual consumer, but instead, were solely made by Defendant. In fact, Hangtime users (from which the text messages are supposedly sent from) do not draft or create the Hangtime Promotional Text, are never provided with an opportunity to view or edit the Hangtime

---

[4]  *See, e.g.,* https://getsatisfaction.com/hangtime/topics/hangtime_sms_textmessage_spam (last accessed January 16, 2014); https://www.apptweak.com/hangtime-events/iphone/united-states/app-store-optimization-aso/reviews-ratings/worst/all-versions/570448129#.UtXX5WRDvjA (last accessed January 16, 2014); http://vhattheydontteachyouatstanfordbusinessschool.wordpress.com /2013/12/15/hangtime-app-spam-415-815-0365/ (last accessed January 16, 2014); https://itunes. apple.com/us/app/hangtime-events-parties-festivals/id570448129?mt=8 (last accessed January 16, 2014).

Promotional Text, have no knowledge that the Hangtime Promotional Text is being sent, and do not take any affirmative action to send the Hangtime Promotional Text.

23.    Defendant made, or had made on its behalf, the same (or substantially the same) text message calls *en masse* to thousands of cellular telephone numbers throughout the United States.

24.    In making the Hangtime Promotional Texts at issue in this Complaint, Defendant utilized an automatic telephone dialing system. Specifically, the hardware and software used by Defendant (or its agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention).

25.    Defendant was and is aware that these above described Hangtime Promotional Texts were and are being made without the prior express of the recipients to receive them.

## CLASS ALLEGATIONS

26.    **Class Definition.** Plaintiff Goodman brings this action pursuant to 735 ILCS 5/2-801 on behalf of himself and a Class of similarly situated individuals, defined as follows:

All persons in the United States who received the Hangtime Promotional Text. Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons whose claims in this matter have

6

been finally adjudicated on the merits or otherwise released, and (5) the legal representatives, successors, or assigns of any such excluded person.

27. **Numerosity**. The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendant has made unauthorized promotional text message calls to thousands of consumers who fall into the definition of the Class. Class members can be identified through Defendant's records.

28. **Commonality and Predominance**. There are many questions of law and fact common to the claims of Plaintiff and the other putative Class members, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    (a)    whether Defendant's conduct violates the TCPA;

    (b)    whether the equipment Defendant used to make the Hangtime Promotional Texts was capable of dialing phone numbers from a list without human intervention;

    (c)    whether the equipment Defendant used to make the Hangtime Promotional Texts had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers;

    (d)    whether the equipment Defendant used to make the Hangtime Promotional Texts was an automatic telephone dialing system as contemplated by the TCPA;

    (e)    whether members of the Class provided their prior express consent to receive the Hangtime Promotional Texts; and

    (e)    whether Class members are entitled to treble damages based on the

willfulness of Defendant's conduct.

29.     **Adequate Representation.** Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

30.     **Appropriateness.** This case is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The injuries suffered by the individual members of the Class are likely to have been relatively small compared to the burden and expense of individual prosecution of the litigation necessitated by Defendant's actions. Absent a class action, it would be difficult, if not impossible, for the individual members of the Class to obtain effective relief from Defendant. Even if members of the Class themselves could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties and the Court and require duplicative consideration of the legal and factual issues presented herein. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

31.     Plaintiff reserves the right to revise the foregoing class allegations and class definition based on facts learned in discovery.

## FIRST CAUSE OF ACTION
### Violation of 47 U.S.C. § 227
### (On Behalf of Plaintiff and the Class)

32.    Plaintiff incorporates the foregoing allegations as if fully alleged herein.

33.    Defendant made unsolicited text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the Class *en masse* without their prior express consent.

34.    Defendant and/or its agents made the Hangtime Promotional Text call using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. Defendant and/or its agents utilized equipment that made, text message calls to Plaintiff and other members of the Class simultaneously and without human intervention. The telephone dialing equipment utilized by Defendant and/or its agent, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner.

35.    By making, or having made on its behalf, the unsolicited Hangtime Promotional Texts to Plaintiff and the Class, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's unlawful conduct, Plaintiff and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited text message calls on their cellular phones and under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

36.    Because Defendant's misconduct was willful and knowing, the Court may, pursuant to section 227(b)(3), treble the amount of statutory damages recoverable by the Plaintiff

and the other members of the putative Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Zachary Goodman, on behalf of himself and the Class, respectfully requests that this Court enter an order:

A.      Certifying this case as a class action on behalf of the Class defined above, appointing Zachary Goodman as Class Representative, and appointing his counsel as Class Counsel;

B.      An award of actual and statutory damages;

C.      An injunction requiring Defendant to cease all unauthorized text message activities, and otherwise protecting the interests of Plaintiff and the Class;

D.      An award of reasonable attorneys' fees and costs; and

E.      Such other and further relief that the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted,

ZACHARY GOODMAN, individually and on behalf of all others similarly situated,

Dated: January 16, 2014

By: _____
One of Plaintiff's Attorneys

Rafey S. Balabanian
rbalabanian@edelson.com
Ari J. Scharg
ascharg@edelson.com
John C. Ochoa
jochoa@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

ZACHARY GOODMAN, individually and on
behalf of all others similarly situated,

                                Plaintiff,

v.

HANGTIME, INC., a Delaware corporation,

                                Defendant.

Case No.: *2014 CH 00957*

## PLAINTIFF'S MOTION FOR AND MEMORANDUM
## IN SUPPORT OF CLASS CERTIFICATION

Plaintiff Zachary Goodman ("Goodman"), by and through his undersigned counsel,

hereby respectfully moves the Court for an Order certifying this case as a class action pursuant to

Section 2-801 of the Illinois Code of Civil Procedure ("Section 2-801"), but requests that the

Court enter and continue the instant motion until after the completion of discovery on class wide

issues, at which time Plaintiff will submit a fulsome memorandum of points and authorities in

support of class certification.[1]

## I.    INTRODUCTION.

This matter presents a textbook case for class certification. In an effort to promote its

online social networking service and mobile application, Defendant Hangtime, Inc.

("Hangtime") sent (or directed to be sent on its behalf) potentially thousands of unsolicited text

message advertisements to the cellular telephones of consumers nationwide—including Plaintiff

---

[1]     Plaintiff filed this motion at the outset of the litigation to prevent Defendant from
attempting a so-called "buy off" to moot his representative claims (*i.e.*, tendering to him the full
amount of his individual damages alleged in his Class Action Complaint and Demand for Jury
Trial ("Complaint")). *See Barber v. Am. Airlines, Inc.*, 241 Ill. 2d 450, 459 (2011); *see also
Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011). Under Illinois law, "a named
plaintiff who files a motion for class certification *prior* to a defendant's tender may avoid a
mootness determination, at least until after the circuit court rules on the motion for class
certification." *Barber*, 662 F.3d at 459 n.1.

1

Goodman—in violation of the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*.

("TCPA"). The messages were virtually identical—they all contained a pre-written promotional

advertisement for Hangtime. Additionally, the messages were transmitted by Hangtime in the

exact same manner—through the use of automated telephone dialing equipment—and without

the prior express consent of Plaintiff or the other members of the putative Class, and none of

whom provided Hangtime with their telephone numbers. Likewise, the injuries suffered by

Plaintiff and the putative Class as a result of Defendant's conduct are identical. That is, each

member of the putative Class was subjected to the aggravation and nuisance that necessarily

accompanies the receipt of unsolicited text messages and were required to pay monies to their

wireless carriers for the receipt of such messages, thus entitling them to a nearly identical

calculation of actual and statutory damages under the TCPA.

   For these reasons, and as discussed further herein, the proposed Class readily satisfies

each of the prerequisites under Section 2-801. As such, the instant motion should be granted in

its entirety. Notwithstanding, Plaintiff respectfully requests that the Court (1) enter and reserve

ruling on Plaintiff's Motion for and Memorandum in Support of Class Certification; (2) allow for

and schedule discovery to take place on class-wide issues; (3) grant Plaintiff leave to file a

supplemental memorandum in support of his Motion for Class Certification upon the conclusion

of class-wide discovery; (4) grant Plaintiff's Motion for Class Certification after full briefing of

the issues presented herein; and, (5) provide all other and further relief that the Court deems

reasonable and just.

## II.  FACTUAL BACKGROUND.

### A.  Facts Applicable to All Members of the Putative Class.

   Plaintiff filed his Complaint in this Court on January 16, 2014, alleging claims on behalf

of himself and a nationwide class of individuals seeking relief from Defendant's violations of the TCPA. According to the Complaint, in an attempt to promote its service, Defendant sent (or directed to be sent on its behalf) unsolicited text message advertisements to Plaintiff's and the other putative Class member's cellular telephones. (Compl. ¶¶ 11-25.) Defendant did not, however, obtain prior express consent from the Plaintiff or the other putative Class members to send the text messages. (*Id.* ¶¶ 20-21.) Defendant sent the messages to Plaintiff and the other members of the Class using equipment that had the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. (*Id.* ¶¶ 24, 34.)

The messages themselves were virtually identical. (*Id.* ¶ 23.) Each consisted of a message promoting Hangtime—and contained a hyperlink to a website owned and operated by Hangtime and/or its agents (the "Hangtime Promotional Text"). (*Id.* ¶¶ 14-16.)

**B.      Facts Specific to Plaintiff Zachary Goodman.**

Plaintiff Goodman is just one of potentially thousands of consumers nationwide who received an unsolicited text message from Defendant. (*Id.* ¶ 13.) Specifically, on or around January 15, 2014, Plaintiff's cell phone received the following text message from a phone number that he did not recognize ((415) 815-3839):

> [Name of Hangtime user] shared
> events with you on
> Hangtime http://
> hangti.me/[hyperlink to Hangtime's website][2]

(*Id.* ¶ 14.) The URL led to a website owned and operated by Hangtime that urged individuals to download its mobile application. (*Id.* ¶¶ 15-16.) At no time did Plaintiff ever consent to the

---

[2]      The name of the Hangtime user that appeared in the body of the text message has been redacted, along with the hyperlink to Hangtime's website, as it reveals an unrelated consumer's confidential information.

receipt of such text message calls from Hangtime. (*Id.* ¶ 20.)

### C.    The Proposed Class.

As a result of Defendant's conduct described above, Plaintiff brought the instant lawsuit and now seeks certification of a nationwide class of individuals (the "Class"), defined as follows:

All persons in the United States who received the Hangtime Promotional Text.

As demonstrated below, the proposed Class meets each of Section 2-801's prerequisites to certification and therefore, the instant motion should be granted in its entirety.

## III.   THE PROPOSED CLASS SATISFIES EACH OF THE REQUIREMENTS FOR CERTIFICATION.

Certifying a class in Illinois requires the plaintiff to establish that: "(1) [t]he class is so numerous that joinder of all members is impracticable[;] (2) [t]here are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members[;] (3) [t]he representative parties will fairly and adequately protect the interest of the class[; and] (4) [t]he class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801.

In determining whether to certify a proposed class, the Court need not decide whether the plaintiff will ultimately prevail on the merits. *See Chultem v. Ticor Title Ins. Co.*, 401 Ill. App. 3d 226, 237 (1st Dist. 2010) (citing *Cruz v. Unilock Chicago*, 892 N.E.2d 78, 91-92 (Ill. App. 2d Dist. 2008)) (finding that an issue that goes to the merits of the underlying actions "is not appropriate to be considered when examining the propriety of class certification"). Rather, the Court should accept as true the allegations in the complaint, *Ramirez v. Midway Moving & Storage, Inc.*, 378 Ill. App. 3d 51, 53 (1st Dist. 2007) (quoting *Clark v. TAP Pharm. Prods., Inc.*, 343 Ill. App. 3d 538, 544-45 (5th Dist. 2003)), and "should err in favor of maintaining class [certifications]." *Id.* (quoting *Clark*, 343 Ill App. 3d at 545). Though the plaintiff bears the

burden of establishing all four of the prerequisites for maintenance of a class action under 735

ILCS 5/2-801, *S37 Mgmt., Inc. v. Advance Refrigeration Co.*, 961 N.E.2d 6, 10 (Ill. App. Ct. 1st

Dist. 2011) (citation omitted), as described below, that burden is not a high hurdle here.

**A.    The Putative Class Likely Consists of Thousands of Members and Therefore Readily Satisfies the Numerosity Requirement.**

The first step in certifying a class is showing that "[t]he class is so numerous that joinder

of all members is impracticable." 735 ILCS 5/2-801(1). This requirement is met when joining

"such a large number of plaintiffs in a single suit would render the suit unmanageable and, in

contrast, multiple separate claims would be an imposition on the litigants and the courts."

*Gordon v. Boden*, 224 Ill. App. 3d 195, 200 (1st Dist. 1991) (citing *Steinberg v. Chi. Med. Sch.*,

69 Ill. 2d 320, 337 (1977)). "Plaintiffs need not demonstrate a precise figure for the class size,

because a good-faith, nonspeculative estimate will suffice." *Unilock Chicago*, 892 N.E.2d at 97.

Generally, "[t]he court is permitted to make common-sense assumptions that support a finding of

numerosity." *Maxwell v. Arrow Fin. Servs., LLC*, 2004 WL 719278, at *2 (N.D. Ill. Mar. 31,

2004); *see also* 3 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 7.20, 66 (4th

ed. 2001).

Here, Plaintiff alleges—and believes discovery will show—that Defendant has sent

unsolicited text messages to thousands of individuals throughout the country. (Compl. ¶¶ 1, 12,

19, 23, 27.) An allegation that the proposed class consists of more than a thousand members

provides "ample basis" to support the conclusion that the class is so numerous that joinder of all

members is impracticable. *Carrao v. Health Care Serv. Corp.*, 118 Ill. App. 3d 417, 427 (1st

Dist. 1983); *see also Tassan v. United Dev. Co.*, 88 Ill. App. 3d 581, 594 (1st Dist. 1980)

(finding more than 150 potential claimants would satisfy numerosity); *Kulins v. Malco, A*

*Microdot Co., Inc.*, 121 Ill. App. 3d 520, 530 (1st Dist. 1984) (finding even 35 class members

could satisfy numerosity). Further, joinder of the Class member's claims would be impracticable because their claims are small relative to the resources necessary to prosecute this litigation. As such, absent a class action few individuals could afford to bring an individual lawsuit over the amounts at issue. *See Gordon*, 224 Ill. App. 3d at 204.

Accordingly, the proposed Class satisfies the numerosity requirement.[4]

**B.**     **The Proposed Class Shares Common Questions of Law and Fact that Predominate Over Any Individual Issues.**

Section 2-801's second prerequisite requires that there are "questions of fact or law common to the class" and that those questions "predominate over any questions affecting only individual members." 735 ILCS 5/2-801(2). Common questions of law or fact are typically found to exist when the members of a proposed class have been aggrieved by the same or similar misconduct. *See Miner v. Gillette Co.*, 87 Ill. 2d 7, 17 (1981); *Steinberg*, 69 Ill. 2d at 341; *McCarthy v. LaSalle Nat'l Bank & Trust Co.*, 230 Ill. App. 3d 628, 634 (Ill. Ct. App. 1992). After common questions of law or fact have been identified, these common questions must also predominate over any issues affecting only individual class members. *See O-Kay Shoes, Inc. v. Rosewell*, 129 Ill. App. 3d 405, 408 (Ill. Ct. App. 1984). Ultimately, commonality is a relatively low and easily surmountable hurdle. *See Scholes v. Stone, McGuire, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citing Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131-132 (2009)).

The claims of Plaintiff and the Class in this case are based upon the same common

---

[4]     To the extent the Court requires additional details regarding the number of members in the Class, such information may be obtained from Defendant's records through discovery.

contention: that Hangtime violated the proscriptions of the TCPA by sending unsolicited text message advertisements *en masse* to their cellular telephones, despite the fact that they did not authorize it to do so. (Compl. ¶¶ 11, 12, 20-23, 28.) Defendant sent the text messages systematically and its conduct affected Plaintiff and the Class members in a virtually identical manner (*e.g.*, subjecting them to the aggravation and usage fees associated with the receipt of such messages) (*Id.* ¶¶ 3, 28.) Moreover, Defendant's unlawful conduct will be proven through the use of common and generalized evidence applicable to each of the Class as a whole.

Defendant's conduct gives rise to several factual questions common to all Class members, including: (1) whether the equipment Defendant used to make the Hangtime Promotional Texts was capable of dialing phone numbers from a list without human intervention; (2) whether the equipment Defendant used to make the Hangtime Promotional Texts had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers; and (3) whether Defendant obtained proposed Class members' consent to send such text messages. (*Id.* ¶ 28.)

Those common factual questions also lead to several legal questions common to the Class, including: (1) whether Defendant's conduct violates the TCPA; (2) whether the equipment Defendant used to make the Hangtime Promotional Texts was an automatic telephone dialing system as contemplated by the TCPA; and (3) whether Class members are entitled to treble damages based on the willfulness of Defendant's conduct. (*Id.*)

Accordingly, Section 2-801's commonality and predominance requirements are met.

**C.      Plaintiff and His Counsel are Adequate Representatives and Have No Conflicts with the Class.**

The third prerequisite of Section 2-801 requires that "[t]he representative parties will fairly and adequately protect the interest of the class." 735 ILCS 5/2-801(3). This means a

plaintiff must be able to maintain an individual cause of action against the defendant and cannot be seeking relief that is potentially antagonistic to the other class members. *Purcell & Wardrope Chtd. v. Hertz Corp.*, 175 Ill. App. 3d 1069, 1078 (1st Dist. 1988); *Ramirez v. Smart Corp.*, 371 Ill. App. 3d 797, 810 (3d Dist. 2007). In addition, plaintiff's counsel must be "qualified, experienced and generally able to conduct the proposed litigation." *Steinberg*, 69 Ill. 2d at 339 (quoting *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968), *rev'd on other grounds*, 417 U.S. 156 (1974)). This ensures "that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." *Gordon*, 224 Ill. App. 3d at 203 (citations omitted).

In this case, Goodman has the same interests as members of the proposed Class—he received an unauthorized text message from Defendant on his cellular phone as a result of Defendant's uniform course of unlawful conduct. (Compl. ¶¶ 11-25.) Therefore, like the other members of the Class, his interests lie in ensuring that Defendant's unlawful conduct does not continue in the future and that he and the other members of the Class recover the statutory damages and injunctive relief to which they are entitled. (*Id.* ¶¶ 4, 29, 33-36.) Plaintiff has no interests antagonistic to those of the other members of the Class. (*Id.* ¶ 29.)

Additionally, Plaintiff's counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have had extensive experience in consumer class actions involving issues of similar or greater size, scope, and complexity as the instant action. (*See* Declaration of Ari J. Scharg ["Scharg Decl."] at ¶ 3, a true and accurate copy of which is attached as Exhibit 1; *see also* Firm Resume of Edelson PC, a true and accurate copy of which is attached to Scharg Decl. as Exhibit 1-A); *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987) (finding persuasive that proposed class counsel had been found

adequate in past cases). To date, proposed class counsel have also diligently investigated and

dedicated substantial resources to the claims in this action, and they will continue to do so

throughout its pendency. (Scharg Decl. ¶ 4.) And, with respect to specific experience handling

class actions of this sort, class counsel have in the past and are currently prosecuting numerous

class actions involving certain social networking company's alleged violations of the TCPA.

(*Id.*); *see, e.g., Sterk v. Path, Inc.*, No. 1:13-cv-02330 (N.D. Ill.); *Coffman v. Glide Talk, Ltd.*, No.

1:13-cv-05190 (N.D. Ill.).

Accordingly, both Plaintiff and his counsel satisfy (and exceed) the adequacy

requirement.

> ### D. This Class Action is the Most Appropriate Method to Adjudicate the Claims at Issue.

The final prerequisite for class certification is met where "[t]he class action is an

appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-

801(4). "In applying this prerequisite in a particular case, a court considers whether a class

action: (1) can best secure the economies of time, effort and expense, and promote uniformity; or

(2) accomplish the other ends of equity and justice that class actions seek to obtain." *Gordon*,

224 Ill. App. 3d at 203 (citation omitted). In practice, a "holding that the first three prerequisites

of section 2-801 are established makes it evident that the fourth requirement is fulfilled." *Id.* at

204; *Purcell and Wardrope Chtd.*, 175 Ill. App. 3d at 1079 ("the predominance of common

issues [may] make a class action . . . a fair and efficient method to resolve the dispute.").

Additionally, a "controlling factor in many cases is that the class action is the only practical

means for class members to receive redress...." *Gordon*, 224 Ill. App. 3d at 203; *Eshaghi v.*

*Hanley Dawson Cadillac Co.*, 214 Ill. App. 3d 995, 1004 (Ill. App. Ct. 1991) ("In a large and

impersonal society, class actions are often the last barricade of consumer protection.").

Under the circumstances of this case, a class action is the most appropriate method to fairly and efficiently adjudicate the claims at issue. The injuries suffered by individual members of the Class are relatively small compared to the burden and expense of individual prosecution of the litigation necessitated by Defendant's conduct. (Compl. ¶ 30.) Absent a class action, members of the Class would likely not obtain relief from Defendant, and Defendant would continue to send unsolicited promotional text messages to consumers nationwide. (*Id.*) Thus, a class action is appropriate because it would be difficult, if not impossible, for the individual Class members to obtain effective relief. Likewise, the fact that Section 2-801's numerosity, commonality and predominance, and adequacy requirements have been satisfied, further demonstrates the appropriateness of proceeding with this case as a class action.

Accordingly, Section 2-801's final prerequisite is satisfied and the proposed Class warrants certification.

## IV.   CONCLUSION.

For the foregoing reasons, Plaintiff Zachary Goodman, individually and on behalf of the proposed Class, respectfully requests that the Court (1) enter and reserve ruling on Plaintiff's Motion and Memorandum in Support of Class Certification; (2) allow for and schedule discovery to take place on class-wide issues; (3) grant Plaintiff leave to file a supplemental memorandum in support of his Motion for Class Certification upon the conclusion of class-wide discovery; (4) grant Plaintiff's Motion for Class Certification after full briefing of the issues presented herein; and, (5) provide all other and further relief that the Court deems reasonable and just.

Respectfully submitted,

**ZACHARY GOODMAN**, individually and on
behalf of all others similarly situated,

Dated: January 16, 2014          By: _____

One of Plaintiff's Attorneys

Rafey S. Balabanian
rbalabanian@edelson.com
Ari J. Scharg
ascharg@edelson.com
John C. Ochoa
jochoa@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
Firm I.D.: 44146

# Exhibit 1

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| ZACHARY GOODMAN, individually and on behalf of all others similarly situated, | Case No.: |
| *Plaintiff,* | |
| v. | |
| HANGTIME, INC., a Delaware corporation, | |
| *Defendant.* | |

**DECLARATION OF ARI J. SCHARG IN SUPPORT OF PLAINTIFF'S
MOTION FOR AND MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION**

I, Ari J. Scharg, pursuant to Section 1-109 of the Illinois Code of Civil Procedure, hereby

declare as follows:

1.    I am a Partner at the law firm of Edelson PC, which has been retained to represent

Plaintiff Zachary Goodman ("Goodman") in this matter. I am an adult over the age of 18 and I

am fully competent to make this Declaration. I have personal knowledge of all matters set forth

herein. If called upon to testify as to the matters stated herein, I could and would competently do

so. I make this Declaration in support of Plaintiff's Motion for and Memorandum in Support of

Class Certification.

2.    Attached as Exhibit 1-A is a true and accurate copy of the Firm Resume of

Edelson PC ("Firm Resume").

3.    As shown in the Firm Resume, my firm has regularly engaged in major complex

litigation, and has extensive experience in consumer class actions involving issues of similar or

greater size, scope, and complexity as the instant action.

4.    To date, my firm has diligently investigated and dedicated substantial resources to

1

the claims in this action, and we will continue to do so throughout its pendency. In fact, with respect to specific experience handling class actions of this sort, my firm has in the past and is also currently prosecuting numerous class actions involving certain social networking company's alleged violations of the TCPA.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 16th day of January 2014 at Chicago, Illinois.

Ari J. Scharg

# Exhibit 1-A

### EDELSON PC FIRM RESUME

EDELSON PC is a plaintiff's class action and commercial litigation firm with attorneys in Illinois, Colorado and California.

Our attorneys have been recognized as leaders in these fields by state and federal legislatures, national and international media groups, the courts, and our peers. Our reputation for leadership in class action litigation has led state and federal courts to appoint us lead counsel in many high-profile class action suits, including privacy class actions involving comScore, Netflix, Time, Microsoft, and Facebook, numerous Telephone Consumer Protection Act ("TCPA") against companies such as Google, Twentieth Century Fox, and Simon & Schuester, class actions against Citibank, Wells Fargo, and JP Morgan Chase related to reductions in home equity lines of credit, fraudulent marketing cases against software companies such as Symantec, mobile content class actions against all major cellular telephone carriers, the Thomas the Tank Engine lead paint class actions, and the tainted pet food litigation. We have testified before the United States Senate on class action issues and have repeatedly been asked to work on federal and state legislation involving cellular telephony, privacy and other issues. Our attorneys have appeared on dozens of national and international television and radio programs to discuss our cases and class action and consumer protection issues more generally. Our attorneys speak regularly at seminars on consumer protection and class action issues, lecture on class actions at law schools and are asked to serve as testifying experts in cases involving class action and consumer issues.

## PLAINTIFFS' CLASS AND MASS ACTION PRACTICE GROUP

EDELSON PC is a leader in plaintiffs' class and mass action litigation, with a particular emphasis on consumer technology class actions, and has been called a "class action 'super firm'". (Decalogue Society of Lawyers, Spring 2010.) As recognized by federal courts nationwide, our firm has an "extensive histor[y] of experience in complex class action litigation, and [is a] well-respected law firm[] in the plaintiffs' class action bar." *In re Pet Food Prod. Liab. Litig.*, MDL Dkt. No. 1850, No. 07-2867 (NLH) (D.N.J. Nov. 18, 2008). A leading arbitrator concurred: "The proof of [the firm's] experience, reputation, and abilities is extraordinary. . . . Each [of their cases] elaborates on the experience and unique success [they] have had in achieving leading roles in the area of 'technology consumer protection class actions.'" (Arbitration award in mobile content class action settlement, August 6, 2009)

In appointing our firm interim co-lead in one of the most high profile cases in the country, a federal court pointed to our ability to be "vigorous advocates, constructive problem-solvers, and civil with their adversaries." - *In Re JPMorgan Chase Home Equity Line of Credit Litig.*, No. 10 C 3647 (N.D. Ill, July 16, 2010). After hard fought litigation, that case settled, resulting in the reinstatement of between $3.2 billion and $4.7 billion in home credit lines.

We have been specifically recognized as "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue." *In re Facebook Privacy Litig.*, No. C 10-02389 (N.D. Cal) (order appointing the firm interim co-lead of privacy class action); see also In re Netflix Privacy Litigation, 5:11-cv-00379 (N.D. Cal. Aug. 12, 2011) (appointing the sole lead counsel due, in part, to its "significant and particularly

specialized expertise in electronic privacy litigation and class actions[.]")

Similarly, as recognized by a recent federal court, our firm has "pioneered the application of the TCPA to text-messaging technology, litigating some of the largest consumer class actions in the country on this issue." *Ellison v Steve Madden, Ltd.,* cv 11-5935 PSG (C.D. Cal. May 7, 2013).

We have several sub-specialties within our plaintiffs' class action practice:

*Privacy/Data Loss*

### Data Loss/Unauthorized Disclosure of Data

We have litigated numerous class actions involving issues of first impression against Facebook, Apple, Netflix, Sony, Red Box, Pandora, Sears, Storm 8, Google, T-Mobile, Microsoft and others involving the failure to protect customers' private information, security breaches, and unauthorized sharing of personal information with third parties. Representative settlements and ongoing cases include:

- *Dunstan v. comScore, Inc.,* No. 11-cv-5807: Lead counsel in certified class action accusing internet analytics company of improper data collection practices.

- *Resnick v. Avmed,* No. 10-cv-24513 (S.D. Fla.): Lead counsel in data breach case filed against health insurance company. Obtained landmark appellate decision endorsing common law unjust enrichment theory, irrespective of whether identity theft occurred.

- *In re Netflix Privacy Litigation,* No. 5:11-cv-00379 (N.D. Cal.): Sole lead counsel in suit alleging that defendant violated the Video Privacy Protection Act by illegally retaining customer viewing information. Case resulted in a $9 million dollar cy pres settlement that has been finally approved (pending appeal).

- *Halaburda v. Bauer Publishing Co.* 12-CV-12831 (E.D. Mich.), *Grenke v. Hearst Communications, Inc.,* 12-CV-14221 (E.D. Mich.), *Fox v. Time, Inc.,* 12-CV-14390 (E.D. Mich.) Consolidated actions brought under Michigan's Video Rental Privacy Act, alleging unlawful disclosure of subscribers' personal information. In a ground-breaking decision, the court denied three motions to dismiss finding that the magazine publishers were covered by the act and that the illegal sale of personal information triggers an automatic $5,000 award to each aggrieved consumer.

- *Standiford v. Palm,* No. 5:09-cv-05719-LHK (N.D. Cal.): Sole lead counsel in data loss class action, resulting in $640,000 settlement.

- *In re Zynga Privacy Litigation,* 10-cv-04680 (N.D. Cal.): Appointed co-lead counsel in suit against gaming application designer for the alleged

unlawful disclosure of its users' personally identifiable information to advertisers and other third parties.

- *In re Facebook Privacy Litigation*, 10-cv-02389 (N.D. Cal.): Appointed co-lead counsel in suit alleging that Facebook unlawfully shared its users' sensitive personally identifiable information with Facebook's advertising partners.

- *In re Sidekick Litig.*, No. C 09-04854-JW (N.D. Cal.): Co-lead counsel in cloud computing data loss case against T-Mobile and Microsoft. Settlement provided the class with potential settlement benefits valued at over $12 million.

- *Desantis v. Sears*, 08 CH 00448 (Cook County, IL): Lead counsel in injunctive settlement alleging national retailer allowed purchase information to be publicly available through the internet.

## Telephone Consumer Protection Act

Edelson has been at the forefront to TCPA litigation for over six years, having secured the groundbreaking *Satterfield* ruling in the Ninth Circuit applying the TCPA to text messages. In addition to numerous settlements totaling over $100 million in relief to consumers, we have over two dozen putative TCPA class actions pending against companies including Santander Consumer USA, Inc., Walgreen Co., Path, Inc., Nuance Communications, Inc., Stonebridge Life Insurance, Inc., UnitedHealth Group, Inc., GEICO, DirectBuy, Inc., and RCI, Inc. Representative settlements and ongoing cases include:

- *Rojas v CEC*, No. 1:10-cv-05260 (N.D. Ill): Lead counsel in text spam class action that settled for $19,999,400.

- *In re Jiffy Lube Int'l Text Spam Litig*, No. 11-md-2261, 2012 WL 762888 (S.D. Cal. March 9, 2012): Co-lead counsel in $35 million text spam settlement.

- *Ellison v Steve Madden, Ltd.*, cv 11-5935 PSG (C.D.Cal.): Lead counsel in $10 million text spam settlement.

- *Kramer v. B2Mobile, et al*, No. 0-cv-02722-CW (N.D. Cal.): Lead counsel in $12.2 million text spam settlement.

- *Pimental v. Google, Inc.*, No. 11-cv-02585 (N.D.Cal.): Lead counsel in class action alleging that defendant co-opted group text messaging lists to send unsolicited text messages. $6 million settlement provides class members with an unprecedented $500 recovery.

- *Robles v. Lucky Brand Dungarees, Inc.*, No. 10-cv-04846 (N.D.Cal.).

Lead counsel in $10 million text spam settlement.

- *Miller v. Red Bull*, No. 12-CV-04961 (N.D. Ill.) Lead counsel in preliminary approved $6 million settlement.

- *Woodman et al v. ADP Dealer Services, et al.*, 2013 CH 10169 (Cook County, IL) Lead counsel in $7.5 million text spam settlement.

- *Lozano v. 20th Century Fox*, No. 09-cv-05344 (N.D. Ill): Lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers. Case settled for $16 million.

- *Satterfield v. Simon & Schuster*, No. C 06 2893 CW (N.D. Cal.). Co-lead counsel in in $10 million text spam settlement.

- *Weinstein, et al. v. Airit2me, Inc.*, Case No. 06 C 0484 (N.D. Ill): Co-lead counsel in $7 million text spam settlement.

### *Consumer Technology*

#### Fraudulent Software

In addition to the settlements listed below, Edelson PC has consumer fraud cases pending in courts nationwide against companies such as McAfee, Inc., Avanquest North America Inc., PC Cleaner, AVG, iolo Technologies, LLC, among others. Representative settlements include:

- *Drymon v. Cyberdefender*, No. 11 CH 16779 (Cook County, IL): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $9.75 million.

- *Gross v. Symantec Corp., et al.*, No. 3:12-cv-00154-CRB (N.D. Cal.) Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $11 million.

- *LaGarde, et al. v. Support.com, Inc., et al.* (N.D. Cal.) Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $8.59 million.

- *Ledet v. Ascentive LLC* (E.D. Pa.) Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $9.6 million.

- *Webb, et al. v. Cleverbridge, Inc.*, et al. (N.D. Ill.) Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $5.5 million.

### Video Games

Edelson PC has litigated cases video game related cases against Activision Blizzard Inc., Electronic Arts, Inc., Google, and Zenimax Media, Inc., and has active litigation pending, including:

- *Locke v. Sega of America*, 13-cv-01962-MEJ (N.D. Cal.) Pending putative class action alleging that Sega of America and Gearbox Software released video game trailer that falsely represented the actual content of the game.

## *Mortgage & Banking*

EDELSON PC has been at the forefront of class action litigation arising in the aftermath of the federal bailouts of the banks. Our suits include claims that the certain banks unlawfully suspended home credit lines based on pre-textual reasons, and that certain banks have failed to honor loan modification programs. We achieved the first federal appellate decision in the country recognizing the right of borrowers to enforce HAMP trial plans under state law. The court noted that "Prompt resolution of this matter is necessary not only for the good of the litigants but for the good of the Country." *Wigod v. Wells Fargo Bank*, N.A., 673 F.3d 547, 586 (7th Cir. 2012) (Ripple, J., concurring). Our settlements have restored billions of dollars in home credit lines to people throughout the country. Representative cases and settlements include:

- *In re JP Morgan Chase Bank Home Equity Line of Credit Litig.*, 10-cv-3647 (N.D. Ill.): Court appointed interim co-lead counsel in nationwide putative class action alleging illegal suspensions of home credit lines. Settlement restored between $3.2 billion and $4.7 billion in credit to the class.

- *Hamilton v. Wells Fargo Bank, N.A.*, 4:09-cv-04152-CW (N.D. Cal.). Lead counsel in class actions challenging Wells Fargo's suspensions of home equity lines of credit. Nationwide settlement restores access to over $1 billion in credit and provides industry leading service enhancements and injunctive relief.

- *In re Citibank HELOC Reduction Litigation*, 09-CV-0350-MMC. Lead counsel in class actions challenging Citibanks's suspensions of home equity lines of credit. The settlement restored up to $653,920,000 worth of credit to affected borrowers.

- *Wigod v. Wells Fargo*, No. 10-cv-2348 (N.D. Ill.): In ongoing putative class action, obtained first appellate decision in the country recognizing the right of private litigants to sue to enforce HAMP trial plans.

### *General Consumer Protection Class Actions*

We have successfully prosecuted countless class action suits against computer software companies, technology companies, health clubs, dating agencies, phone companies, debt collectors, and other businesses on behalf of consumers. In addition to the settlements listed below, Edelson PC has consumer fraud cases pending in courts nationwide against companies such as Motorola Mobility, Stonebridge Benefit Services, J.C. Penney, Sempris LLC, and Plimus, LLC. Representative settlements include:

### Mobile Content

We have prosecuted over 100 cases involving mobile content, settling numerous nationwide class actions, including against industry leader AT&T Mobility, collectively worth over a hundred million dollars.

- *McFerren v. AT&T Mobility, LLC*, No. 08-CV-151322 (Fulton County Sup. Ct., GA): Lead counsel class action settlement involving 16 related cases against largest wireless service provider in the nation. "No cap" settlement provided virtually full refunds to a nationwide class of consumers who alleged that unauthorized charges for mobile content were placed on their cell phone bills.

- *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cook County, Illinois): Lead counsel in class action settlement involving 27 related cases alleging unauthorized mobile content charges. Case settled for $36 million.

- *Gray v. Mobile Messenger Americas, Inc.*, No. 08-CV-61089 (S.D. Fla.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Case settled for $12 million.

- *Parone v. m-Qube, Inc.* No. 08 CH 15834 (Cook County, Illinois): Lead counsel in class action settlement involving over 2 dozen cases alleging the imposition of unauthorized mobile content charges. Case settled for $12.254 million.

- *Williams, et al. v. Motricity, Inc. et al.*, Case No. 09 CH 19089 (Cook County, Illinois): Lead counsel in class action settlement involving 24 cases alleging the imposition of unauthorized mobile content charges. Case settled for $9 million.

- *VanDyke v. Media Breakaway, LLC*, No. 08 CV 22131 (S.D. Fla.): Lead counsel in class action settlement alleging unauthorized mobile content charges. Case settled for $7.6 million.

- *Gresham v. Cellco Partnership*, No. BC 387729 (Los Angeles Sup. Ct.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills. Settlement provided class members with full refunds.

- *Abrams v. Facebook, Inc.*, No. 07-05378 (N.D. Cal.): Lead counsel in injunctive settlement concerning the transmission of allegedly unauthorized mobile content.

## Deceptive Marketing

- *Van Tassell v. UMG*, No. 1:10-cv-2675 (N.D. Ill): Lead counsel in negative option marketing class action. Case settled for $2.85 million.

- *McK Sales Inc. v. Discover Bank*, No. 1:10-cv-02964 (N.D. Ill): Lead counsel in class action alleging deceptive marketing aimed at small businesses. Case settled for $6 million.

- *Farrell v. OpenTable*, No 3:11-cv-01785-si (N.D. Cal.): Lead counsel in gift certificate expiration case. Settlement netted class over $3 million in benefits.

- *Ducharme v. Lexington Law*, No. 10-cv-2763-crb (N.D. Cal): Lead counsel in CROA class action. Settlement resulted in over $6 million of benefits to the class.

- *Pulcini v. Bally Total Fitness Corp.*, No. 05 CH 10649 (Cook County, IL): Co-lead counsel in four class action lawsuits brought against two health clubs and three debt collection companies. A global settlement provided the class with over $40 million in benefits, including cash payments, debt relief, and free health club services.

- *Kozubik v. Capital Fitness, Inc.*, 04 CH 627 (Cook County, IL): Co-lead counsel in state-wide suit against a leading health club chain, which settled in 2004, providing the over 150,000 class members with between $11 million and $14 million in benefits, consisting of cash refunds, full debt relief, and months of free health club membership.

- *Kim v. Riscuity*, No. 06 C 01585 (N.D. Ill): Co-lead counsel in suit against a debt collection company accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with full debt relief and return of all money collected.

- *Jones v. TrueLogic Financial Corp.*, No. 05 C 5937 (N.D. Ill): Co-lead counsel in suit against two debt collectors accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with approximately $2 million in debt relief.

- *Fertelmeyster v. Match.com*, No. 02 CH 11534 (Cook County, IL): Co-lead counsel in a state-wide class action suit brought under Illinois consumer protection statutes. The settlement provided the class with a collective award with a face value in excess of $3 million.

- *Cioe v. Yahoo!, Inc.*, No. 02 CH 21458 (Cook County, IL): Co-lead counsel in a state-wide class action suit brought under state consumer protection statutes. The settlement provided the class with a collective award with a face value between $1.6 million and $4.8 million.

- *Zurakov v. Register.com*, No. 01-600703 (New York County, NY): Co-lead counsel in a class action brought on behalf of an international class of over one million members against Register.com for its allegedly deceptive practices in advertising on "coming soon" pages of newly registered Internet domain names. Settlement required Register.com to fully disclose its practices and provided the class with relief valued in excess of $17 million.

### Products Liability Class Actions

We have been appointed lead counsel in state and federal products liability class settlements, including a $30 million settlement resolving the "Thomas the Tank Engine" lead paint recall cases and a $32 million settlement involving the largest pet food recall in the history of the United States and Canada. Representative settlements include:

- *Barrett v. RC2 Corp.*, No. 07 CH 20924 (Cook County, IL): Co-lead counsel in lead paint recall case involving Thomas the Tank toy trains. Settlement is valued at over $30 million and provided class with full cash refunds and reimbursement of certain costs related to blood testing.

- *In re Pet Food Products Liability Litig.*, No. 07-2867 (D. N.J.): Part of mediation team in class action involving largest pet food recall in United States history. Settlement provided $24 million common fund and $8 million in charge backs.

### Insurance Class Actions

We have prosecuted and settled multi-million dollar suits against J.C. Penney Life Insurance for allegedly illegally denying life insurance benefits under an unenforceable policy exclusion and against a Wisconsin insurance company for terminating the health insurance policies of groups of self-insureds. Representative settlements include:

- *Holloway v. J.C. Penney*, No. 97 C 4555, (N.D. Ill.): One of the primary attorneys in a multi-state class action suit alleging that the defendant illegally denied life insurance benefits to the class. The case settled in or around December of 2000, resulting in a multi-million dollar cash award to the class.

- *Ramlow v. Family Health Plan* (Wisc. Cir. Ct., WI): Co-lead counsel in a class action suit challenging defendant's termination of health insurance to groups of self-insureds. The plaintiff won a temporary injunction, which was sustained on appeal, prohibiting such termination and eventually

settled the case ensuring that each class member would remain insured.

### Mass/Class Tort Cases

Our attorneys were part of a team of lawyers representing a group of public housing residents in a suit based upon contamination related injuries, a group of employees exposed to second hand smoke on a riverboat casino, and a class of individuals suing a hospital and national association of blood banks for failure to warn of risks related to blood transfusions. Representative settlements include:

- *Aaron v. Chicago Housing Authority*, 99 L 11738, (Cook County, IL): Part of team representing a group of public housing residents bringing suit over contamination-related injuries. Case settled on a mass basis for over $10 million.

- *Januszewski v. Horseshoe Hammond*, No. 2:00CV352JM (N.D. Ind.): Part of team of attorneys in mass suit alleging that defendant riverboat casino caused injuries to its employees arising from exposure to second-hand smoke.

The firm's cases regularly receive attention from local, national, and international media. Our cases and attorneys have been reported in the Chicago Tribune, USA Today, the Wall Street Journal, the New York Times, the LA Times, by the Reuters and UPI news services, and BBC International. Our attorneys have appeared on numerous national television and radio programs, including ABC World News, CNN, Fox News, NPR, and CBS Radio, as well as television and radio programs outside of the United States. We have also been called upon to give congressional testimony and other assistance in hearings involving our cases.

## GENERAL COMMERCIAL LITIGATION

Our attorneys have handled a wide range of general commercial litigation matters, from partnership and business-to-business disputes, to litigation involving corporate takeovers. We have handled cases involving tens of thousands of dollars to "bet the company" cases involving up to hundreds of millions of dollars. Our attorneys have collectively tried hundreds of cases, as well as scores of arbitrations and mediations.

## OUR ATTORNEYS

JAY EDELSON is the founder and Managing Partner of EDELSON PC. He has been recognized as a leader in class actions, technology law, corporate compliance issues and consumer advocacy by his peers, the media, state and federal legislators, academia and courts throughout the country.

Jay has been appointed lead counsel in numerous state, federal, and international class actions, resulting in hundreds of millions of dollars for his clients. He is regularly asked to weigh in on federal and state legislation involving his cases. He testified to the U.S. Senate about the largest pet food recall in the country's history and is advising state and federal politicians on consumer issues relating to the recent federal bailouts, as well as technology issues, such as those involving mobile marketing. Jay also counsels companies on legal compliance and legislative issues in

addition to handling all types of complex commercial litigation.

Jay has litigated class actions that have established precedent concerning the ownership rights of domain name registrants, the applicability of consumer protection statutes to Internet businesses, and the interpretation of numerous other state and federal statutes including the Telephone Consumer Protection Act and the Video Privacy Protection Act. As lead counsel, he has also secured settlement in cases of first impression involving Facebook, Microsoft, AT&T and countless others, collectively worth hundreds of millions of dollars.

In addition to technology based litigation, Jay has been involved in a number of high-profile "mass tort" class actions and product recall cases, including cases against Menu Foods for selling contaminated pet food, a $30 million class action settlement involving the Thomas the Tank toy train recall, and suits involving damages arising from second-hand smoke.

In 2009, Jay was named one of the top 40 Illinois attorneys under 40 by the Chicago Daily Law Bulletin. In giving Jay that award, he was heralded for his history of bringing and winning landmark cases and for his "reputation for integrity" in the "rough and tumble class action arena." In the same award, he was called "one of the best in the country" when it "comes to legal strategy and execution." Also in 2009, Jay was included in the American Bar Association's "24 hours of Legal Rebels" program, where he was dubbed one of "the most creative minds in the legal profession" for his views of associate training and firm management. In 2010, he was presented with the Annual Humanitarian Award in recognition of his "personal integrity, professional achievements, and charitable contributions" by the Hope Presbyterian Church. Starting in 2011, he has been selected as an Illinois Super Lawyer and, separately, as a top Illinois class action lawyer by Benchmark Plaintiff.

Jay is frequently asked to participate in legal seminars and discussions regarding the cases he is prosecuting, including serving as panelist on national symposium on tort reform and, separately, serving as a panelist on litigating high-profile cases. He has also appeared on dozens of television and radio programs to discuss his cases. He has taught classes on class action law at Northwestern Law School and The John Marshall Law School, and has co-chaired a 2-day national symposium on class action issues. He has been an adjunct professor, teaching a seminar on class action litigation at Chicago-Kent College of Law since 2010.

Jay is a graduate of Brandeis University and the University of Michigan Law School.

**RYAN D. ANDREWS** is a Partner at EDELSON PC, and the Chair of the Telecommunications Practice Group. Mr. Andrews has been appointed class counsel in numerous state and federal class actions nationwide that have resulted in nearly $100 million dollars in refunds to consumers, including *Satterfield v. Simon & Schuster, Inc.*, No. C 06 2893 CW (N.D. Cal.), *Gray v. Mobile Messenger Americas, Inc.*, No. 08-CV-61089 (S.D. Fla.), *Lofton v. Bank of America Corp.*, No. 07-5892 (N.D. Cal.), *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cook County, Ill.), *Parone v. m-Qube, Inc.* No. 08 CH 15834 (Cook County, Ill.), and *Kramer v. Autobytel, Inc.*, No. 10-cv-2722 (N.D. Cal. 2010).

In addition, Mr. Andrews has achieved groundbreaking court decisions protecting consumers through the application of the Telephone Consumer Protection Act to emerging text-messaging

technology. Representative reported decisions include: Lozano v. Twentieth Century Fox, 702 F. Supp. 2d 999 (N.D. Ill. 2010), *Satterfield v. Simon & Schuster, Inc.* 569 F.3d 946 (9th Cir. 2009), and *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010), *In re Jiffy Lube Int'l Text Spam Litig*, --- F. Supp. 2d ---, No. 11-md-2261, 2012 WL 762888 (S.D. Cal. March 9, 2012).

Mr. Andrews received his J.D. with High Honors from the Chicago-Kent College of Law and was named Order of the Coif. Recently, Mr. Andrews has returned to Chicago-Kent as an Adjunct Professor of Law, teaching a third-year seminar on Class Actions. While in law school, Mr. Andrews was a Notes & Comments Editor for The Chicago-Kent Law Review, as well as a teaching assistant for both Property Law and Legal Writing courses. Mr. Andrews externed for the Honorable Joan B. Gottschall in the United State District Court for the Northern District of Illinois.

A native of the Detroit area, Mr. Andrews graduated from the University of Michigan, earning his B.A., with distinction, in Political Science and Communications.

Mr. Andrews is licensed to practice in Illinois state courts, the United States District Court for the Northern District of Illinois, the U.S. Court of Appeals for the Seventh Circuit, and the U.S. Court of Appeals for the Ninth Circuit.

**RAFEY S. BALABANIAN** is a Partner and the Chair of the Corporate Governance and Business Litigation Practice Group. Rafey's practice focuses upon a wide range of complex consumer class action litigation, as well as general business litigation.

On the plaintiff's side, Rafey has been appointed lead counsel in numerous class actions, including landmark settlements involving the telecom industry worth hundreds of millions of dollars. Rafey has been appointed Class Counsel in nationwide class action settlements against the major wireless carriers, aggregators, and providers of "mobile content," including *Van Dyke v. Media Breakaway, LLC*, No. 08-cv-22131 (S.D. Fla.); *Parone v. m-Qube, Inc.*, 08 CH 15834 (Cir. Ct. Cook County, Ill.); *Williams v. Motricity, Inc.*, et al., No. 09 CH 19089 (Cir. Ct. Cook County, Ill.); and *Walker v. OpenMarket, Inc., et al.*, No. 08 CH 40592 (Cir. Ct. Cook County, Ill.).

On the business side, Rafey has counseled clients ranging from "emerging technology" companies, real estate developers, hotels, insurance companies, lenders, shareholders and attorneys. He has successful litigated numerous multi-million dollar cases, including several "bet the company" cases.

Rafey has first chaired jury and bench trials, mediations, and national and international arbitrations.

Rafey received his J.D. from the DePaul University College of Law in 2005. While in law school, he received a certificate in international and comparative law. Rafey received his B.A. in History, with distinction, from the University of Colorado – Boulder in 2002.

**CHRISTOPHER L. DORE** is a Partner at Edelson and a member of the Technology and Fraudulent Marketing Group. Chris focuses his practice on emerging consumer technology issues, with his cases relating to online fraud, deceptive marketing, consumer privacy, negative option membership enrollment, and unsolicited text messaging. Chris is also a member of the firm's Incubation and Startup Development Group wherein he consults with emergent businesses.

Chris has been appointed class counsel in multiple class actions, including one of the largest text-spam settlements under the Telephone Consumer Protection Act, ground breaking issues in the mobile phone industry and fraudulent marketing, as well as consumer privacy. (*Pimental v. Google, Inc.*, No. 11-cv-02585 (N.D.Cal.); *Kramer v. Autobytel, Inc.* (10-cv-02722-CW); *Turner v. Storm8, LLC*, (09-cv-05234) (N.D. Cal.); Standiford v Palm, Inc. (09-cv-05719-LHK) (N.D. Cal.); and *Espinal v Burger King Corporation*, (09-20982) (S.D. Fla.)). In addition, Chris has achieved groundbreaking court decisions protecting consumer rights. Representative reported decisions include: *Claridge v. RockYou, Inc.* 785 F.Supp.2d 855 (N.D. Cal.), *Kramer v. Autobytel, Inc.*, 759 F.Supp.2d 1165 (N.D. Cal.), and *Van Tassell v. United Marketing Group, LLC*, 795 F.Supp.2d 770 (N.D.Ill.). In total, his suits have resulted in hundreds of millions of dollars to consumers.

Prior to joining Edelson, Chris worked for two large defense firms in the areas of employment and products liability. Chris graduated magna cum laude from The John Marshall Law School, where he served as the Executive Lead Articles for the Law Review, as well as a team member for the D.M. Harish International Moot Court Competition in Mumbai, India. Chris has since returned to his alma mater to lecture on current issues in class action litigation and negations.

Before entering law school, Chris received his Masters degree in Legal Sociology, graduating magna cum laude from the International Institute for the Sociology of Law, located in Onati, Spain. Chris received his B.A. in Legal Sociology from the University of California, Santa Barbara.

**BENJAMIN H. RICHMAN** is a Partner at EDELSON PC and is a member of the firm's Corporate Governance and Business Litigation Practice Group. He handles plaintiff's-side consumer class actions, focusing mainly on technology-related cases, represents corporate defendants in class actions, and handles general commercial litigation matters.

On the plaintiff's side, Ben has brought industry-changing lawsuits involving the marketing practices of the mobile industry, print and online direct advertisers, and Internet companies. He, has successfully prosecuted cases involving privacy claims and the negligent storage of consumer data. His suits have also uncovered complex fraudulent methodologies of Web 2.0 companies, including the use of automated bots to distort the value of consumer goods and services. In total, his suits have resulted in hundreds of millions of dollars to consumers.

On the defense side, Ben has represented large institutional lenders in the defense of employment class actions. He also routinely represents technology companies in a wide variety of both class action defense and general commercial litigation matters.

Ben received his J.D. from The John Marshall Law School, where he was an Executive Editor of the Law Review and earned a Certificate in Trial Advocacy. While in law school, Ben served as a judicial extern to the Honorable John W. Darrah of the United States District Court for the Northern District of Illinois, in addition to acting as a teaching assistant for Prof. Rogelio Lasso in several torts courses. Ben has since returned to the classroom as a guest-lecturer on issues related to class actions, complex litigation and negotiation. He also lectures incoming law students on the core first year curriculums. Before entering law school, Ben graduated from Colorado State University with a B.S. in Psychology.

Ben is the director of EDELSON PC's Summer Associate Program.

**ARI J. SCHARG** is a Partner at EDELSON PC. He handles technology-related class actions, focusing mainly on cases involving the unlawful geo-locational tracking of consumers through their mobile devices, the illegal collection, storage, and disclosure of personal information, fraudulent software products, data breaches, and text message spam. His settlements have resulted in tens of millions of dollars to consumers, as well as industry-changing injunctive relief. Ari has been appointed class counsel by state and federal courts in several nationwide class action settlements, including Webb v. Cleverbridge, et al., 11-cv-4141 (N.D. Ill.), Missaghi v. Blockbuster, 11-cv-2559 (D. Minn.), Ledet v. Ascentive, 11-cv-294 (E.D. Penn.), and Drymon v. CyberDefender, 11 CH 16779 (Cook Cnty, Illinois), and was appointed sole-lead class counsel in Loewy v. Live Nation, 11-cv-4872 (N.D. Ill.), where the court praised his work as "impressive" and noted that he "understand[s] what it means to be on a team that's working toward justice." Ari was selected as an Illinois Rising Star (2013) by Super Lawyers.

Prior to joining the firm, Ari worked as a litigation associate at a large Chicago firm, where he represented a wide range of clients including Fortune 500 companies and local municipalities. His work included representing the Cook County Sheriff's Office in several civil rights cases and he was part of the litigation team that forced Craigslist to remove its "Adult Services" section from its website.

Ari is very active in community groups and legal industry associations. He is a member of the Board of Directors of the Chicago Legal Clinic, an organization that provides legal services to low-income families in the Chicago area. Ari acts as Outreach Chair of the Young Adult Division of American Committee for the Shaare Zedek Medical Center in Jerusalem, and is actively involved with the Anti-Defamation League. He is also a member of the Standard Club Associates Committee.

Ari received his B.A. in Sociology from the University of Michigan – Ann Arbor and graduated magna cum laude from The John Marshall Law School where he served as a Staff Editor for The John Marshall Law Review and competed nationally in trial competitions. During law school, he also served as a judicial extern to The Honorable Judge Bruce W. Black of the U.S. Bankruptcy Court for the Northern District of Illinois.

**STEVEN LEZELL WOODROW** is a Partner and Chair of the firm's Banking and Financial Services Practice Group. Mr. Woodrow focuses his practice on complex national class actions against some of the Country's largest financial institutions. Representative matters include cases against national banks and mortgage servicers for improper loan modification practices, unlawful

home equity line of credit ("HELOC") account suspensions and reductions, and claims regarding the misapplication of payments.

Mr. Woodrow delivered the winning oral argument in *Wigod v. Wells Fargo Bank, N.A.* (7th Cir. 2012), the first federal appellate court decision to allow borrowers to challenge bank failures to follow the federal Home Affordable Modification Program ("HAMP") under state law.

Courts have also appointed Mr. Woodrow as class counsel in nationwide class action settlements against cellphone companies, aggregators, and mobile content providers related to unauthorized charges for ringtones and other mobile content, including *Paluzzi v. Cellco Partnership*, *Williams et. al. v. Motricity, Inc.*, and *Walker et. al. v. OpenMarket Inc.*

Mr. Woodrow has also served as an Adjunct Professor of Law at Chicago-Kent College of Law where he co-taught a seminar on class actions. Prior to joining the firm, he worked as a litigator at a Chicago boutique where he tried and arbitrated a range of consumer protection and real estate matters.

Mr. Woodrow received his J.D. High Honors, Order of the Coif, from Chicago-Kent College of Law in 2005. During law school, Mr. Woodrow served as a Notes and Comments Editor for The Chicago-Kent Law Review, competed on Moot Court, and served as President of the Student Bar Association. He additionally spent a semester as a judicial extern for the Honorable Ann C. Williams on the United States Court of Appeals for the Seventh Circuit. Steven received the ALI-ABA Scholarship and Leadership Award for best representing the combination of leadership and scholarship in his graduating class as well as the Lowell H. Jacobson Memorial Scholarship, which is awarded competitively each year to a student from one of the law schools in the Seventh Circuit to recognize personal commitment and achievement.

Mr. Woodrow is admitted to practice in Colorado (2011) and Illinois (2005).

Mr. Woodrow received his B.A. in Political Science with Distinction from the University of Michigan—Ann Arbor in 2002.

**SEAN P. REIS** is Of Counsel to EDELSON PC. Sean is an experience trial attorney and business litigator. Sean has experience in a wide-range of litigation matters, including those involving trade secrets, real estate fraud, employment, and consumer issues. Sean has tried sixteen cases, including several multi-week jury trials.

Prior to joining EDELSON PC, Sean was trained at an international law firm and later founded his own practice. In 1993, Sean graduated from University of California at San Diego with a degree in quantative economics. Following that Sean graduated from Rutgers University School of Law, Newark, where he was the business editor of the Rutgers Law Review and where he received the graduation for appellate advocacy.

**COURTNEY BOOTH** is an Associate at EDELSON PC. Courtney focuses her practice on consumer class actions.

Courtney received her J.D., magna cum laude, from The John Marshall Law School. While in law school, she was a staff editor of The John Marshall Law Review, a teaching assistant for

*14*

Legal Writing and Civil Procedure, and a member of the Moot Court Honor Society. Courtney represented John Marshall at the Mercer Legal Ethics and Professionalism Competition where she was a semi-finalist and won Best Respondent's Brief and at the Cardozo/BMI Entertainment and Communications Law Competition where she placed in the top three oralists. Courtney was recently nominated as a 2013 Member of the National Order of Scribes.

Prior to law school, Courtney attended Saint Louis University where she earned a B.A. in Communication. While there, she was a community relations intern for the St. Louis Blues.

**DAVID DALE** is an Associate at EDELSON PC. David focuses his practice on privacy class actions and litigation.

David received his J.D., magna cum laude, from the John Marshall School of Law, where he was a member of the Law Review, Trial Advocacy Council, and a Teaching Assistant for Prof. Rogelio Lasso in several torts courses. While in law school, David served as a judicial extern to the Honorable James F. Holderman, Chief Judge of the United States District Court for the Northern District of Illinois.

David attended the University of Missouri, where he graduated with a B.J. in Journalism in 2004. Prior to law school, David worked in the fields of marketing, advertising and public relations for the University of Missouri.

**CHANDLER GIVENS** is an Associate at EDELSON PC, where his practice focuses on technology and privacy class actions. His lawsuits have centered on fraudulent software development, unlawful tracking of consumers through mobile devices and computers, illegal data retention, and data breach litigation.

Chandler leads a group of researchers in investigating complex technological fraud and privacy related violations. His team's research has lead to cases that have helped cause significant reforms to the utility software industry and resulted in tens of millions of dollars to U.S. consumers. On the privacy litigation front, Chandler plays an instrumental role in applying new technologies to federal and state statutes. His briefing of these issues has helped produce seminal rulings under statutes like the Stored Communications Act and establish data breach jurisprudence favorable to consumers.

A frequent speaker on emerging law and technology issues, Chandler has presented to legal panels and state bar associations on topics ranging from data privacy and security to complex litigation and social media. He has been featured on syndicated radio, quoted in major publications such as Reuters and PCWorld, and been an invited Cyberlaw guest lecturer at his alma mater.

Chandler graduated from the University of Pittsburgh School of Law where he was a research assistant for Cyberlaw Professor Dr. Kevin Ashley, and a judicial extern for the Honorable David S. Cercone of the United States District Court for the Western District of Pennsylvania. He graduated cum laude from Virginia Tech, with a B.S. in business information technology, with a focus on computer-based decision support systems. Chandler sits on the ABA committees for Information Security and e-Discovery.

Before joining the legal profession, Chandler worked as a systems analyst. He has also interned at the Virginia Attorney General's Office as well as the U.S. Department of Justice in Washington D.C.

**ALICIA HWANG** is an Associate at EDELSON PC. Alicia practices in the area of consumer class action and general litigation.

Alicia received her J.D. from the Northwestern University School of Law in May 2012, where she was an articles editor for the Journal of Law and Social Policy. During law school, Alicia was a legal intern for the Chinese American Service League, served as president of the Asian Pacific American Law Student Association and the Student Animal Legal Defense Fund, and was Chair of the Student Services Committee. She also worked as a student in the Northwestern Entrepreneurship Law Clinic and Complex Civil Litigation and Investor Protection Clinic.

Prior to joining EDELSON PC, Alicia worked as an Executive Team Leader for the Target Corporation, as well as a public relations intern for a tourism-marketing agency in London.

Alicia graduated magna cum laude from the University of Southern California, earning her B.A. in Communication in 2007. She is a member of the Phi Beta Kappa honor society.

**NICK LARRY** is an Associate at EDELSON PC. Nick practices in the area of consumer class action and general litigation.

Nick received his J.D., cum laude, from Northwestern University School of Law, where he was a senior editor of the Northwestern University Journal of International Law and Business.

Nick attended Michigan State University, where he graduated with a B.A. in General Business Administration/Pre-law in 2008 and played on the school's rugby team.

**MEGAN LINDSEY** is an Associate at EDELSON PC. Megan practices in the area of consumer class action, focusing on complex class actions in the banking industry.

Prior to joining EDELSON PC, Megan worked for several years as a commercial loan underwriter and portfolio officer at Merrill Lynch, Pierce, Fenner & Smith. Megan also worked as an analyst in the troubled asset group at Bank of America, helping to monitor and restructure high-risk loans.

Megan received her J.D. from Chicago-Kent College of Law in May 2011. During law school' Megan externed for the Honorable Judge Bauer in the Seventh Circuit Court of Appeals and served as Vice President-Evening Division of the Student Bar Association and Vice President of the Moot Court Honor Society. Megan also represented Chicago-Kent at the National First Amendment Moot Court Competition in Nashville, Tennessee and the National Cultural Heritage Law Moot Court Competition in Chicago, Illinois.

Megan graduated with High Honors from DePaul University in July 2005, earning her B.S. in Finance.

**DAVID I. MINDELL** is an Associate at EDELSON PC. David practices in the area of technology

and privacy class actions.

David has worked on cases involving fraudulent software products, unlawful collection and retention of consumer data, and mobile-device privacy violations. David also serves as a business consultant to private companies at all stages of development, from start-up to exit.

Prior to joining EDELSON PC, David co-founded several technology companies that reached multi-million dollar valuations within 12 months of launch. David has advised or created strategic development and exit plans for a variety of other technology companies.

While in law school, David was a research assistant for University of Chicago Law School Kauffman and Bigelow Fellow, Matthew Tokson, and for the preeminent cyber-security professor, Hank Perritt at the Chicago-Kent College of Law. David's research included cyberattack and denial of service vulnerabilities of the Internet, intellectual property rights, and privacy issues.

David has given speeches related to his research to a wide-range of audiences.

AMIR MISSAGHI is an Associate at Edelson, where he focuses on technology and privacy class actions.

Amir received his J.D. from the Chicago-Kent College of Law, where he was a member of the Moot Court Honor Society and a teaching assistant in Property. Before law school, he attended the University of Minnesota, where he received his B.S. in Applied Economics. He then began working at a Fortune 50 company as a programmer and data analyst. During that time Amir started working on his graduate studies in Applied Economics where he focused on analyzing consumer choice in healthcare markets.

JOHN OCHOA is an associate at Edelson PC, focusing his practice on protecting consumers with a special emphasis on plaintiffs' privacy class action litigation, including cases brought under the Telephone Consumer Protection Act. John prosecutes cases in both state and federal courts at the trial and appellate levels.

John has secured important court decisions protecting the rights of consumers, including Elder v. Pacific Bell Telephone Co., et al., 205 Cal. App. 4th 841 (2012), where the California Court of Appeals held that consumers may pursue claims against telecommunications companies for placing unauthorized charges on consumers' telephone bills, a practice known as "cramming." John was also appointed class counsel in Lee v. Stonebridge Life Ins. Co., et al., --- F.R.D. ---, 2013 WL 542854 (N.D. Cal. Feb. 12, 2013), a case where the Defendants are alleged to have caused the transmission of unauthorized text messages to the cellular telephones of thousands of consumers.

He graduated magna cum laude from the John Marshall Law School in May, 2010 and served as Managing Editor for the John Marshall Law Review. His student Comment, which examines bicycling and government tort immunity in Illinois, appears in Vol. 43, No. 1 of the John Marshall Law Review. While in law school, John externed with Judge Thomas Hoffman at the Illinois Court of Appeals, and competed in the ABA National Appellate Advocacy Competition.

John is active in the Illinois legal community, and serves as Co-Chair of the Membership Committee on the Young Professionals Board of Illinois Legal Aid Online (ILAO). ILAO is a non-profit organization committed to using technology to increase access to free and pro bono legal services for underserved communities throughout Illinois.

He received his B.A. with Honors in Political Science from the University of Iowa in 2004.

**ROGER PERLSTADT** is an Associate at EDELSON PC, where he concentrates on appellate and complex litigation advocacy. Roger graduated from the University of Chicago Law School, where he was a member of the University of Chicago Law Review. After law school, he served as a clerk to the Honorable Elaine E. Bucklo of the United States District Court for the Northern District of Illinois.

Prior to joining the firm, Roger spent several years at a litigation boutique in Chicago where his practice included employment and housing discrimination claims, constitutional litigation, and general commercial matters. In 2011, he was named a Rising Star by Illinois Super Lawyers Magazine.

Roger also spent time as a Visiting Assistant Professor at the University of Florida Law School where he taught Arbitration, Conflict of Laws, and Employment Discrimination, and has published articles on the Federal Arbitration Act in various law reviews.

**EVE-LYNN RAPP** is an Associate at EDELSON PC. Eve-Lynn focuses her practice in the areas of consumer and technology class action litigation.

Prior to joining EDELSON PC, Eve-Lynn was involved in numerous class action cases in the areas of consumer and securities fraud, debt collection abuses and public interest litigation. Eve-Lynn has substantial experience in both state and federal courts, including successfully briefing issues in both the United States and Illinois Supreme Courts.

Eve-Lynn received her J.D. from Loyola University of Chicago-School of Law, graduating cum laude, with a Certificate in Trial Advocacy. During law school, Eve-Lynn was an Associate Editor of Loyola's International Law Review and externed as a "711" at both the Cook County State's Attorney's Office and for Cook County Commissioner Larry Suffredin. Eve-Lynn also clerked for both civil and criminal judges (The Honorable Judge Yvonne Lewis and Plummer Lott) in the Supreme Court of New York.

Eve-Lynn graduated from the University of Colorado, Boulder, with distinction and Phi Beta Kappa honors, receiving a B.A. in Political Science.

**BEN THOMASSEN** is an Associate at EDELSON PC. At the firm, Ben's practice centers on the prosecution of class actions cases that address federally protected privacy rights and issues of consumer fraud—several of which have established industry-changing precedent. Among other high profile cases, Ben recently played key roles in delivering the winning oral argument before the United States Court of Appeals for the Eleventh Circuit in *Curry v. AvMed*, 693 F.3d 1317 (11th Cir. 2012) (a data breach case that has, following the Eleventh Circuit's decision, garnered national attention both within and without the legal profession) and securing certification of a massive consumer class in *Dunstan v. comScore*, No. 11 C 5807, 2013 WL 1339262 (N.D. Ill.

18

Apr. 2, 2013) (estimated by several sources as the largest privacy case ever certified on an adversarial basis).

Ben received his J.D., magna cum laude, from Chicago-Kent College of Law, where he also earned his certificate in Litigation and Alternative Dispute Resolution and was named Order of the Coif. At Chicago-Kent, Ben was Vice President of the Moot Court Honor Society and earned (a currently unbroken firm record of) seven CALI awards for receiving the highest grade in Appellate Advocacy, Business Organizations, Conflict of Laws, Family Law, Personal Income Tax, Property, and Torts.

Before settling into his legal career, Ben worked in and around the Chicago and Washington, D.C. areas in a number of capacities, including stints as a website designer/developer, a regular contributor to a monthly Capitol Hill newspaper, and a film projectionist and media technician (with many years experience) for commercial theatres, museums, and educational institutions. Ben received his Bachelor of Arts, summa cum laude, from St. Mary's College of Maryland and his Master of Arts from the University of Chicago.

**JACK YAMIN** is an Associate at EDELSON PC, where he focuses on privacy and consumer class actions.

Jack graduated cum laude from Northwestern University's Accelerated (2-year) JD Program. While in law school, Jack was a member of the Center for Wrongful Convictions, where he worked on post-conviction cases in Illinois appellate courts. Jack also served as a judicial extern to the Honorable Marvin Aspen, a senior judge of the United States District Court for the Northern District of Illinois. Throughout law school, Jack was a member of the Center for Conflict Resolution, where he mediated cases in Illinois courts throughout Chicago.

Prior to joining the firm, Jack worked as a tax consultant for business owners throughout the country, representing clients before the Internal Revenue Service, negotiating installment agreements, and handling tax audits. Jack also spent some time working at a literary agency, helping writers publish novels and marketing their work. Jack graduated summa cum laude from Binghamton University, earning his B.A. in philosophy and English literature. He is a member of the Phi Beta Kappa honor society.