**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ZACHARY GOODMAN and DERRICK SIMS, individually and on behalf of a class of similarly situated individuals,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>HANGTIME, INC., a Delaware Corporation, and BUC MOBILE, Inc. d/b/a HOOK MOBILE, a Delaware corporation,<br><br>　　　　　　Defendants. | Case No.　14-cv-1022<br><br>[Hon. John R. Blakey] |

**PLAINTIFFS' MOTION FOR AND MEMORANDUM IN SUPPORT OF
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................... 1

II.    BACKGROUND .......................................................................................................... 3

      A.     The TCPA ........................................................................................................ 3

      B.     Plaintiff's Allegations ................................................................................ 4

      C.     Procedural History ...................................................................................... 5

            1.     The Plaintiffs' Efforts to Self-Consolidate and Defeat Defendants'
                Attempt to Transfer the Case to the Northern District of California ... 6

            2.     Plaintiffs' discovery efforts ................................................................... 7

            3.     Motion practice ...................................................................................... 9

            4.     Settlement negotiations ........................................................................ 10

III.   TERMS OF THE SETTLEMENT ......................................................................... 10

      A.     Class Definition .......................................................................................... 10

      B.     Injunctive Relief ........................................................................................ 11

      C.     Notice Plan .................................................................................................. 12

      D.     Incentive Award for Class Representative and Payment of Attorneys' Fees 12

      E.     Release of Liability .................................................................................... 12

IV.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
       SETTLEMENT PURPOSES .................................................................................. 13

      A.     The Settlement Class is Sufficiently Numerous ................................. 14

      B.     Settlement Class Members Share Common Questions of Law and Fact ....... 14

      C.     Plaintiffs' Claims are Typical of the Settlement Class Members' Claims ..... 15

      D.     Plaintiffs and Class Counsel Will Adequately Represent the Settlement
           Class ............................................................................................................. 16

      E.     The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(2) 19

V.      PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL.....20

VI.     THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL .........21

        A.      The Strength of Plaintiff's Case, Balanced Against the Benefits of
                Settlement, Favors Preliminary Approval .........................................................23

        B.      The Expected Duration, Complexity, and Expense of Further Litigation
                Weigh in Favor of Preliminary Approval .........................................................24

        C.      The Opinion of Competent Counsel Supports Preliminary Approval ...........25

        D.      The Stage of the Proceedings Completed Support Preliminary Approval ....26

VII.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED ...............................26

VIII.   CONCLUSION .........................................................................................................27

## TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997)...................................................13

*Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740 (2012) ................................................3

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)...............................13, 14, 19


**United States Circuit Court of Appeals Cases**

*Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980)............22

*Arreola v. Godinez*, 546 F.3d 788 (7th Cir. 2008) ........................................................13

*Harper v. Sheriff of Cook Co.*, 581 F.3d 511 (7th Cir. 2009)...........................................13

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ...............................................22, 23, 25

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998)..........................................................15

*Lewis v. City of Chicago, Ill.*, 702 F.3d 958 (7th Cir. 2012). ........................................19

*Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489 (7th Cir. 2013) ......................21

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992)...................................................14

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012)............................................3

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014) .................................14, 15

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006) ..............21, 22, 23

*Wong v. Accretive Health, Inc.* 773 F.3d 859 (7th Cir. 2014)........................................22


**United States District Court Cases**

*Bellows v. NCO Fin. Sys., Inc.*, 2008 WL 4155361 (S.D. Cal. Sept. 5, 2008)..............................19

*Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014).............14, 15, 16, 18

*Coffman v. Glide Talk, Ltd.*, No.13-cv-05190 (N.D. Ill.)................................................1

*Ellison v. Steven Madden, Inc.*, No. 11-cv-05935, Dkt. 73 (C.D. Cal. May 7, 2013)............18, 25

*Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394 (N.D. Ill. 1987) ................................ 16

*Grant v. Capital Mgmt. Servs., L.P.*,
   2013 WL 6499698 (S.D. Cal. Dec. 11, 2013) .................................................. 27

*Harris v. Circuit City Stores, Inc.*, 2008 WL 400862 (N.D. Ill. Feb. 7, 2008) ............................ 20

*Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008) ................................ 14

*Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009) ...................... 16

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 33 (N.D. Ill. 2010) .................................................... 14, 16, 22, 23

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
   789 F. Supp. 2d 935 (N.D. Ill. 2011) .............................................................. 25

*In re Northfield Labs., Inc. Sec. Litig.*,
   2012 WL 366852 (N.D. Ill. Jan. 31, 2012) ............................................................ 21-22

*In re Motorola Securities Litig.*, F. Supp. 2d 501 (N.D. Ill. 2007) ................................. 19

*In re OSB Antitrust Litig.*, No. 06-826, 2007 WL 2253419 (E.D. Pa. Aug. 3 2007) .................. 18

*In re Tenet Healthcare Corp. Sec. Litig.*, 2007 WL 5673884 (C.D. Cal. Dec. 5, 2007) .............. 19

*Jermyn v. Best Buy Stores, L.P.*,
   2012 WL 2505644 (S.D.N.Y. June 27, 2012) .................................................. 27

*Kaplan v. Chertoff*, No 06-5304, 2008 WL 200108 (E.D. Pa. Jan. 24, 2008) ............................ 26

*Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*,
   2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) .................................................. 22

*Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999 (N.D. Ill. 2010) ................... 3

*Lozano v. Twentieth Century Fox Film Corp.*,
   No. 09-cv-06344, Dkt. 64 (N.D. Ill. Apr. 25, 2011) ......................................... 18

*Maxwell v. Arrow Financial Servs., LLC*,
   2004 WL 719278 (N.D. Ill. Mar. 31, 2004) .................................................. 16

*McCain v. Rust-Oleum Corp.*, No. 14-cv-4852 (N.D. Ill.) ................................................ 19

*Mednick v. Precor, Inc.*, No. 14-cv-3624 (N.D. Ill.) ..................................................... 19

*Meyer v. Portfolio Recovery Assocs., LLC*,
   2011 WL 11712610 (S.D. Cal. Sept. 14, 2011) ............................................... 19-20

*Miller v. J. Crew Group, Inc.*, No. 13-11487 (D. Mass.) ............................................................ 18

*Miller v. Red Bull N. Am., Inc.*, No. 12-cv-4961, Dkt. 47 (N.D. Ill. Mar. 14, 2013) .................... 18

*Mussat v. Global Healthcare Res., LLC*, 2013 WL 1087551 (N.D. Ill. Mar. 13, 2013).......... 15-16

*Perry v. Equity Residential Management LLC,* 2014 WL 4198850 (D. Mass. Aug. 26, 2014).... 18

*Rodriguez v. Village of Montgomery*, 2009 WL 310893 (N.D. Ill. Feb. 9, 2009)........................ 19

*Rojas v. Career Educ. Corp.*, No. 10-cv-5260, Dkt. 55 (N.D. Ill.) ............................................... 17

*Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs., LLC,*
    2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) ..................................................................... 16

*Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*,
    2012 WL 3991734 (S.D. Cal. Aug. 27, 2012)........................................................... 19, 20

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011) .............................................. 24

*Sebago, Inc. v. Beazer East, Inc.*, 18 F. Supp. 2d 70 (D. Mass. 1998)........................................ 18

*Starr v. Chicago Cut Steakhouse, LLC*, ---F. Supp. 3d ---,
    2014 WL 7146061 (N.D. Ill. Dec. 15, 2014) ................................................................. 13

*Sterk v. Path, Inc.*, No. 13-cv-02330 (N.D. Ill.) ........................................................................... 1

## State Court Cases

*In re Microsoft Corp. Massachusetts Consumer Prot. Litig.*,
    No. 00-2456 (Mass. Super. Ct. Dec. 3, 2004) ............................................................... 18

## Rules and Statutes

47 U.S.C. § 227 ....................................................................................................................... 3, 4

Fed. R. Civ. P. 23 ...............................................................................................................*passim*

## Miscellaneous Authority

Conte & Newberg, 4 *Newberg on Class Actions*, § 11:53 at 167 (4th Ed 2002.) ........................ 26

In the Matter of Groupme, Inc./Skype Commc'ns Petition for Expedited Declaratory Ruling
Rules & Regulations Implementing the TCPA of 1991, 29 F.C.C. Rcd. 3442 (2014) .......... 3-4, 23

*Manual for Complex Litigation* § 21.632 (4th ed. 2004) .............................................................. 13

## I.  INTRODUCTION

Plaintiffs Zachary Goodman and Derrick Sims (collectively, "Plaintiffs") brought this putative class action to put an end to a rather pernicious form of marketing undertaken by Defendant Hangtime, Inc. ("Hangtime") to promote its social networking application.  That is, Plaintiffs allege that every time the Hangtime mobile application was downloaded onto a user's cell phone, Hangtime would automatically "scrape" (i.e., secretly collect) the cell phone numbers stored in user's address books and then, with the help of Defendant Buc Mobile, Inc. d/b/a Hook Mobile ("Hook Mobile"), send text message advertisements urging them to join Hangtime's social network. In technology parlance, this technique is known as "spam-viting" or "growth hacking,"[1] and is sometimes used by new technology companies (like Hangtime) to quickly gain a large user-base for the purpose of inflating their valuation and attracting investors. Plaintiffs allege that through this campaign, Defendants sent millions of spam text messages to consumers throughout the country without consent, in violation of the Telephone Consumer Protection Act ("TCPA").

Plaintiffs brought the lawsuit to achieve two goals: First, to obtain injunctive relief that would put a stop to Defendants' transmission of text messages without consent; and second, to obtain statutory damages. As to the first goal, the Parties have agreed upon immediate, industry-

---

[1]  *See* Sarah Perez, *When Growth Hacking Goes Bad*, Techcrunch, http://techcrunch.com /2014/01/03/when-growth-hacking-goes-bad/ (noting that social network applications "are among the worst offenders" of text message growth hacking.) (last visited Dec. 22, 2014); *see also* Sarah Perez, *Video Texting App Glide is Going "Viral," Now Ranked Just Ahead of Instagram in App Store*, Techcrunch (Dec. 22, 2014), http://techcrunch.com/2013/07/24/video-texting-app-glide-is-going-viral-now-ranked-just-ahead-of-instagram-in-app-store/ (referring to the action of an application accessing a user's contact lists and sending pre-written invitational text messages as "*spam-vit[ing]*").

changing[2] injunctive relief that requires Defendants to go beyond their obligations for obtaining prior express consent under the TCPA. As such, the settlement, if approved, will bring an end to Defendants' transmission of unsolicited text messages. In terms of monetary relief, however, considering the number of text messages at issue (millions), coupled with the fact that Hangtime is a company that is experiencing serious financial difficulty,[3] there was no feasible way to provide any meaningful monetary relief to the Class. Thus, the Parties resolved to settle the case on a purely injunctive basis pursuant to Fed. R. Civ. P. 23(b)(2)—so that the Settlement Class would be spared of further text messages—and to preserve the class's claims to pursue statutory damages.[4]

And, as far as the process that lead to the settlement is concerned, the Court should have no doubt that it was conducted at all times in good faith and at arms' length. The Parties reached this settlement after conducing significant discovery and holding arms'-length settlement negotiations. These negotiations included the exchange of information on the merits, as well as documentation concerning Hangtime's financial condition. Put simply, given the circumstances and information at their disposal, Class Counsel believes that the instant settlement represents the best result for the Settlement Class.

---

[2] Other startup "tech" companies have been sued for similar conduct. *See Sterk v. Path, Inc.*, No. 13-cv-02330 (N.D. Ill.) *and Coffman v. Glide Talk, Ltd.*, No. 13-15190 (N.D. Ill.).

[3] Hangtime provided documents to Class Counsel as part of the settlement negotiation process that demonstrated its inability to satisfy a judgment or even fund a settlement of the proposed class's claims for monetary relief. (Declaration of Ari J. Scharg ("Scharg Decl.") ¶ 10.) The Scharg Decl. is attached to this motion as Exhibit A.

[4] It should be noted that Class Counsel proposed to leave the issue of attorneys' fees and an incentive award to the Court, agreeing to simply file a petition with the Court, which Hangtime is free to oppose. That proposed Class Counsel agreed to the instant settlement without any agreement on the payment of any amount of attorneys' fees or an incentive award not only underscores the fairness of the settlement, but also the fact that Class Counsel has acted in the best interests of the proposed Settlement Class.

For these reasons, and those stated below, Plaintiffs respectfully request that the Court (1) certify the proposed Settlement Class under Federal Rule of Civil Procedure 23(b)(2), (2) appoint them as Class Representative and their counsel as Class Counsel and Liaison Counsel, (3) approve the proposed form and content of the notice to the Settlement Class, (4) grant preliminarily approval to the Settlement, and (5) schedule the final fairness hearing.

## II.    BACKGROUND

### A.    The TCPA

Congress passed the TCPA in response to "voluminous consumer complaints," and to prohibit "intrusive nuisance calls." *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012); *see also Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012) (noting that the TCPA was passed to combat the "expense" and "annoyance" of autodialed calls to consumers' cell phones); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1011 (N.D. Ill. 2010) (finding that "the TCPA serves a significant government interest of minimizing the invasion of privacy caused by unsolicited telephone communications to consumers."). As such, the TCPA provides a means to combat the growing threat to privacy being caused by automated telemarketing practices, and states that:

> It shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system. . . .

47 U.S.C. § 227(b)(1)(A)(iii).

The TCPA applies to traditional phone calls as well as text message calls. *Lozano*, 702 F. Supp. 2d at 1009. But calls made with the "prior express consent" of the recipient are exempted. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Pertinent to this settlement, the FCC has ruled that entities that place certain text message calls may rely on "intermediary consent"—that is, consent conveyed

from the text message recipient through a third-party—so long as that entity has ensured that the third-party is aware of the circumstances and agrees to obtain and convey such consent to that entity. *See* In the Matter of Groupme, Inc./Skype Commc'ns Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the TCPA of 1991, 29 F.C.C. Rcd. 3442 (2014) (the *Groupme* Order").

The TCPA sets statutory damages in the amount of $500 per violation (which may be trebled if the conduct is found to be willful) and provides for injunctive relief prohibiting the further transmission of such messages without consent. 47 U.S.C. § 227(b)(3)(A)-(B).

### B.      Plaintiffs' Allegations

Hangtime is a technology company that operates a social networking platform accessible from a mobile application on a users' smartphone. (*See* Consolidated Class Action Complaint ["Compl."], Dkt. 46, ¶ 1.) To join Hangtime's social network, Hangtime users download the Hangtime app onto their cell phones and complete the registration process. (*Id.* ¶¶ 14, 19.) Plaintiffs allege that during this registration process, Hangtime uploads the cell phone numbers from its users' address books onto its servers, and Defendants then automatically send pre-programmed text message advertisements to such contacts. (*Id.* ¶¶ 14, 26.)

Plaintiffs further allege that Hangtime users are not informed that Defendants would upload the users' contacts list, and are likewise unaware that Defendants would send text messages to those contacts. (*Id.* ¶ 24.) Indeed, discovery revealed that at no time during the registration process is a Hangtime user asked to obtain consent from his or her contacts to receive any text messages from Defendants, or asked to convey such consent to Defendants. (Scharg Decl. Ex. 1.) Hangtime's terms of service were similarly silent regarding users' need to obtain consent from their contacts to receive text messages from Defendants—and in fact, were

not even conspicuously displayed to Hangtime users during the registration process. (*Id.* Exs. 1 and 2, at Defendant Hangtime, Inc.'s Response to Plaintiff's Interrogatory No. 4.)[5]

Plaintiffs Goodman and Sims were just two of the millions of individuals who received such text messages in the manner alleged above. These text messages, which were written by Hangtime, stated,

- "[Name of user] added you as a friend on Hangtime. Check out what he's doing this week!"

- "Hey its [name of user]. I'm interested in 'The Super Bowl' r u?"

- "[Name of user] shared events with you on Hangtime"

(Scharg Decl. Ex. 2, Defendant Hangtime, Inc.'s Response to Plaintiff's Interrogatory No. 2.) Each of these text messages contained a URL hyperlink which, when clicked, would lead recipients to Hangtime's website where they were urged to download Hangtime's mobile application. Plaintiffs claim that Defendants never obtained their, or the other Settlement Class Members', consent either directly or through an intermediary before transmitting these text messages. (Compl. ¶ 24.)

**C.      Procedural History**

This litigation has been contentious and marked by numerous contested motions and discovery disputes. Through this, Plaintiffs have been able to obtain the information needed to

---

[5] On April 9, 2014—two weeks after the Federal Communications Commission ("FCC") issued its *Groupme* Order on which Defendants' intermediary consent defense is based—Hangtime modified its terms of service.  Still, these terms of service (1) were not placed in a conspicuous place where Hangtime users would actually read it, and (2) still failed to convey prior express consent to Defendants. Rather, the updated terms stated that the *Hangtime user*, and not the individuals in that users' contacts list, agreed to receive text messages from Hangtime, and further required the Hangtime user to warrant that his or her contacts consented to receive text messages sent by the Hangtime user, and said nothing about consent to receive text messages from Hangtime and/or Hook Mobile.  (Scharg Decl. Ex. 2, at Defendant Hangtime, Inc.'s Response to Plaintiff's Interrogatory No. 4.)

prosecute their claims, and do so in an efficient way because of their efforts to self-consolidate three separate lawsuits into the current Action before this Court. The procedural and litigation history in this case is outlined below.

1.     **The Plaintiffs' efforts to self-consolidate and defeat Defendants' attempt to transfer case to the Northern District of California**

This case began as three separate cases before three different judges. The *Goodman* action was first filed in the Circuit Cook of Cook County on January 16, 2014, and subsequently removed to this Court. (Dkt. 1.) The *Salam* action was filed on February 19, 2014 in the Northern District of Illinois, and was assigned to Judge Dow. (*Salam v. Hangtime, Inc.*, No. 14-cv-01252 (N.D. Ill.).) And the *Sims* action was filed on February 26, 2014 in the District Court of Massachusetts. (*Sims v. Hangtime, Inc.*, No. 14-cv-10427 (D. Mass).)

The beginning of this litigation was driven by jurisdictional disputes in which Defendant Hangtime advocated for transfer to the Northern District of California, while Plaintiffs fought to self-consolidate the cases and litigate the case against Hangtime and Hook Mobile here in their chosen forum, the Northern District of Illinois. Shortly after the filing of the *Sims* Action, in the spirit of cooperation and conservation of judicial resources, Counsel for Goodman and Sims conferred in an effort to find a method for jointly prosecuting their claims. Following multiple meet and confers, both parties agreed that it would be in the interests of judicial economy and efficiency to litigate their clients' claims together in one lawsuit. (Scharg Decl. ¶ 5.) As a result, on June 17, 2014, Goodman moved for leave to file an amended complaint for the sole purpose of adding Sims as a party-plaintiff. (Dkt. 21.) Shortly thereafter, Sims moved to voluntarily dismiss his lawsuit. (*Sims*, Dkt, 16.) This motion was opposed by Hangtime (*Sims*, dkt. 18), but granted by the Court (*Sims*, dkt. 27). Goodman's motion was subsequently granted over Hangtime's opposition, and on July 7, 2014, Goodman filed his amended complaint adding Sims

6

as a plaintiff and Sims' counsel as plaintiffs' counsel. (Dkts. 31, 32.) In the interim, on June 20, 2014, Hangtime filed a motion with the Judicial Panel on Multidistrict Litigation ("JPML"), and requested consolidation and transfer to the Northern District of California. (Dkt. 25.) Hangtime also moved to stay this case pending decision on its motion before the JPML. (Dkt. 23.)

Plaintiff Goodman defeated Hangtime's motion to stay all litigation pending its motion to transfer the Consolidated Actions to the Northern District of California pursuant to 28 U.S.C. § 1407. (Dkt. 31; *see also* MDL No. 2563, Dkt. 1.) Shortly thereafter, Plaintiffs successfully moved—over Hangtime's objection—to reassign and consolidate the *Goodman* and *Salam* Actions. (Dkt. 42.) On July 23, 2014, again over Hangtime's objection, the Court granted the motion and consolidated the *Goodman* and *Salam* Actions for all purposes. (Dkt. 42.)[6]

Additionally, on July 8, 2014, Plaintiffs filed a combined opposition to Hangtime's motion to transfer the Consolidated Actions to the Northern District of California pursuant to 28 U.S.C. § 1407, arguing that their efforts thus far at self-consolidating and efficiently litigating their claims against Hangtime would be hamstrung by transferring the Consolidated Actions to join the most nascent of the actions[7] against Hangtime. (MDL No. 2563, Dkt. 15.) After full briefing, as well as oral argument, the JPML denied Hangtime's motion to transfer, thus clearing a path for the Plaintiffs' case against Defendants to continue in their chosen forum. (MDL Dkt. 22.)

### 2. Plaintiffs' discovery efforts

In the midst of this dispute over venue, Plaintiffs pushed forward with discovery. On July

---

[6] Salam later dismissed his individual claim against Defendants in order to streamline the litigation against Hangtime and Hook Mobile. (Dkts. 62, 70)
[7] On May 15, 2014, a fourth class action lawsuit against Hangtime was filed captioned *Kozlow v. Hangtime, Inc.*, No. 14-cv-2249 (N.D. Cal.). On April 7, 2015, that case was dismissed with prejudice, without releasing the claims of putative class members in any way. (*See id.* dkt. 49.)

2, 2014, Plaintiffs served their Rule 26(a)(1) initial disclosures. (Scharg Decl. ¶ 6.) On August 5, 2014, Hangtime served its Rule 26(a)(1) initial disclosures. (*Id.*) On June 10, 2014, Plaintiffs served document requests on Hangtime.[8] (*Id.*) Hangtime responded on August 13, 2014, and supplemented its answers on December 15, 2014, after a protective order was entered on November 26, 2014 (*Id.*; *see also* dkts. 57 & 61.) Hangtime produced documents on December 15, 2014. (*Id.*) On June 17, 2014, Plaintiff Goodman issued a subpoena for documents to Hook Mobile (prior to its addition as a defendant in this case). (*Id.* ¶ 7.) Hook Mobile responded on August 11, 2014, and produced documents on December 12, 2014, after a protective order was entered on November 26, 2014. (*Id.*)

On June 10, 2014, Plaintiffs also served Interrogatories on Hangtime. (Scharg Decl. ¶ 6.) Hangtime responded on August 13, 2014, indicating that it would supplement its responses upon entry of a protective order. (*Id.*) Hangtime supplemented its responses on December 5, 2014, after entry of the protective order. (*Id.*) On October 10, 2014, Defendants served Interrogatories on Plaintiffs. (*Id.* ¶ 8.) Plaintiff Goodman responded on November 12, 2014, and Plaintiff Sims responded on November 13, 2014. (*Id.*) Both Plaintiffs supplemented their responses on December 9, 2014. (*Id.*) On December 3, 2014, Defendants served Requests for Admission on Plaintiffs. Plaintiffs responded on January 5, 2015. (*Id.*)

On July 8, 2014, Plaintiffs noticed the 30(b)(6) deposition of Hangtime. On January 14, 2015, Plaintiffs noticed the 30(b)(6) deposition of Hook Mobile, as well as the deposition of Allan Carroll, Hangtime's Chief Technology Officer. (Scharg Decl. ¶ 6.) Defendants deposed

---

[8] Plaintiffs also issued subpoenas to third parties Twilio, Inc. (January 9, 2015), T-Mobile U.S.A. (November 5, 2014), Neustar, Inc. (July 7, 2014), and Cellco Partnership d/b/a Verizon Wireless (July 7, 2014). (Scharg Decl. ¶ 7.)

Plaintiff Goodman and Plaintiff Sims on January 15th and 20th, 2015, respectively. (*Id.* ¶ 9.)

### 3. Motion practice

On November 17, 2014, Hangtime and Hook Mobile moved to dismiss and strike class allegations. (Dkts. 47, 52.) Defendants' motion to dismiss principally argued that the Consolidated Complaint's allegations were "uncertain" because Plaintiff Salam, who dismissed his claim without prejudice, (*see* dkt. 47), was not included as a Party in the Consolidated Complaint. Defendants' motion to strike class allegations argued that individual issues of consent precluded findings of commonality and predominance. (Dkt. 52.) Discovery continued during the pendency of these motions. On February 3, 2015, after briefing on the motion to dismiss and motion to strike was complete, the Court denied the motion to dismiss as moot, and took the motion to strike class allegations under submission. (Dkt. 84.) Defendants thereafter answered the Consolidated Complaint and each raised thirteen (13) affirmative defenses. (Dkts. 88, 89.)

On January 26, 2014, after a lengthy meet-and-confer process, Plaintiffs moved to compel Hangtime and Hook Mobile to produce relevant documents and produce their employees for deposition. (Dkt. 79.) Specifically, Plaintiffs moved Defendants to produce the following documents: (1) the logs for the text message transmissions at issue, (2) communications relating to the development, implementation, and execution of Hangtime's promotional text message campaign, (3) documents evidencing the Hangtime user registration process, (4) any communications and applicable policies and procedures related to Defendants' "consent" defense, and (5) documents related to the technology and equipment that Defendants used to transmit their promotional text messages. The Court granted Plaintiffs' motion to compel on February 11, 2015. (Dkt. 87.)

Plaintiffs also filed a motion for class certification on November 21, 2014 to prevent Defendants from attempting a so-called "buy off" to moot their representative claims (i.e., tendering to them the full amount of their individual damages). (*See* dkt. 54 at fn.1) Plaintiffs were preparing to file renewed motion for class certification when the Parties began settlement negotiations.

### 4. Settlement negotiations

Following the production of the outstanding documents, and on the eve of the deadlines to file dispositive motions, the Parties began discussing a possible resolution of this lawsuit. (Scharg Decl. ¶ 10.) As part of these discussions, Defendant Hangtime represented to Plaintiffs that it was financially unable to satisfy a judgment or enter into a class-wide settlement that would provide the proposed class members with monetary relief. (*Id.*) Plaintiffs confirmed these representations through the exchange of documentation reflecting Hangtime's financial condition. (*Id.*) Due to this, the settlement discussions focused on Plaintiffs' request for injunctive relief, which was one of the stated goals of Plaintiffs' lawsuit. (*Id.*) After a series of arms-length negotiations, the Parties ultimately agreed to the settle the Action on the terms contained herein.

## III. TERMS OF THE SETTLEMENT

The key terms of the Settlement Agreement (which is attached as Exhibit B) are briefly summarized as follows:

### A. Class Definition

All persons in the United States who received a Promotional Text Message from Hangtime from March 1, 2013 until the date of Preliminary Approval.

(Settlement ¶ 1.23). Excluded from the Settlement Class are (1) any Judge, Magistrate Judge, or mediator presiding over this action and members of their families, and (2) Defendants,

Defendants' parent companies, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former officers, directors, and employees. (*Id.*)

**B.    Injunctive Relief**

Under the terms of the Settlement, Hangtime has agreed to modify its registration process, as well as its terms of service, to make clear to Hangtime users that Defendants will transmit text messages to the users contacts list. Hangtime will also modify its terms of service to ensure that the Hangtime user, as the intermediary, obtains the requisite "prior express consent" from the text message recipient, and also conveys that consent to Defendants. This injunctive relief will directly benefit the settlement class—whose telephone numbers are stored on Hangtime's servers—by requiring Hangtime users to abide by these terms before Hangtime transmits any future text messages to Settlement Class Members.

Specifically, Defendants have agreed to the entry of an injunction requiring that the following changes be instituted on or before the Effective Date, and to remain in effect for a period of four (4) years:

A.    Hangtime will modify its terms of service for its mobile application to ensure that it obtains the representation of any user inviting any other person to join Hangtime's mobile app that each individual receiving an invitation has expressly consented to receive a text message invitation from Hangtime;

B.    Hangtime will display its terms of service to new users during the registration process through a "pop up" dialogue box, and new users will indicate their acceptance of such terms by checking a box containing the phrase "I agree" or "I accept"; and

C.    Hangtime will not send text messages to the Settlement Class for any reason unless consent is first obtained in accordance with Paragraph 2(a) and (b), above.

(Settlement ¶ 2.1).

### C. Notice Plan

The Agreement calls for the creation of a settlement website which will contain, in easy to understand language, a notice containing information about the nature of this action and details about the Settlement Agreement, including the Class Member's rights under the settlement.[9] The settlement website will also contain important court documents, including the Consolidated Complaint and Defendants' respective Answers, as well as the Settlement Agreement. The website will be developed and hosted by Class Counsel. (Settlement ¶ 4.1.)

### D. Incentive Award for Class Representative and Payment of Attorneys' Fees and Expenses

In recognition of Plaintiffs' time and effort serving as class representatives, Hangtime agrees to pay reasonable incentive awards to Plaintiffs Goodman and Sims in amounts to be determined by the Court upon petition by Class Counsel. Hangtime also agrees to pay reasonable attorneys' fees and costs to Class Counsel in an amount to be determined by the Court upon petition by Class Counsel. Defendants will be entitled to oppose the amounts requested by Class Counsel. (Settlement ¶¶ 7.1 - 7.2.)

### E. Release of Liability

In exchange for the relief described above, Defendants, and each of their related entities and affiliated persons, will receive a release for all claims for injunctive relief related to the Settlement Class Members' receipt of the Promotional Text Messages identified above. (*Id.* ¶¶ 1.20, 3.1-3.2.) These Released Injunctive Claims do not include any claims belonging to Settlement Class Members for monetary damages pursuant to the TCPA or any other cause of

---

[9] A copy of this notice document is attached as Exhibit 1 to the Agreement.

action. (*Id.* ¶ 1.20.)

## IV. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

The first step in the process of granting preliminary approval of a settlement is to determine that the proposed settlement class is appropriate for certification. *Manual for Complex Litigation* § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). A party seeking class certification must satisfy the factors enumerated in Federal Rule of Civil Procedure 23(a) by demonstrating that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *Harper v. Sheriff of Cook Co.,* 581 F.3d 511, 513 (7th Cir. 2009); *Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008).

In addition to satisfying the Rule 23(a) prerequisites, a plaintiff must also demonstrate one of the three provisions of Rule 23(b). *Amchem*, 521 U.S. at 614; *Harper*, 581 F.3d at 513. In the instant matter, Plaintiff seeks certification of the Settlement Class under Rule 23(b)(2). Certification under this provision applies when a defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548-49 (2011); *see also* Fed. R. Civ. P. 23(b)(2).

Ultimately, district courts have broad discretion to determine whether certification of a class action lawsuit is appropriate. *Starr v. Chicago Cut Steakhouse, LLC*, ---F. Supp. 3d---, 2014 WL 7146061, at *7 (N.D. Ill. Dec. 15, 2014). As described in detail below, the proposed Settlement Class satisfies all of these prerequisites and should therefore be certified.

13

### A.    The Settlement Class is Sufficiently Numerous

Rule 23(a)'s first requirement—numerosity—is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 341 (N.D. Ill. 2010); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 250 (N.D. Ill. 2014). Although there is no "magic number" at which joinder becomes impracticable, the requirement of numerosity is usually met when the class is comprised of forty or more persons. *See Birchmeier*, 302 F.R.D. at 250. Here, there is no question that the Settlement Class is sufficiently numerous, because Hangtime's records indicate that it sent the Promotional Text Messages to approximately 15 million individuals. (Scharg Decl. Ex. 2, at Defendant Hangtime, Inc.'s Response to Plaintiff's Interrogatory No. 4.) Given the substantial size of the proposed class, the Settlement Class satisfies the numerosity requirement.

### B.    Settlement Class Members Share Common Questions of Law and Fact

The second requirement of class certification asks whether there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *see also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 755 (7th Cir. 2014). For certification, class members must share "a common contention . . . capable of classwide resolution." *Dukes*, 131 S. Ct. at 2551; *Birchmeier* 302 F.R.D. at 250. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). Commonality typically exists where a defendant has engaged in standardized conduct towards members of the proposed class. *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 806 (N.D. Ill. 2008).

Here, the proposed Settlement Class satisfies the commonality requirement of Rule 23(a). Plaintiffs have alleged, and discovery has confirmed, that Hangtime, with the assistance of its co-Defendant Hook Mobile, collected the cellular telephone numbers of Settlement Class Members in the same manner and sent nearly identical promotional text messages to Plaintiffs and the other Settlement Class Members using the same dialing equipment. This standardized conduct raises several issues of fact and law common to the Settlement Class, including: (1) whether that dialing equipment falls within the statutory definition of an "automatic telephone dialing system," (2) whether Hangtime's registration process and terms of service were sufficient to obtain "intermediary consent" to receive the Promotional Text Messages from Class Members, and (3) whether Defendants' conduct was willful or knowing. Because the answers to those questions depend solely on Defendants' identical conduct towards every member of the Settlement Class, the Settlement Class's claims will rise and fall on the resolution of the same common questions. *See Suchanek*, 764 F.3d at 757 (finding that the commonality requirement is satisfied when "[plaintiff's] claims and those of the class [he] would like to represent all derive from a single course of conduct by [Defendant]").

### C. Plaintiffs' Claims are Typical of the Settlement Class Members' Claims

The third element of Rule 23(a)—typicality—directs courts to focus on whether the plaintiff's claims or defenses "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *Birchmeier*, 302 F.R.D. at 251; *In re AT&T*, 270 F.R.D. at 342. Typicality and commonality are closely related. Typicality exists where the claims of the named plaintiff arise from the same event or course of conduct that, in turn, gives rise to the claims of other class members, and where those claims are based on the same legal theory. *Id.* (citing *Keele*, 149 F.3d at 594). Courts routinely find that the typicality requirement is met where a defendant's conduct

15

consisted of sending an unsolicited message by text message or fax in violation of the TCPA. *See, e.g., Mussat v. Global Healthcare Res., LLC*, 2013 WL 1087551, at *5 (N.D. Ill. Mar. 13, 2013); *Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs., LLC*, 2012 WL 6106714, at *4 (N.D. Ill. Dec. 6, 2012); *Holtzman v. Turza*, 2009 WL 3334909, at *5 (N.D. Ill. Oct. 14, 2009).

Here, Plaintiffs' claims are virtually identical to those of the other Settlement Class Members. Goodman and Sims allege that they received a Promotional Text Message from Defendants in violation of the TCPA. They further allege that Defendants sent these text messages in the exact same manner, and for the exact same reason, to the other Settlement Class Members. "That is enough for Rule 23(a)(3) purposes." *In re AT&T*, 270 F.R.D. at 330 (citation omitted); *see also Birchmeier*, 302 F.R.D. at 251 (finding that "because the named plaintiffs received the same type of call as the other class members, their claims are typical of those of the class."). Thus, Plaintiffs' claims are unquestionably typical of those of the Settlement Class and the pursuit of their claims will necessarily advance the interests of the absent Settlement Class members. Typicality is readily satisfied.

**D. Plaintiff and Class Counsel Will Adequately Represent the Settlement Class.**

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This means that both a proposed class representative and her counsel have the ability to "zealously represent and advocate on behalf of the class as a whole." *Maxwell v. Arrow Financial Servs., LLC,* 2004 WL 719278, at *5 (N.D. Ill. Mar. 31, 2004). The proposed class representative must not have claims that are "antagonistic or conflicting . . . with other members of the class," and must have a "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Id.* (internal quotations omitted). Additionally, proposed class counsel must be competent and have the

resources necessary to sustain the complex litigation necessitated by class claims; it is persuasive evidence that proposed class counsel have been found adequate in prior cases. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987).

Plaintiffs Sims and Goodman have the same interests as the other members of the Settlement Class—they received an unauthorized text message from Defendants on their cellular phone as a result of Defendants' uniform course of unlawful conduct. Therefore, like the other members of the Settlement Class, their interests lie in ensuring that Defendants' unlawful conduct does not continue in the future and that they and the other members of the Settlement Class obtain the injunctive relief to which they are entitled. Plaintiffs have no interests antagonistic to those of the other members of the Class. Further, Plaintiffs have vigorously pursued these common interests and will continue to do so throughout the pendency of this action. (Scharg Decl. ¶ 16.)

In addition, they are represented by extremely qualified counsel. Proposed Class Counsel Rafey S. Balabanian, Ari J. Scharg, and John C. Ochoa of Edelson PC and David Pastor of Pastor Law Office LLP, and proposed Liaison Counsel Katrina Carroll of Lite DePalma Greenberg, have extensive experience in class actions of similar size, scope, and complexity to the instant action,[10] and have the resources necessary to see this litigation through to its conclusion. (Scharg Decl. ¶¶ 11-15.) The attorneys at Edelson PC "have pioneered the application of the TCPA to text-messaging technology" and have litigated "some of the largest consumer class actions in the country on this issue." *Ellison v. Steven Madden, Inc.*, No. 11-cv-05935 (Dkt. 73 at 9) (C.D. Cal. May 7, 2013). They have also been appointed class counsel in

---

[10] The Edelson, Pastor, and Carroll Law Firm Resumes are attached to the Scharg Decl. as Exhibits 3, 4, and 5, respectively.

numerous TCPA cases, including several in this district. *See Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 252 (N.D. Ill. 2014) (finding that attorneys at Edelson PC will adequately represent the class); *Rojas v. Career Educ. Corp.*, No. 10-cv-5260, Dkt. 55 at 5 (N.D. Ill.) (finding that "attorneys [at Edelson PC] are competent and capable of exercising the responsibilities of Class Counsel."); *Miller v. Red Bull N. Am., Inc.*, No. 12-cv-4961, Dkt. 47 at 4 (N.D. Ill. 2013) (appointing attorneys at Edelson PC as class counsel); *Lozano*, No. 09-cv-06344, Dkt. 64 (N.D. Ill.) (same).

David Pastor, both with Pastor Law Office LLP and with his former firm, Gilman and Pastor LLP, has an extensive record of successful prosecution of class action litigation. (*See* Scharg Decl. Ex. 4.) Pastor has been appointed as class or lead counsel in many class actions, including cases asserting claims on behalf of consumers and other types of cases such as antitrust. *See, e.g., Perry v. Equity Residential Management LLC,* 2014 WL 4198850 (D. Mass. Aug. 26, 2014), *Miller v. J. Crew Group, Inc.*, No. 13-11487-RGS (D. Mass.) (action on behalf of retail customers for unlawful collection of personal identification information at point of sale); In re *OSB Antitrust Litig.*, 2007 WL 2253419 (E.D. Pa. Aug. 3 2007) (indirect purchaser antitrust action); In re *Microsoft Corp. Massachusetts Consumer Prot. Litig.*, No. 00-2456 (Mass. Super. Ct. Dec. 3, 2004) (indirect purchaser antitrust action); *Sebago, Inc. v. Beazer East, Inc.*, 18 F. Supp. 2d 70 (D. Mass. 1998) (product defect action against manufacturers of phenolic foam roof insulation).

And proposed Liaison Counsel Katrina Carroll is a member of Lite DePalma Greenberg, LLC ("LDG") and heads LDG's Chicago office. (Scharg Decl. Ex. 5.) Carroll has been actively involved in many of her firm's class actions since 2001, in the areas of consumer fraud, securities fraud and antitrust. She has also served as co-lead counsel in some of the most

prominent securities fraud class actions, including In re *Motorola Securities Litig.*, F. Supp. 2d 501 (N.D. Ill. 2007), where LDG achieved a $193 million settlement for aggrieved investors, and in In re *Tenet Healthcare Corp. Sec. Litig.*, 2007 WL 5673884 (C.D. Cal. Dec. 5, 2007), which resulted in settlements for $216.5 million against one set of defendants and $65 million against the auditor defendant, representing one of the largest auditor settlements of all time. Carroll is currently serving in lead roles in two major consumer matters pending in this District, *McCain v. Rust-Oleum*, No. 14-cv-4852 (St. Eve, J.) and *Mednick v. Precor, Inc.*, Docket No. 14-cv-3624 (Leinenweber, J.).

The adequacy requirement is readily satisfied for both Plaintiffs, as well as proposed Class Counsel and liaison counsel.

### E.     The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)(2).

In addition to the four requirements for certification under Rule 23(a), the proposed Settlement Class also satisfies the additional requirement imposed under Rule 23(b)(2), that the Defendants have "acted or refused to act on grounds generally applicable to the class," thereby making injunctive relief appropriate. Fed. R. Civ. P. 23(b)(2); *see also Rodriguez v. Village of Montgomery*, 2009 WL 310893, at *4 (N.D. Ill. Feb. 9, 2009); *Lewis v. City of Chicago, Illinois*, 702 F.3d 958, 962 (7th Cir. 2012).

The "key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes,* 131 S.Ct. at 2557. Consistent with this notion, courts have certified (b)(2) classes in TCPA cases—both adversarially and in the settlement context—when the relief requested would "redress an alleged group-wide injury." *See Bellows v. NCO Fin. Sys., Inc.*, 2008 WL 4155361, at *7 (S.D. Cal.

19

Sept. 5, 2008) (granting certification of a (b)(2) class in TCPA class action settlement); *see also Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*, 2012 WL 3991734, at *7 (S.D. Cal. Aug. 27, 2012) (same); *Meyer v. Portfolio Recovery Associates, LLC*, 2011 WL 11712610, at *5 (S.D. Cal. Sept. 14, 2011) (granting class certification under Rule 23(b)(2) over defendant's objection because: (1) The TCPA provides for injunctive relief; and (2) the injunctive relief sought applies generally to the class).

Such is the case here. Hangtime's registration process and terms of service were and are, for all intents and purposes, identical for each Settlement Class Member. It is these common processes and policies that caused the class-wide injury, and which also are the subject of the Settlement Class's claims for injunctive relief under the TCPA. Hangtime's modifications of its terms of service and registration process—done to make its policies in harmony with the FCC's *Groupme* Order that mandates the proper procedures for obtaining of intermediary consent—will affect all of the Settlement Class Members equally, not to mention all future recipients of Hangtime's text messages. Defendants have also agreed to ensure that it will not transmit more text messages to those Settlement Class Members—or anyone else—unless it first adheres to the changes in its terms of service. (Agreement ¶ 2.1.) In this circumstance, the "agreed-upon injunctive relief will redress an alleged group-wide injury," and makes class certification under Rule 23(b)(2) appropriate. *Sarabri*, 2012 WL 3991734, at *7.

## V. PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL.

When certifying a class, Rule 23 requires that a court appoint counsel who will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B), (2), (4); *Harris v. Circuit City Stores, Inc.*, 2008 WL 400862, at *11 (N.D. Ill. Feb. 7, 2008). In appointing class counsel, the court must consider (1) the work counsel has done in identifying or investigating the

claims; (2) counsel's experience in handling class actions, other complex litigation, and the types

of claims asserted in the case; (3) counsel's knowledge of the applicable law, and (4) the

resources class counsel has committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–

(iv); *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498 n.7 (7th Cir. 2013).

     Here, proposed Class Counsel readily satisfies the criteria of Rule 23(g). First, they have

devoted—and will continue to devote—a significant amount of time and effort to this litigation,

including through their investigation of Plaintiffs' allegations, substantive motion practice,

extensive written and oral discovery, and settlement discussions. (Scharg Decl. ¶¶ 5-9, 15.)

Second, as explained in detail in Section IV.D *supra*, proposed Class Counsel and liaison

counsel have extensive experience litigating class actions of similar size, scope, and complexity

to the instant action, and have been appointed class counsel in numerous TCPA class actions,

many of them in this District.

     In short, proposed Class and Liaison Counsel have the resources necessary to conduct

litigation of this nature, have already diligently investigated the claims at issue in this action and

dedicated substantial resources to the case, and will continue to do so throughout its conclusion.

Accordingly, Rafey S. Balabanian, Ari J. Scharg, and John C. Ochoa of Edelson PC and David

Pastor of Pastor Law Office LLP meet the adequacy requirements of Rule 23, and should be

appointed Class Counsel, and Katrina Carroll of Lite DePalma Greenberg likewise should be

appointed Liaison Counsel.

## VI.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL.

     Rule 23(e) requires judicial approval of a proposed class action settlement based on a

finding that the agreement is "fair, reasonable, and adequate," *see* Fed. R. Civ. P. 23(e)(2);

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006), which

involves a well-established two-step process. *Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *In re Northfield Labs., Inc. Sec. Litig.*, 2012 WL 366852, at *5 (N.D. Ill. Jan. 31, 2012). The first step—preliminary approval—assesses whether the proposed settlement falls "within the range of possible approval" "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong*, 616 F.2d at 314.

While "[f]ederal courts naturally favor the settlement of class action litigation," *In re AT&T*, 270 F.R.D. at 345 (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)), a multi-factor test is used to determine whether a proposed settlement is fair, reasonable, and adequate, *Synfuel*, 463 F.3d at 653 (citing *Isby*, 75 F.3d at 1199). Specifically, the longstanding rule in this Circuit looks to six factors when conducting a fairness determination: (1) the strength of the plaintiff's case compared to the amount of the settlement offer, (2) the length, complexity, and expense of further litigation, (3) the amount of opposition to the settlement, (4) the reaction of the class member to the settlement, (5) the opinion of competent counsel, and (6) the stage of the proceedings and amount of discovery completed. *Wong v. Accretive Health, Inc.* 773 F.3d 859, 863 (7th Cir. 2014) (collecting cases).[11] Although these factors are ultimately assessed at the final fairness hearing, a summary version of the analysis takes place at the preliminary approval stage. *Kessler v. Am. Resorts Int'l*, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314)).

---

[11] The third and fourth factors—the amount of opposition to the settlement and the reaction of the class members—are not typically assessed at the preliminary approval stage as notice of the proposed settlement has not yet been administered. *See In re AT & T*, 270 F.R.D. at 349. Accordingly, they are not considered here.

Here, each factor supports the Settlement, which this Court should find "well within the range of possible approval."

### A. The Strength of Plaintiffs' Case, Balanced Against the Benefits of Settlement, Favors Preliminary Approval.

The first and most important factor in assessing a settlement's fairness is the strength of the plaintiff's case compared to the settlement offer. *Synfuel*, 463 F.3d at 653. The analysis begins by making a "ball park valuation" of the value of continued litigation to the class, which is considered in light of associated risks of continued protracted litigation. *See In re AT&T*, 270 F.R.D. at 347 (citing *Donovan v. Estate of Fitzsimmons,* 778 F.2d 298, 309 (7th Cir. 1985)). In addition, because a settlement is a compromise, "courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T*, 270 F.R.D. at 347 (quoting *Isby,* 75 F.3d at 1200) (internal quotations omitted).

Here, the Settlement provides industry-changing injunctive relief. Hangtime has agreed to modify its new user registration process to ensure that its users are made aware of their need to obtain consent from their contacts on behalf of Defendants, and also to modify its terms of service to properly obtain "intermediary" consent from its users' contacts. Hangtime's modification of its practices brings it into compliance with the FCC's *Groupme* Order, which found that a company can rely on consent conveyed by an intermediary so long as the intermediaries are aware of the need to obtain consent from third-parties, and convey that consent to the company. *Groupme* Order at ¶¶ 12-13. Since this settlement does not release the Settlement Class Member's claims for monetary relief under the TCPA, this settlement represents a significant victory for the Class, as it ensures Defendants' full compliance with the law going forward.

Absent a settlement, Defendants were prepared to pursue a motion to strike class

allegations. (*See* dkt. 52.) Although Plaintiffs were confident that they would be permitted to move forward with their class claims, they are also mindful of the fact that victory was not guaranteed. And even if Plaintiffs cleared these hurdles, Defendants would undoubtedly challenge a motion for class certification and file motions for summary judgment, further delaying the possibility of relief to the Settlement Class. (Scharg Decl. ¶¶ 18-19.) Further still, if the case proceeded to trial, other roadblocks—such as the procurement of expert testimony— would stand in the way of Plaintiffs and the class obtaining relief. (*Id.*) And given the amount at stake and its reputational interests, Defendants are nearly certain to appeal any judgment in favor of the class, thus delaying recovery even further. (*Id.* ¶ 19.) And in the end, even if Plaintiffs obtained a judgment for monetary relief, it is doubtful that Hangtime would have the ability to satisfy such a judgment, leaving the class without recovery.

Despite these substantial uncertainties, the Settlement provides real and immediate injunctive relief, while at the same time allowing Settlement Class Members to pursue their claims for monetary relief under the TCPA. In the end, the relief afforded by the Settlement is significant—especially in light of the numerous risks of further litigation—and thus weighs in favor of preliminary approval.

**B.    The Expected Duration, Complexity, and Expense of Further Litigation Weigh in Favor of Preliminary Approval.**

Preliminary approval is favored in cases such as this one, where "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). If this case were not to resolve now, the Parties would have each filed their cross-motions for summary judgment and began briefing on class certification. Regardless of the decision on class certification, the losing party would certainly appeal under Rule 23(f). (Scharg Decl. ¶ 19.) Assuming certification were

granted, if neither party is able to obtain complete victory at the summary judgment phase, the case would be headed for an expensive and high-stakes trial. If anything, this protracted legal fight would deny the Settlement Class with the injunctive relief they seek for years—assuming that they ultimately prevailed at trial. *See In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 964 (N.D. Ill. 2011). The proposed settlement, in contrast, avoids this long and winding path, and instead provides immediate relief to the Settlement Class.

Because the Settlement avoids protracted, costly, and complex litigation, the second factor also weighs in favor of preliminary approval.

### C.    The Opinion of Competent Counsel Supports Preliminary Approval.

The third factor examines the opinion of competent counsel as to whether a proposed settlement is fair, reasonable, and adequate. *Isby*, 75 F.3d at 1200. In assessing the qualifications of class counsel under this factor, a court may rely upon affidavits submitted by class counsel as well as its own observations of class counsel during the litigation. *Id.* Here, and as described in the declaration of Ari J. Scharg of Edelson PC—which has been recognized as "specialize[d] in litigating consumer class actions and hav[ing] pioneered the application of the TCPA to text-messaging technology," *see Ellison*, No. 11-cv-5935, Dkt. 73 at 9—counsel believes that the instant Settlement is fair, reasonable, and adequate. (Scharg Decl. ¶ 17, 21.) This Settlement would, without further delay, bring Defendants in line with the FCC's instructions on how to properly obtain intermediary consent from individuals. Accordingly, it represents a complete victory on the Settlement Class's claim for injunctive relief under the TCPA. The Settlement would also leave Settlement Class Members free to pursue their claims for monetary relief. In light of the circumstances of this case, Class Counsel believe this is a very good result for the Settlement Class.

### D. The Stage of the Proceedings Completed Support Preliminary Approval.

As for the final factor, the instant Settlement was not reached until after the Parties litigated a Rule 12(b)(6) motion to dismiss, completed substantial fact discovery (which included Plaintiff prevailing on a motion to compel discovery), and were on the eve of submitted cross-motions for summary judgment, as well as preparing for class certification briefing. In addition, the parties informally exchanged information and documentations regarding Defendant Hangtime's financial condition, which set the tone for settlement discussions and resulted in the agreed-upon injunctive relief that is at the center of the settlement. (Scharg Decl. ¶¶ 10, 20.) As such, the parties had sufficient information to make knowledgeable decisions about settlement throughout the negotiations, and this factor weighs in favor of the preliminary fairness of the Settlement Agreement.

## VII. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED.

Notice plans generally require consideration of two factors: First, whether the form of the notice is adequate, and second, whether the method of distribution is appropriate given the circumstances of the case. *Kaplan v. Chertoff*, 2008 WL 200108, at *12-13 (E.D. Pa. Jan. 24, 2008). The form of notice is "adequate if it may be understood by the average class member." Conte & Newberg, 4 *Newberg on Class Actions*, § 11:53 at 167 (4th Ed 2002.) The method of distribution of notice is dependent on the subsection of Rule 23(b) used to certify the settlement class. In settlements such as this one, where classes are provisionally certified under Rule 23(b)(2), and not (b)(3), "the stringent requirement of Rule 23(c)(2) that members of the class receive the 'best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts,' is inapplicable." *Kaplan*, 2008 WL 200108, at *12-13. Instead, Rule 23(e) simply mandates that "reasonable notice" be directed to

class members. Fed. R. Civ. P. 23(e)(1).

Unlike claims for monetary relief, the monetary claims of class members in a (b)(2) settlement are not released, and numerous courts, including courts granting approval to (b)(2) settlements concerning TCPA claims for injunctive relief, have exercised their discretion and found that "reasonable notice" was no notice at all, since the settlements included injunctive relief applicable to all and left the class members' claims for monetary relief intact. *See Grant v. Capital Management Svc's L.P.*, 2013 WL 6499698, at *6 (S.D. Cal. Dec. 11, 2013); *see also Jermyn v. Best Buy Stores, L.P.*, 2012 WL 2505644, at *12 (S.D.N.Y. June 27, 2012) (collecting authorities, and holding that "because this injunctive settlement specifically preserves and does not release class members' monetary claims, notice to the class members is not required.").

Here, although notice may be unnecessary for a Rule 23(b)(2) settlement class such as this since the Settlement Class Member's monetary claims remain intact, the Settlement nevertheless provides notice to Settlement Class Members in the form of a settlement website, www.HangtimeTextSettlement.com. This website will serve as the central hub for potential Settlement Class Members to gather information on the settlement. The website will include copies of the notice and other relevant documents and exhibits to the Agreement. It will also describe, in plain and easily understood language the content of the Settlement, and the rights of Settlement Class Members under the Settlement, including their right to object.

Under the circumstances, this website provides reasonable notice to Settlement Class Members of their rights under the Settlement. The Court should therefore approve the proposed notice plan.

**VIII. CONCLUSION.**

For the reasons discussed above, Plaintiffs Zachary Goodman and Derrick Sims

27

respectfully requests that this Court enter an order (1) conditionally certifying the proposed

Settlement Class, (2) naming Plaintiffs as class representatives, (3) appointing Rafey S.

Balabanian, Ari J. Scharg, and John C. Ochoa of Edelson PC and David Pastor of Pastor Law

Office LLP as Class Counsel, and Katrina Carroll of Lite DePalma Greenberg as Liaison

Counsel, (4) granting preliminary approval to the settlement, (5) approving the proposed notice

plan, (6) scheduling a final fairness hearing, and (7) providing such other and further relief as the

Court deems reasonable and just.

Respectfully submitted,

**ZACHARY GOODMAN AND DERRICK SIMS**, individually and on behalf of all others similarly situated,

Dated: May 20, 2015

By:  /s/  John C. Ochoa
One of Plaintiffs' attorneys

Jay Edelson
jedelson@edelson.com
Rafey S. Balabanian
rbalabanian@edelson.com
Ari J. Scharg
ascharg@edelson.com
John C. Ochoa
jochoa@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

David Pastor*
dpastor@pastorlawoffice.com
PASTOR LAW OFFICE, LLP
63 Atlantic Avenue, 3rd Floor
Boston, Massachusetts 02110
Tel: 617.742.9700
Fax: 617.742.9201

Katrina Carroll

28

kcarroll@litedepalma.com
LITE DEPALMA GREENBERG, LLC
One South Dearborn
Suite 1200
Chicago, Illinois 60603
Tel: 312.212.4383
Fax: 312.212.5919
*Counsel for Plaintiffs Zachary Goodman and
Derrick Sims and the putative Class*

## <u>CERTIFICATE OF SERVICE</u>

   I, John C. Ochoa, an attorney, hereby certify that on May 20, 2015, I served the above and foregoing ***Plaintiffs Motion for and Memorandum in Support Preliminary Approval of Class Action Settlement*** by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this 20th day of May 2015.

           /s/ John C. Ochoa
           _____