# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ZACHARY GOODMAN and DERRICK SIMS, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiffs, | ) Case No. 14-CV-1022<br>)<br>) Judge John Robert Blakey |
| v. | )<br>) |
| HANGTIME, INC., a Delaware corporation, and BUC MOBILE, INC. d/b/a HOOK MOBILE, a Delaware corporation, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## HANGTIME, INC. AND HOOK MOBILE'S MOTION FOR RULE 11 SANCTIONS

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................1

II. HOW USERS CONNECT WITH FRIENDS AND FAMILY THROUGH
THE HANGTIME APP ..........................................................................................2

III. PLAINTIFFS CONTINUE TO MAKE UNSUPPORTED STATEMENTS
TO THE COURT ....................................................................................................3

IV. THE COURT SHOULD SANCTION PLAINTIFFS' AND THEIR
COUNSEL FOR SUBMITTING FALSE STATEMENTS ...................................5

    A. The Court Should Award Sanctions Where Statements Are Made
Without Factual Foundation. ......................................................................5

    B. Plaintiffs' Conduct Warrants Heavy Sanctions. .........................................6

V. CONCLUSION AND REQUESTED REMEDY ...................................................7

i

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Brown v. Fed'n of State Med. Boards of the U.S.*,
   830 F.2d 1429 (7th Cir. 1987) ...................................................................................6

*by Mars Steel Corp. v. Cont'l Bank N.A.*,
   880 F.2d 928 (7th Cir. 1989) .....................................................................................6

*Fred A. Smith Lumber Co. v. Edidin*,
   845 F.2d 750 (7th Cir. 1988) .....................................................................................6

*Halim v. Great Gatsby's Auction Gallery, Inc.*,
   No. 03 C 8414, 2007 WL 773286 (N.D. Ill. Mar. 12, 2007) ......................................5

*Ins. Ben. Administrators, Inc. v. Martin*,
   871 F.2d 1354 (7th Cir. 1989) ...................................................................................5

*Manez v. Bridgestone Firestone N. Am. Tire, LLC*,
   533 F.3d 578 (7th Cir. 2008) .....................................................................................5

*Ordower v. Feldman*,
   826 F.2d 1569 (7th Cir. 1987) ...................................................................................5

*Retired Chicago Police Ass'n v. Firemen's Annuity & Benefit Fund of Chicago*,
   145 F.3d 929 (7th Cir. 1998) .....................................................................................5

*Roadway Express v. Piper*,
   447 U.S. 752 (1980).....................................................................................................5

*Stone v. Bloomfield Sav. & Loan, F.A.*,
   No. 86 C 4213, 1987 WL 16911 (N.D. Ill. Sept. 4, 1987)....................................5, 6

**STATUTE**

Fed. R. Civ. Proc.
   Rule 11 ...........................................................................................................1, 2, 4, 5

On January 13, 2015, pursuant to Rule 11, Hangtime sent a copy of this Motion (without signatures and dates) requesting that plaintiffs withdraw their Amended Consolidated Class Action Complaint (ECF No. 46) (the "Amended Complaint") and their opposition to defendants' Motion to Strike Class Allegations (the "Motion to Strike"), ECF No. 52. Twenty-one days have passed and plaintiffs have refused to withdraw their offending statements. As such, Hangtime files this motion requesting relief from the Court.

## I.      INTRODUCTION

Plaintiffs know the facts contradict their allegations, yet persist in asserting them in filings and argument in open court. Despite verified discovery proving that the Hangtime App does not function as alleged, plaintiffs maintain the fictions that form the core of their class action complaint – Hangtime automatically scrapes numbers to send unsolicited messages to consumers to boost its market value. Every party has an obligation to make a diligent factual inquiry before filing a complaint and to submit factually sound statements to the Court. Plaintiffs have not discharged these obligations.

Plaintiffs have not produced any information about how Hangtime's App functions. Thus, all evidence about the App must be sourced from Hangtime. In its discovery responses, Hangtime has made clear how its App functions and that information directly refutes plaintiffs' allegations. By continuing to make statements without evidentiary foundation, plaintiffs have caused Hangtime to incur unnecessary additional legal expense and have wasted the Court's time. Because the core claim is bound up in these false statements, the Court should sanction plaintiff and plaintiffs' counsel under Rule 11, issue terminating sanctions and award Hangtime attorneys' fees and costs.

## II. HOW USERS CONNECT WITH FRIENDS AND FAMILY THROUGH THE HANGTIME APP

The Hangtime App is a social networking tool that allows Users to share events with family members and friends. In the Amended Complaint, plaintiffs allege that Hangtime "scrapes" or secretly collects contacts from its Users to automatically send text messages to non-consenting recipients. *See* ECF No. 46, ¶¶ 14, 24, 26. Well before filing the Amended Complaint, however, plaintiffs had served interrogatories and requests for production of documents inquiring about the Hangtime App, how it works, how text messages are sent, and Hangtime's systems.

In response to plaintiffs' interrogatories, Hangtime explained in detail how text messages are sent using the Hangtime App and provided data relating to Users' activities on the App. When Users download and install the Hangtime App on their phones, they are first asked whether the Hangtime App has permission to access the contacts in their phonebooks. Affidavit of Patrick S. Thompson in Support of Motion to Strike Class Allegations ("Thompson Aff. in Supp. of Motion to Strike"), ¶ 7, Ex. E, at 5. There is no way for the Hangtime App to access a Users' contacts without express consent. *See id*.

Once a User expressly grants Hangtime permission to access his or her contacts, the App presents the User with a list of those contacts from which to select specific contacts or add all of their contacts to the Hangtime App. *See id.* Users also may manually insert contact information of an intended recipient. *Id*. Once the contacts are selected and/or recipients' information is manually entered, a User can tap the "Send" button to send an "add friend" text message notifying the selected contacts about the users' Hangtime profile. *Id.* That profile contains events the Hangtime User is going to, invited to, or might be attending. *Id.*

2

Text messages can only be sent to numbers identified and provided by a Hangtime User when the User initiates a message to his or her contacts. *Id.*; *see also* ECF No. 52-2 (Affidavit of Allan Carroll in Support of Defendants' Motion to Strike ("Carroll Aff.")). Thus, plaintiffs have no factual basis for their assertions that Hangtime automatically scrapes telephone numbers, sends messages without prior knowledge of Hangtime Users, or initiates the transmission of any text messages to third parties.

### III. PLAINTIFFS CONTINUE TO MAKE UNSUPPORTED STATEMENTS TO THE COURT

Despite the evidence produced in discovery, plaintiffs continue to contend that Hangtime "scrapes" calls and secretly sends text messages to recipients without action or knowledge of Hangtime users. For example, in their Opposition to the Motion to Strike, ECF No. 71-1, plaintiffs state:

- "every time the Hangtime mobile application was downloaded onto a user's cell phone, Hangtime---together with its text-message marketing partner, Defendant Hook Mobile, Inc. . . . ---would automatically 'scrape' (i.e., secretly collect) the cell phone numbers stored in a user's address books and then send text message advertisements urging them to join Hangtime's social network." *Id.* at 1 (no evidentiary cite).

- "In technology parlance, this technique is known as "spam-viting" or "growth hacking" and is sometimes used by technology companies (like Hangtime) to quickly gain a large user-base for the purpose of inflating their valuation and attracting investors." *Id*. (no evidentiary cite).

- "Hangtime, together with Hook Mobile, 'scraped' the cell phone numbers from its users' address books and automatically sent pre-programed text message advertisements to such

3

- contacts, all without its users ever knowing about it." *Id.* at 3 (citing to Complaint, ¶¶ 14, 26).

- "Unbeknownst to Mr. [Mitch] Gildenberg, however, during the download process, Hangtime uploaded his cell phone's entire contact list to its servers." *Id.* (citing to Complaint, ¶¶ 17-18, 24, 26).

- "Then, without his knowledge or permission, Hangtime sent the following text message to every cell phone number (including Goodman's) that was stored on his cell phone: Mitch Gildenberg shared events with you on Hangtime http://hangti.me/ZQfUumQyXE/." *Id.* (citing to Complaint, ¶¶ 17, 24, 26).

- "Hangtime users were completely unaware that Defendants were sending promotional text messages to their contacts in the first place . . ." *Id.* at 4 (citing to Complaint, ¶¶ 24, 26-28).

None of these statements is true. Nor could plaintiffs reasonably believe them to be true. Plaintiffs could have investigated their claims by simply downloading the Hangtime App and seeing how it worked. Even such a cursory investigation would demonstrate that Hangtime's discovery responses accurately describe how the App functions and that plaintiffs' allegations are false. Plaintiffs did not produce a shred of evidence about the functioning of the Hangtime App. Without information from their own independent investigation, plaintiffs must rely on Hangtime for information. The information provided by Hangtime directly refutes plaintiffs' allegations, so they have no good faith basis for continuing to make these assertions.

## IV. THE COURT SHOULD SANCTION PLAINTIFFS' AND THEIR COUNSEL FOR SUBMITTING FALSE STATEMENTS

### A. The Court Should Award Sanctions Where Statements Are Made Without Factual Foundation.

By filing a written motion with the court, an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. Proc. 11(b)(3). "If the district court concludes that the motion, pleading, or other document was not well-grounded in fact or warranted by the existing law, or was meant to harass, then the court must impose a sanction." *Ins. Ben. Administrators, Inc. v. Martin*, 871 F.2d 1354, 1357 (7th Cir. 1989).

"No matter who allegedly commits a fraud on the court—a party, an attorney, or a nonparty witness—the court has the inherent power to conduct proceedings to investigate that allegation and, if it is proven, to punish that conduct." *Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 585 (7th Cir. 2008); *see also Roadway Express v. Piper,* 447 U.S. 752, 766 (1980) (finding that a court may sanction bad faith conduct under the court's power to protect the authority and dignity of the court). The Court should exercise that broad discretion to impose sanctions in this case because plaintiffs have continued to make reckless statements about Hangtime's practices without any genuine factual basis.[1]

---

[1] While bad faith is sufficient to warrant a sanction, *see Roadway Express v. Piper,* 447 U.S. 752, 766 (1980) (finding that a court may sanction bad faith conduct under the court's power to protect the authority and dignity of the court), Rule 11 can be violated even without bad faith. *Ordower v. Feldman*, 826 F.2d 1569, 1574 (7th Cir. 1987); *Halim v. Great Gatsby's Auction Gallery, Inc.*, No. 03 C 8414, 2007 WL 773286, at *1 (N.D. Ill. Mar. 12, 2007) ("A finding of bad faith is not a prerequisite to imposing Rule 11 sanctions."); *see also Retired Chicago Police Ass'n v. Firemen's Annuity & Benefit Fund of Chicago*, 145 F.3d 929, 934 (7th Cir. 1998)

5

**B.     Plaintiffs' Conduct Warrants Heavy Sanctions.**

The Court should exercise its significant discretion to impose sanctions against plaintiffs. In determining what sanctions to impose, courts may consider various factors, including whether the conduct was willful, whether it infected an entire pleading or claim, and the effect on the resources expended in the litigation. Fed. R. Civ. Proc. 11 Advisory Committee Notes for 1993 Amendments. Considering these factors on this record, the Court should impose terminating sanctions, or, in the alternative, strike plaintiffs' opposition to Defendants' Motion to Strike, and order plaintiffs and their counsel pay Hangtime's attorneys' fees and costs.

From the outset of this case, plaintiffs have asserted that Hangtime secretly collects contacts from its users and automatically sends text messages to third parties in violation of the Telephone Consumer Protection Act. Given the information provided by Hangtime in discovery, plaintiffs, who are represented by experienced counsel, have no excuse for continuing to make factually invalid assertions about Hangtime's practices.[2]

Because the core of plaintiffs' class actions complaint arises out of these unsupported statements, the sanction should be significant. *See Stone*, 1987 WL 16911, at *1 (imposing sanctions where "[p]laintiffs' class certification motion was not based on a reasonable

---

(sustaining Rule 11 sanctions without finding of bad faith where "[counsel] did not conduct a factual inquiry . . . and filed [class] claims that had no basis in fact"); *Stone v. Bloomfield Sav. & Loan, F.A.*, No. 86 C 4213, 1987 WL 16911, at *2 (N.D. Ill. Sept. 4, 1987) (holding sanctions were warranted because "plaintiffs' motion for class certification had no basis in fact or in law" without finding bad faith).

[2] "To determine whether the attorney in question made a reasonable inquiry into the law, the district court should consider: the amount of time the attorney had to prepare the document and research the relevant law; whether the document contained a plausible view of the law; the complexity of the legal questions involved; and whether the document was a good faith effort to extend or modify the law." *Brown v. Fed'n of State Med. Boards of the U.S.*, 830 F.2d 1429, 1435 (7th Cir. 1987) *abrogated on other grounds by Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928 (7th Cir. 1989).

6

interpretation of the facts and was without foundation" and finding available evidence demonstrated that issues "will require individual proofs for each class member").

As a result of plaintiffs' charade, Hangtime and the Court have devoted resources to continued litigation of an action that should not have been initiated in the first place. In light of the record, the Court should impose substantive and monetary sanctions. *See Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 754 (7th Cir. 1988) (finding that the "case present[ed] an appropriate occasion for imposing sanctions" where counsel "persisted in advancing the objectively unreasonable claims").

## V. CONCLUSION AND REQUESTED REMEDY

Plaintiffs' false statements form the gravamen of this class action complaint. Because they were not the product of any reasonable inquiry or investigation, and are directly refuted by the evidence adduced in discovery, the Court should enter terminating sanctions, dismissing the Complaint with prejudice. In the event that the Court does not award terminating sanctions, Hangtime requests that the Court sanction plaintiffs by striking the class allegations because plaintiffs have no good faith basis for the arguments asserted in opposition to Defendants' Motion to Strike Class Allegations.

In addition, plaintiffs' filing of unsupported statements has forced Hangtime to bear needless additional legal expense for which it should be reimbursed by plaintiffs and their counsel.

Date: June 23, 2015                                    Respectfully submitted,

/s/ Patrick S. Thompson
Patrick S. Thompson (*pro hac vice*)
*pthompson@goodwinprocter.com*
Hong-An Vu (*pro hac vice*)
*hvu@goodwinprocter.com*
GOODWIN PROCTER LLP
Three Embarcadero Center, 24th Floor
San Francisco, California 94111
Tel.: 415.733.6000
Fax.: 415.677.9041

Brian W. Cook (*pro hac vice*)
*bcook@goodwinprocter.com*
GOODWIN PROCTER LLP
53 State Street
Boston, MA 02109
Tel.: 617.570.1000
Fax.: 617.523.1231

Louis D. Bernstein
*lbernstein@law-ldb.com*
BERNSTEIN LAW FIRM
350 N. Clark Street, Suite 400
Chicago, IL 60654
Tel.: 312.645.6090
Fax.: 866.929.7392

Attorneys for Defendants
HANGTIME, INC. and BUC MOBILE, INC.

**CERTIFICATE OF SERVICE**

  I, Patrick S. Thompson, an attorney, certify that on June 23, 2015, I caused to be filed Hangtime, Inc. and Hook Mobile's Motion for Rule 11 Sanctions, which was served upon all parties of record by the CM/ECF system.

                /s/ Patrick S. Thompson
                Patrick S. Thompson