**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ZACHARY GOODMAN and DERRICK SIMS, individually and on behalf of all others similarly situated, | Case No. 1:14-cv-01022 |
| Plaintiffs, | [Hon. John Robert Blakey] |
| v. | |
| HANGTIME, INC., a Delaware corporation, and BUC MOBILE, INC. d/b/a Hook Mobile, a Delaware Corporation, | |
| Defendants. | |

**PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF APPROVAL OF
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS**

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................1

II.     BACKGROUND .............................................................................3

        A.      The Telephone Consumer Protection Act ..............................................3

        B.      The underlying claims .................................................................4

        C.      The litigation history and the work performed ......................................4

                1.      Class Counsel's self-consolidation efforts were opposed by
                        Defendants, who then inexplicably petitioned the JPML to transfer
                        the cases to the Northern District of California ...........................5

                2.      Class Counsel's discovery efforts ...........................................7

                3.      Hangtime's excessive motion practice ......................................8

        D.      Settlement negotiations and the resulting Settlement ...............................11

III.    ARGUMENT ................................................................................12

        A.      Class Counsel's fee request is eminently reasonable under Illinois law .........13

                1.      Class Counsel is well-qualified and possess the requisite skill to
                        prosecute this action .......................................................16

                2.      The nature of the services Class Counsel performed for Plaintiffs and
                        the Class were reasonable and necessary ....................................18

                        i.      Plaintiffs are entitled to recover their requested attorneys' fees
                                for Class Counsel's discovery efforts and for opposing
                                Hangtime's motion to stay the *Goodman* Action ......................19

                        ii.     Plaintiffs are entitled to their attorneys' fees in connection with
                                their motions for class certification .............................21

                        iii.    Plaintiffs are entitled to their attorneys' fees for opposing
                                Defendants' motion to strike class allegations ....................22

                        iv.     Class Counsel is entitled to their attorneys' fees for their
                                efforts to coordinate and self consolidate their respective
                                lawsuits ..........................................................23

                        v.      Class Counsel is entitled to reasonable attorneys' fees for
                                litigating the *Sims* Action before consolidation with the
                                *Goodman* Action .................................................24

i

vi.     Hangtime's position that Lite DePalma Greenberg LLC should
        not be compensated for their time is without merit.................25

vii.    Hangtime's request that certain of Class Counsel's time be
        reduced should be rejected...................................................27

3.      This litigation presented complex legal issues, including novel issues of
        first impression.................................................................................29

4.      Class Counsel's hourly rates are reasonable and have been approved
        by numerous courts throughout the country .....................................30

5.      Class Counsel conferred valuable injunctive benefits upon the Class
        through the Settlement .......................................................................31

B.      The requested incentive awards are reasonable and should be approved .....31

IV.     CONCLUSION ......................................................................................................32

# TABLE OF AUTHORITIES

## United States Supreme Court Cases

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .................................................................12

*Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740 (2012)..................................................3

## United States Circuit Court of Appeals Cases

*Chapman v. First Index, Inc.*, --- F.3d ---, 2015 WL 4652878 (7th Cir. Aug. 6, 2015) ..........10, 21

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) ..........................................................31

*Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2011) ...........................10, 21, 26

*Laserage Tech. Corp. v. Laserage Labs, Inc.*, 972 F.2d 799 (7th Cir. 1992) ........ 12-13

*Matthews v. Wisconsin Energy Corp., Inc.*, 642 F.3d 565 (7th Cir. 2011)....................13

*Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518 (7th Cir. 1999) .............13, 18

*Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748 (7th Cir. 2010) ......................15

*Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014) ........................................2

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012) .........................3

## United States District Court Cases

*American Intern. Group, Inc. v. ACE INA Holdings, Inc.*,
    2011 WL 3290302 (N.D. Ill. July 26, 2011)............................................... 22-23

*Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014) ..............16

*Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109 (C.D. Cal. 2012) ................22

*Dunstan v. ComScore, Inc.*, No. 11-cv-5807, Dkt. 369 (N.D. Ill. Oct. 1, 2014) ...................16, 30

*Ellison v. Steven Madden, Inc.*, No. 11-cv-05935, Dkt. 73 (C.D. Cal. May 7, 2013) .............16, 30

*Frere v. Orthofix, Inc.*, 2000 WL 34511335 (S.D.N.Y. June 7, 2000).........................23

*Gross v. Symantec Corp.*, No. 3:12-cv-00154-CRB, Dkt. 88 (N.D. Cal. Mar. 21, 2014) .............30

In re *Facebook Privacy Litig.*, No. C 10-02389 (N.D. Cal. Dec. 10, 2010) ...............................16

In re *Jiffy Lube Int'l Text Spam Litig.*, 11-cv-0865, Dkt. 24 (S.D. Cal. 2012) ............................17

In re *Motorola Securities Litig.*, 505 F. Supp. 2d 501 (N.D. Ill. 2007) ........................................17

In re *OSB Antitrust Litig.*, 2007 WL 2253419 (E.D. Pa. Aug. 3, 2007) ........................................17

In re *Tenet Healthcare Corp. Sec. Litig.*, 2007 WL 5673884 (C.D. Cal. Dec. 5, 2007) ..............17

*Kramer v. Autobytel, Inc.*, No. 10-cv-2722 (N.D. Cal. 2010) ........................................................32

*Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999 (N.D. Ill. 2010) ....................3

*Lozano v. Twentieth Century Fox Film Corp.*, No. 09-cv-06344, Dkt. 64 (N.D. Ill.) .............16, 32

*McCain v. Rust-Oleum*, No. 14-cv-4852 (N.D. Ill. 2014) ..............................................................17

*Mednick v. Precor, Inc.*, No. 14-cv-3624 (N.D. Ill. 2014) ............................................................17

*Miller v. J. Crew Group, Inc.*, No. 13-11487-RGS (D. Mass.) ................................................17, 31

*Miller v. Red Bull N. Am., Inc.*, No. 12-cv-4961, Dkt. 58 (N.D. Ill. 2013) ............................ 30-31

*Perry v. Equity Residential Management LLC,* 2014 WL 4198850 (D. Mass. Aug. 26, 2014) ....17

*Plump v. Kraft Foods N. Am., Inc.*, 2003 WL 22299019 (N.D. Ill. Oct. 6, 2003) ........................19

*Rojas v. Career Educ. Corp.*, No. 10-cv-5260, Dkt. 55 (N.D. Ill.) ..........................................16, 32

*Rosen v. Spirit Airlines, Inc.*, 2015 WL 3798150 (N.D. Ill. June 17, 2015) ................................23

*SKF USA Inc. v. Bjerkness*, 2011 WL 4501395 (N.D. Ill. Sept. 27, 2011) ...................................18

*Weinstein v. 12 AIRIT2ME, Inc.*, No. 1:06-cv-00484 (N.D. Ill. 2008) ........................................32

*Yaakov v. ACT, Inc.*, 987 F. Supp. 2d 124 (D. Mass. 2014) ...........................................10, 21, 24

**State Court Cases**

*Donnelley v. Donnelley*, 80 Ill. App. 3d 597 (1980)......................................................................17

*GMAC Mortg. Corp. of Pa. v. Stapleton*, 236 Ill. App. 3d 486 (1st Dist. 1992) .........................31

*Kaiser v. MEPC Am. Properties, Inc.*, 164 Ill. App. 3d 978 (1st Dist. 1987) ............13, 16, 30, 31

*Miller v. Fresh, Inc.*, 14-CV-0889 (Suffolk (MA) Super. Ct. July 15, 2015)...............................30

**Rules and Statutes**

47 U.S.C. § 227(b) ...................................................................................................... 3-4

Fed. R. Civ. P. 23 .........................................................................................................12

**Miscellaneous Authority**

*In re GroupMe, Inc./Skype Communications S.A.R.L Petition for Expedited Declaratory Ruling,*
*Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Declaratory
Ruling, 29 FCC Rcd. 3442 (Mar. 27, 2014) ....................................................29

## I.      INTRODUCTION

The Class Action Settlement that forms the basis for Plaintiffs Zachary Goodman's ("Goodman") and Derrick Sims' ("Sims") (collectively, "Plaintiffs") petition for attorneys' fees, expenses, and incentive awards is the result of a year and a half of hard-fought litigation, which included briefing and argument before the Judicial Panel of Multistate Litigation on Defendants' petition to transfer, extensive motion practice, substantial class- and merits-based discovery, numerous discovery-related disputes that ultimately resolved in the filing of Plaintiffs' successful motion to compel documents and depositions, and several rounds of arms'-length negotiations. The Settlement, if finally approved, is a significant result that—in light of Defendant Hangtime, Inc.'s ("Defendant" or "Hangtime") poor financial condition and inability to deliver any meaningful monetary relief to the Class given the number of texts at issue (millions)—provides valuable benefits by (i) enjoining Hangtime from sending any more spam text messages to the Class, (ii) requiring Hangtime to significantly modify the process by which they present their terms of service to, and obtain prior express consent from, the Class, and (iii) preserving the Class's claims to pursue statutory damages.

Relevant to this motion, the Settlement also requires Hangtime to pay reasonable attorneys' fees to Class Counsel and incentive awards to the Class Representatives in an amount determined by the Court upon petition by Plaintiffs. In circumstances such as this, where the obligation to pay attorneys' fees is contractual and the underlying statute doesn't contain a fee-shifting clause, courts are directed to determine the amount of the fee award in accordance with applicable state laws. Here, the Settlement expressly includes an Illinois choice of law provision, and under Illinois law, the analysis focuses on whether the requested fees were "reasonably and necessarily" incurred during the pendency of the litigation. Here, Plaintiffs respectfully request

1

that the Court grant Class Counsel a combined fee award in the amount of $395,012.98, broken down as follows:

- Edelson PC: $220,666.50;

- Pastor Law Office LLP: 95,858.98; and

- Lite DePalma Greenberg, LLC: $78,487.50.

As explained in more detail below, this fee request is eminently reasonable, and is a reflection of the hard-fought and contentious nature of the litigation. Plaintiffs also request that the Court award each of them $4,000 ($8,000 total) for serving as Class Representatives in this matter.[1]

Pursuant to the Court's June 30, 2015 Order and Local Rule 54.3, Plaintiffs have met and conferred with Hangtime with respect to the amount of the attorneys' fees sought through the instant motion. As reflected in the Parties' Local Rule 54.3 Joint Statement (attached as Exhibit 1), Hangtime is not contesting $87,184.00 (i.e., approximately 20%) of Class Counsel's total request—*despite that its own attorneys billed over $445,000 on this matter themselves*. Notably, Hangtime does not contest Class Counsel's hourly rates or qualifications, but rather, takes the unsupportable position that Class Counsel can't recover any fees whatsoever for the time spent: (1) consolidating the underlying lawsuits, (2) responding to Defendants' separately-filed motion to stay and motion to strike class allegations, (3) engaging in discovery, (4) drafting Plaintiffs' motion for class certification, (5) negotiating the Settlement and drafting and presenting the preliminary approval papers to the Court, and (6) litigating the *Salam* and *Sims* Actions by Lite

---

[1]  Plaintiffs are bringing this motion now—as opposed to in conjunction with their motion for final approval of class action settlement—to provide the Class with a sufficient amount of time in advance of the September 11, 2015 objection deadline to review and consider the requested fees and incentive awards. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 637-38 (7th Cir. 2014). Plaintiffs will post the instant motion onto the settlement website immediately upon filing, and ask that the Court defer ruling on this motion until the September 29, 2015 final fairness hearing.

DePalma Greenberg and the Pastor Law Office, respectively, before those cases were consolidated into this action.

In the end, Hangtime's challenges to the requested fees are not only hypocritical (given that its own lawyers billed more than all three sets of plaintiffs' lawyers combined), but are also undermined by its own attorneys' conduct in this matter. As discussed below, a considerable amount of the time spent litigating this case was made necessary by Hangtime's counsel, who employed an overly-aggressive litigation strategy that ignored the Court's professionalism and civility guidelines. For these reasons, as explained further below, Plaintiffs respectfully request that the Court approve the requested attorneys' fees and incentive awards.

## II.      BACKGROUND

What follows is a brief overview of the lawsuit and the applicable law, and a description of the work performed by Class Counsel that was necessary to prosecute the case and negotiate the resulting settlement.

### A.      The Telephone Consumer Protection Act

With respect to the relevant law, Congress passed the TCPA in response to "voluminous consumer complaints," and to protect the privacy of consumers. *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 744 (2012); *see also Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012) (noting that the TCPA was passed to combat the "expense and annoyance" of autodialed telemarketing calls placed to consumers' cell phones); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1011 (N.D. Ill. 2010) (finding that "the TCPA serves a significant government interest of minimizing the invasion of privacy caused by unsolicited telephone communications to consumers."). The TCPA is a means to combat the growing threat to privacy posed by automated telemarketing practices, and states that:

It shall be unlawful for any person within the United States . . . to make any call

(other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system. . . .

47 U.S.C. § 227(b)(1)(A)(iii). The TCPA applies to traditional phones calls as well as text messages. *Lozano,* 702 F. Supp. 2d at 1009. But calls made with the "prior express consent" of the recipient are exempted. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

The TCPA sets statutory damages in the amount of $500 per violation (which may be trebled if the conduct is found to be willful) and provides for injunctive relief prohibiting the further transmission of such messages without consent. 47 U.S.C. § 227(b)(3)(A)-(B).

## B.     The underlying claims

Hangtime is a technology company that operates a social networking platform accessible on its users' smartphones. (*See* Consolidated Class Action Complaint, *Goodman* Dkt. 46, ¶ 1.) To join Hangtime's social network, users download the Hangtime mobile application onto their cell phones, which is available on Hangtime's website. (*Id.* ¶¶ 14, 19.) Plaintiff Goodman and Sims allege that, in the hopes of attracting outside investors, Defendants created a new mobile marketing campaign that was designed with the goal of quickly inflating the size of its user base. (*Id.* ¶¶ 13, 14.) Plaintiffs allege that to accomplish that goal, Defendants collected cell phone numbers from their existing users' address books and then sent spam text message advertisements to such contacts (who Defendants viewed as prospective users) without their permission or consent. (*Id.* ¶¶ 14, 24.) Indeed, discovery revealed that Hangtime users are never asked to obtain consent from their contacts to receive any text messages of any kind from Defendants. (*Goodman* Dkt. 96-1, Exhibit 2, Interrogatory Response No. 2.) According to Plaintiffs, this conduct constitutes a willful violation of the TCPA.

## C.     The litigation history and the work performed

This litigation has been contentious and marked by numerous contested motions and

discovery disputes. As explained below, Hangtime's uncooperative approach and ostrich-like tactics (including their outright refusal to telephonically meet and confer on any issue), forced Class Counsel to expend time and resources (i) presenting routine issues to the Court that the Parties should have been able to resolve between themselves, and (ii) opposing the litany of baseless motions filed by Hangtime. Tellingly, Plaintiffs prevailed on every one of their motions (including their motion to compel the production of certain documents and discovery), while Hangtime failed to prevail on any of the motions it filed, including its most recent motion for sanctions that was summarily denied by the Court at the presentment hearing. (*Goodman* Dkt. 107.) Despite Hangtime's tactics, Plaintiffs persevered in obtaining the information needed to prosecute their claims, and ultimately put themselves in a position to negotiate a strong settlement for the Class.

What follows is an overview of the procedural history of this consolidated class action.

1.  **Class Counsel's self-consolidation efforts were opposed by Defendants, who then inexplicably petitioned the JPML to transfer the cases to the Northern District of California.**

This consolidated action began as three separate cases before three different judges across two jurisdictions. The *Goodman* action was first filed in the Circuit Cook of Cook County on January 16, 2014, and subsequently removed to this Court. (*Goodman* Dkt. 1.) The *Salam* action was filed on February 19, 2014 in the Northern District of Illinois, and was assigned to Judge Dow. (*Salam v. Hangtime, Inc.*, No. 14-cv-01252 (N.D. Ill.).) And the *Sims* action was filed on February 26, 2014 in the District of Massachusetts. (*Sims v. Hangtime, Inc.*, No. 14-cv-10427 (D. Mass.).)

For their part, soon after the *Sims* Action was filed—and in the spirit of cooperation and conservation of judicial resources—counsel for Goodman and counsel for Sims conferred in an

effort to find a suitable method for jointly prosecuting their claims. Following multiple conferences, both parties agreed that it would be in the best interests of judicial economy and efficiency to litigate their clients' claims together in one lawsuit. (Declaration of Ari J. Scharg ("Scharg Decl."), ¶ 4.) As a result, on June 17, 2014, Goodman moved for leave to file an amended complaint for the sole purpose of adding Sims as a party-plaintiff. (*Goodman* Dkt. 21.) Goodman's motion was subsequently granted—over Hangtime's opposition—and on July 7, 2014, Plaintiffs filed their amended complaint. (*Goodman* Dkts. 31, 32.)

In the interim, despite opposing Plaintiffs' efforts to self-consolidate the cases, Hangtime filed a motion with the Judicial Panel on Multidistrict Litigation ("JPML") seeking to transfer the pending cases to the Northern District of California pursuant to 28 U.S.C. § 1407. (*In re Hangtime TCPA Litig.*, MDL 2563, Dkt. 25.) Hangtime also moved to stay the *Goodman* case pending a ruling on its motion before the JPML, which Plaintiffs successfully opposed, thus enabling discovery to move forward. (*Goodman* Dkts. 23, 30, 31.)

To maximize efficiency, Plaintiffs coordinated amongst themselves and filed a combined opposition to Hangtime's motion to transfer on July 8, 2014, arguing that their efforts at self-consolidating and efficiently litigating their claims would be hamstrung by transferring the cases to join the most nascent of the actions against Hangtime.[2] (MDL Dkt. 15.) After full briefing and oral argument, the JPML denied Hangtime's motion to transfer, thus clearing a path for the Plaintiffs' case against Hangtime to continue in their chosen forum. (MDL Dkt. 22.) Shortly thereafter, on July 23, 2014, Plaintiffs successfully moved to reassign and consolidate the

---

[2] On May 15, 2014, almost three months after the *Goodman* case was filed, a fourth class action lawsuit against Hangtime was filed captioned *Kozlow v. Hangtime, Inc.*, No. 14-cv-2249 (N.D. Cal.). On April 7, 2015, that case was dismissed with prejudice, without releasing the claims of putative class members in any way. (*See id.* dkt. 49.)

*Goodman* and *Salam* Actions for all purposes. (*Goodman* Dkt. 42.)[3]

### 2. Class Counsel's discovery efforts

In the midst of this dispute over venue, Plaintiffs pushed forward with discovery. On July 2, 2014, Plaintiffs served their Rule 26(a)(1) initial disclosures. (Scharg Decl. ¶ 5.) On August 5, 2014, Hangtime served its Rule 26(a)(1) initial disclosures. (*Id.*) On June 10, 2014, Plaintiffs served document requests on Hangtime. (*Id.*) Hangtime responded on August 13, 2014, and supplemented its answers on December 15, 2014, after a protective order was entered on November 26, 2014. (*Id.*; *see also Goodman* Dkts. 57 & 61.) Hangtime then produced documents on December 15, 2014. (*Id.*) On June 17, 2014, Plaintiff Goodman issued a subpoena for documents to Hook Mobile (prior to its addition as a defendant in this case). (*Id.* ¶ 6.) Hook Mobile responded on August 11, 2014, and produced documents on December 12, 2014. (*Id.*) Plaintiffs likewise issued subpoenas to Neustar, Inc. and Cellco Partnership d/b/a Verizon Wireless on July 7, 2014, T-Mobile U.S.A. on November 5, 2014 and Twilio, Inc. on January 9, 2015. (*Id.*)

On June 10, 2014, Plaintiffs also served interrogatories on Hangtime. (Scharg Decl. ¶ 5.) Hangtime responded on August 13, 2014, indicating that it would supplement its responses upon entry of a protective order. (*Id.*) On December 5, 2014, after entry of the protective order, Hangtime supplemented its responses. (*Id.*) On October 10, 2014, Defendants served interrogatories on Plaintiffs. (*Id.* ¶ 7.) Plaintiff Goodman responded on November 12, 2014, and Plaintiff Sims responded on November 13, 2014. (*Id.*) Both Plaintiffs supplemented their responses on December 9, 2014. (*Id.*) On December 3, 2014, Defendants served Requests for Admission on Plaintiffs, to which Plaintiffs responded on January 5, 2015. (*Id.*)

---

[3] Salam later dismissed his individual claim against Defendants in order to streamline the litigation against Hangtime and Hook Mobile. (*Goodman* Dkts. 62, 70)

On July 8, 2014, Plaintiffs noticed the 30(b)(6) deposition of Hangtime. (Scharg Decl. ¶ 5.) On January 14, 2015, Plaintiffs noticed the 30(b)(6) deposition of Hook Mobile. (*Id.*) On January 14, 2015, Plaintiffs also noticed the deposition of Allan Carroll, Hangtime's Chief Technology Officer. (*Id.*) Defendants deposed Plaintiff Goodman and Plaintiff Sims on January 15th and 20th, 2015, respectively. (*Id.* ¶ 11.)

Then, on January 26, 2015, after a lengthy meet-and-confer process, Plaintiffs moved to compel Hangtime and Hook Mobile to produce relevant documents and produce their employees for deposition. (Scharg Decl. ¶ 8; *Goodman* Dkt. 79.) Specifically, Plaintiffs moved Defendants to produce the following documents: (1) the logs for the text message transmissions at issue, (2) communications relating to the development, implementation, and execution of Hangtime's promotional text message campaign, (3) documents evidencing the Hangtime user registration process, (4) communications and applicable policies and procedures related to Defendants' "consent" defense, and (5) documents related to the technology and equipment that Defendants used to transmit their promotional text messages. (*Goodman* Dkt. 79.) The Court granted all of the relief sought through Plaintiffs' motion to compel on February 11, 2015. (*Id.* Dkt. 87.)

### 3.      Hangtime's excessive motion practice

In light of Defendants' litigation tactics, this case also involved a significant amount of contested motion practice.

First, as explained above, Defendants vehemently opposed Plaintiffs' efforts to self-consolidate the three underlying cases in a single court. In fact, Hangtime even rejected Sims' request to enter a stipulation of dismissal in the District of Massachusetts action—which would have actually helped Hangtime by narrowing the cases to one jurisdiction. Although the *Sims* Court ultimately allowed the dismissal, Sims still was required to expend time on briefing the

8

issue and responding to Hangtime's request for monetary sanctions. (*Sims* Dkts. 16, 18, 23, 27; Declaration of David Pastor ("Pastor Decl.") at ¶ 13.)

Likewise, Hangtime also opposed Goodman's motion for leave to amend his complaint to add Sims as a party-plaintiff, and in doing so, required Plaintiffs to brief and litigate another seemingly routine matter that the Parties should have been able to resolve privately without the need for motion practice or the Court's involvement. (*Goodman* Dkts. 21, 29.) Like every other motion that Plaintiffs were forced to file in this case, that motion for leave to amend was granted. (*Id.* Dkt. 31.) And later, Hangtime also rejected Plaintiffs' attempts to relate and consolidate the *Goodman* and *Salam* actions, which necessitated another round of contentious motion practice on an issue that should have been routine. (*Id.* Dkts. 33, 38.) During that time, Plaintiffs also briefed and argued (and defeated) Defendants' baseless motion to transfer the cases to the Northern District of California, and successfully opposed Defendants' motion to stay discovery. (*Goodman* Dkt. 31; MDL Dkts. 1, 15, 16, 22.)

After Plaintiffs filed their Consolidated Complaint, Defendants filed successive motions under Federal Rule of Civil Procedure 12. (*Goodman* Dkts. 47, 52.) In the first motion, Defendants argued that Plaintiffs' class allegations should be stricken under Rule 12(f) because each class member supposedly provided their "consent" to receive text messages by virtue of providing their phone numbers to Hangtime users, and that determining the scope of such consent would have to be done on an individual basis. (*Id.* Dkt. 52.) In their second motion, Defendants argued that the Consolidated Complaint should be dismissed under Rule 12(b)(6) because Plaintiff Salam wasn't included as a party-plaintiff. (*Id.* Dkt. 47.) As explained in Plaintiffs' combined response, Defendants' motion to strike class allegations was premature and relied on overt mischaracterizations of the claims at issue, and the motion to dismiss failed to

articulate a single reason—or cite a single authority—to support their argument that all plaintiffs that were named in the underlying suits must be named as class representatives in a consolidated action. (*Id.* Dkt. 71.) On February 3, 2015, the Court denied Defendants' motion to dismiss, but has not ruled on Defendants' motion to strike class allegations given that the Parties reported that they were engaged in settlement discussions.[4]

Plaintiffs also engaged in substantial class certification briefing. Initially, Plaintiffs filed motions for class certification in their respective cases (before consolidation) in light of the then-current risk in the Seventh and First Circuits that a defendant could "moot" a plaintiff's putative class action lawsuit by making an individual settlement offer of complete relief prior to the filing of a class certification motion. *See, e.g., Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011) *overruled by Chapman v. First Index, Inc.*, --- F.3d ---, 2015 WL 4652878 (7th Cir. Aug. 6, 2015); *Yaakov v. ACT, Inc.*, 987 F. Supp. 2d 124, 129 (D. Mass. 2014) (certifying question for appeal of whether an unaccepted Rule 68 offer of judgment to the plaintiff in a putative class action, made before the plaintiff files a motion for class certification, moots the entire class action). Later, after Plaintiffs obtained the necessary evidence through discovery, Plaintiffs drafted a comprehensive supplemental motion for class certification, which would have been filed had the instant settlement not been reached. (Scharg Decl. ¶ 10.)

Further, as explained above, Plaintiffs were forced to file a combined motion to compel Defendants to produce certain documents and witnesses and to extend the fact discovery deadline. This combined motion followed significant meet-and-confer efforts by Plaintiffs in an

---

[4] Defendants also served a misguided motion for sanctions under Fed. R. Civ. P. 11 on Plaintiffs on January 13, 2015, which Plaintiff had to prepare to respond to. (Scharg Decl. ¶ 12.) Defendants filed this Rule 11 motion five months later on June 23, 2015; however, briefing was not necessary, as the Court denied the motion at the June 25th presentment hearing. (*Goodman* Dkt. 107.)

attempt to resolve the dispute without resort to motion practice. (Scharg Decl. ¶ 7; *Goodman* Dkt. 79.) The Court granted Plaintiffs' motion in full on February 11, 2015. (*Goodman* Dkt. 87.)

### D. Settlement negotiations and the resulting Settlement

With the dispositive motion deadline fast approaching, the Parties began discussing a possible resolution of this lawsuit. (Scharg Decl. ¶ 14.) As part of these discussions, Hangtime represented to Plaintiffs that it was financially unable to satisfy a judgment or enter into a class-wide settlement that would provide the proposed class members (which number in the millions) with meaningful monetary relief, a fact that Plaintiffs confirmed through exchange of documentation reflecting Hangtime's financial condition. (*Id*.) Therefore, the settlement discussions focused on Plaintiffs' request for injunctive relief, which was a primary goal of Plaintiffs' lawsuit. (Settlement Agreement[5] ("Settlement"), at ¶ 4, 7.1, 7.2; *see also* Scharg Decl. ¶ 14.) After a series of arms'-length negotiations, the Parties ultimately agreed to settle the action on a Rule 23(b)(2) basis, on the following terms of injunctive relief:

    (a)    Hangtime will modify its terms of service for its mobile application to ensure that it obtains the representation of any user inviting any other person to join Hangtime's mobile app that each individual receiving an invitation has expressly consented to receive a text message invitation from Hangtime;

    (b)    Hangtime will display its terms of service to new users during the registration process through a "pop up" dialogue box, and new users will indicate their acceptance of such terms by checking a box containing the phrase "I agree" or "I accept"; and

    (c)    Hangtime will not send text messages to the Settlement Class for any reason unless consent is first obtained in accordance with Paragraph 2(a) and (b), above.

(Settlement ¶¶ 2.1, 2.2.) Notably, the Settlement expressly preserve the Class's claims to pursue statutory damages. (*Id.* ¶ 1.20.)

---

[5] The Settlement Agreement can be found at *Goodman* Dkt. 96-2.

In connection with this Settlement, Plaintiffs expended time negotiating the settlement papers and drafting and presenting the preliminary approval motion, which this Court granted on May 28, 2015. (Dkt. 100.) In addition to the substantial work already performed on behalf of the Class, Class Counsel's efforts are far from over, as they must still draft their motion for final approval, prepare for the final fairness hearing, and maintain the settlement website. (Scharg Decl. ¶ 25.)

In the end, in order to realize this relief for the benefit of the Class, Class Counsel was required to spend nearly 1,000 hours litigating this case without compensation. For that reason, Hangtime expressly agreed to pay reasonable attorneys' fees and expenses to Class Counsel and incentive awards to Plaintiffs and Class Representatives in an amount to be determined by the Court. (Settlement ¶¶ 7.1, 7.2.)

## III.     ARGUMENT

Under Federal Rule of Civil Procedure 23, "the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or *by the parties' agreement*." Fed. R. Civ. P. 23(h) (emphasis added). Thus, Rule 23(h) provides a procedural basis for the award of attorneys' fees in the context of a class settlement, and here, Defendant has agreed to pay Class Counsels' reasonable attorneys' fees. (Settlement ¶ 7.1.) Still, the Court must approve any award of fees in a class action despite the Parties' contractual agreement. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 437 (1983) (noting that "[i]t remains for the district court to determine what fee is reasonable") (internal quotation omitted).

Because Hangtime's obligation to pay attorneys' fees in this case is contractual and the underlying statute doesn't contain a fee-shifting provision, the Court should determine the amount of the fee award in accordance with applicable state laws. *See Laserage Tech. Corp. v.*

*Laserage Labs, Inc.*, 972 F.2d 799, 802 (7th Cir. 1992) (finding that a settlement agreement is a contract, and as such, the construction and enforcement of settlement agreements are governed by principles of local law applicable to contracts generally); *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 519 (7th Cir. 1999) (holding that Illinois law provides the rules for the meaning and enforcement of indemnity agreement in contract). Here, the Settlement expressly includes an Illinois choice of law provision (Settlement ¶ 9.14), and thus, Illinois law should be applied to determine Class Counsel's fee award.

### A.   Class Counsel's fee request is eminently reasonable under Illinois law.

Under Illinois law, to recover an attorneys' fee award based upon a contractual provision, the movant must (1) provide the time records upon which the fee request is predicated, and (2) establish that the requested fee is reasonable. *Kaiser v. MEPC Am. Properties, Inc.*, 164 Ill. App. 3d 978, 984 (1st Dist. 1987). The first requirement is satisfied by presenting the Court with detailed records that "specify the services performed, by whom they were performed, the time expended thereon and the hourly rate charged therefor." *Id*. With respect to reasonableness, the Court may consider a variety of factors including (i) the skill and standing of the attorneys, (ii) the nature of the services performed for the client (here, Plaintiffs and the Class), (iii) the complexity of the case and the novelty and difficulty of the issues involved, (iv) the usual and customary charges for comparable services, and (v) the importance of the case and benefits achieved for the client. *Id*.[6] Here, both elements have been satisfied.

---

[6] The Seventh Circuit has formulated a streamlined version of the Illinois test, which asks whether the time expended and fees sought by the moving party are "commercially reasonable" by looking to the (1) aggregate costs of litigation in light of the stakes of the case, (2) the opposing party's litigation strategy, and (3) whether the prevailing party showed a willingness to pay. *Medcom Holding Co.*, 200 F.3d at 520; *see also Matthews v. Wisconsin Energy Corp., Inc*., 642 F.3d 565, 572 (7th Cir. 2011). These factors are subsumed by the more comprehensive test under Illinois state law, and thus, will be naturally addressed through that analysis below.

First, Class Counsel have submitted their itemized time records to the Court, which specifically detail each individual task performed on behalf of the Plaintiffs and the Class, the attorney that performed each task, the hourly rate for such attorney, and the amount of time spent by each attorney on each task. (Scharg Decl. Ex. B; Pastor Decl. Ex. 1; Declaration of Katrina Carroll ("Carroll Decl."), Ex. A; Declaration of William Sweetnam ("Sweetnam Decl."), Ex. 1; Declaration of Preston W. Leonard ("Leonard Decl."), Ex. B.) Thus, the first requirement is met. For the Court's convenience, the following charts provides a breakdown of the total adjusted[7] fee request of $395,012.98 by summarizing the rates, hours, and lodestar of each law firm:

| Name | Firm Name | Hours Worked | Rates | Total |
|---|---|---|---|---|
| Edelson, Jay (Managing Partner) | Edelson PC | 3.3 | $685 | $2,260.50 |
| Andrews, Ryan (Partner) | Edelson PC | 10.5 | $570 | $5,985.00 |
| Balabanian, Rafey (Partner) | Edelson PC | 54.3 | $570 | $30,951.00 |
| Mindell, David (Associate) | Edelson PC | 50.2 | $335 | $16,817 |
| Ochoa, John (Associate) | Edelson PC | 244.4 | $390 | $95,316.00 |
| Scharg, Ari (Partner) | Edelson PC | 110.7 | $450 | $49,815.00 |
| Law Clerks | Edelson PC | 90.8 | $215 | $19,522 |
| **Total** | | **564.2** | | **$220,666.5** |

---

[7] These hours have been adjusted to account for hours that were unnecessary or duplicative. (Scharg Decl. ¶ 23.) After a review of their billing statements, Edelson PC has reduced its hours by 116.1 hours, and the Pastor Group has reduced its hours by six prior to providing the Joint Statement to Hangtime. (*Id.*; Pastor Decl. ¶ 5.) And, as explained in the Joint Statement, below, Class Counsel agrees to make a further reduction of 6.6 hours for certain attorney's court appearances when more than one attorney appeared. (Scharg Decl. ¶ 23.)

14

| Name | Firm Name | Hours Worked | Rates | Total |
|---|---|---|---|---|
| Pastor, David (Principal) | Pastor Law Office, LLP | 109.5 | $650 | $71,175.00 |
| Leonard, Preston (Principal) | Leonard Law Office, PC | 39.6 | $300 | $11,926.48 |
| Sweetnam, William (Principal) | Sweetnam LLC | 18.9 | $675 | $12,757.50 |
| **Total** | | **168** | | **$95,858.98** |

| Name | Firm Name | Hours Worked | Rates | Total |
|---|---|---|---|---|
| Carroll, Katrina (Partner) | Lite DePalma Greenberg, LLC | 56.0 | $750 | $42,000.00 |
| Lee, Amina B. (Legal Assistant) | Lite DePalma Greenberg, LLC | 6.30 | $250 | $1,575.00 |
| Shamberg, Kyle A. (Associate) | Lite DePalma Greenberg, LLC | 73.5 | $475 | $34,912.50 |
| **Total** | | **135.8** | | **$78,487.50** |

(Scharg Decl. ¶ 24; Pastor Decl. Ex. 1; Carroll Decl. ¶ 7; Sweetnam Decl. Ex. 1; Leonard Decl. ¶ 10.)

Second, although Class Counsel's fee request easily satisfies each of the *Kaiser* factors (discussed below), it should be noted that the fairness concern underlying the analysis isn't even present in this case. Indeed, the reason that the courts are directed to conduct a reasonableness analysis in a contractual fee-shifting situation is to "guard against moral hazard—the tendency to take additional risks (or run up extra costs) if someone else pays the tab." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 773 (7th Cir. 2010). Here, however, the possibility of Class Counsel "running up extra costs" isn't a concern because Class Counsel litigated this case on a pure contingency basis, and the Settlement—which contains the contractual fee-shifting provision at issue—wasn't even agreed upon until *after* the fees sought in this motion had already been incurred. As such, there was never an incentive to "run up costs"—just the opposite, Class Counsel was actually incentivized to *minimize* the hours that they expended on

this litigation, which, as demonstrated below, is exactly what they did.

In any event, as shown below, each of the *Kaiser* factors demonstrate the reasonableness of Class Counsel's requested fee award.

> **1.      Class Counsel is well-qualified and possesses the requisite skill to prosecute this action.**

The first factor considered by Illinois courts is the skill and qualifications of counsel—a factor that is readily satisfied here. *Kaiser*, 164 Ill. App. 3d at 984. Plaintiffs and the class are represented by counsel well-versed in class action litigation. Class Counsel at Edelson PC, and Pastor Law Office LLP, and Liaison Counsel Katrina Carroll of Lite DePalma Greenberg, have extensive experience in class actions of similar size, scope, and complexity to the instant action. (Scharg Decl. ¶ 17, Ex. A; Pastor Decl. ¶¶ 10-12, Ex. 4; Carroll Decl. ¶ 4.)

First, the attorneys at Edelson PC have been specifically recognized as "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue." *In re Facebook Privacy Litig.*, No. C 10-02389 (N.D. Cal. Dec. 10, 2010); *see also Dunstan v. comScore*, No. 11-cv-5807, Dkts. 186, 369 (N.D. Ill.) (securing adversarial certification of largest ever privacy class comprised of millions of consumers for claims arising under federal privacy statutes, and ultimately achieving a $14 million settlement, which resulted in claiming class members receiving approximately $500 each). And with respect to TCPA class actions in particular, Edelson PC is credited for having "pioneered the application of the TCPA to text-messaging technology," *Ellison v. Steven Madden, Inc.*, No. 11-cv-05935, Dkt. 73 (C.D. Cal. May 7, 2013), and is routinely appointed to serve as class counsel by courts in this District and throughout the country. (Scharg Decl. Ex. A; *see also Rojas v. Career Education Corp.*, No. 10-cv-05260 (N.D. Ill. 2012) (serving as lead counsel in $20 million text spam settlement); *Lozano v. Twentieth Century Fox Film Corp.*, No. 09-cv-06344 (N.D. Ill.

16

2011) (serving as lead counsel in $16 million text spam settlement); *In re Jiffy Lube Int'l Text Spam Litig.*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012) (serving as co-lead counsel in $35 million text spam settlement).

Next, David Pastor, both with Pastor Law Office LLP and with his former firm, Gilman and Pastor LLP, has an extensive record of successful prosecution of class action litigation. (*See* Pastor Decl. ¶¶ 10-12, Ex. 4.) Pastor has been appointed as class or lead counsel in many class actions, including cases asserting claims on behalf of consumers and other types of cases such as antitrust. *See, e.g., Perry v. Equity Residential Management LLC,* 2014 WL 4198850 (D. Mass. Aug. 26, 2014) (action on behalf of tenants against large residential landlord for imposition of unlawful fees; summary judgment granted in favor of 3 plaintiff subclasses), *Miller v. J. Crew Group, Inc.*, No. 13-11487-RGS (D. Mass.) (action on behalf of retail customers for unlawful collection of personal identification information at point of sale); In re *OSB Antitrust Litig.*, 2007 WL 2253419 (E.D. Pa. Aug. 3, 2007) (indirect purchaser antitrust action).

Likewise, Katrina Carroll—who heads the Chicago office of Lite DePalma Greenberg, LLC—has been actively involved with class actions in the areas of consumer fraud, securities fraud and antitrust since 2001. She has served as co-lead counsel in some of the most prominent securities fraud class actions, including In re *Motorola Securities Litig.*, 505 F. Supp. 2d 501 (N.D. Ill. 2007), and in In re *Tenet Healthcare Corp. Sec. Litig.*, 2007 WL 5673884 (C.D. Cal. Dec. 5, 2007). Carroll is currently serving in lead roles in two major consumer matters pending in this District, *McCain v. Rust-Oleum*, No. 14-cv-4852 (N.D. Ill. 2014) (St. Eve, J.) and *Mednick v. Precor, Inc.*, No. 14-cv-3624 (N.D. Ill. 2014) (Leinenweber, J.). In short, Class and Liaison counsel were well qualified to prosecute this class action lawsuit and negotiate the instant Settlement.

17

      2.      **The nature of the services Class Counsel performed for Plaintiffs and the Class were reasonable and necessary.**

Petitioners should be awarded fees for services that are both "reasonable and necessary to the action." *Donnelley v. Donnelley*, 80 Ill. App. 3d 597, 602 (1st Dist. 1980). The reasonableness of the requested hours and fees varies in every case, "often in direct proportion to the ferocity of an adversaries' handling of the case." *SKF USA Inc. v. Bjerkness*, 2011 WL 4501395, at *5 (N.D. Ill. Sept. 27, 2011) (internal citation and quotation omitted); *see also Medcom Holding Co.,* 200 F.3d at 521 (recognizing that defendant's litigation strategy factors into the reasonableness of attorneys' fees sought by plaintiff's counsel). As discussed above, this case involved a technology company that was using sophisticated computer equipment and software to secretly collect cell phone numbers from its users' phones and send millions of text messages to such contacts. However, in addition to the work expected to be performed in a technology-focused case such as this, Defendants' overly-aggressive litigation strategy also forced Plaintiffs to spend a substantial amount of time coordinating and consolidating the cases, responding to baseless and procedurally improper motions, meeting and conferring on discovery disputes, and moving for a compelling order requiring Defendants to produce the documents and depositions that they adamantly resisted. The fact that *counsel for Defendants billed nearly $445,000*—almost $50,000 more than Class Counsel—underscores the reasonableness of the fee request. (Scharg Decl. Ex. C.)

In any event, Hangtime believes that Class Counsel's fee request should be reduced by approximately $235,000. Plaintiffs address each of these disputed issues below, and explain why the time expended for each challenged litigation task was both reasonable and necessary to the lawsuit.

### i. Plaintiffs are entitled to recover their requested attorneys' fees for Class Counsel's discovery efforts, and for opposing Hangtime's motion to stay the *Goodman* Action.

The discovery process is the "principal means by which lawyers and parties assemble the facts, and decide what information to present at trial" and thus, "the importance of a full and fair discovery to the resolution of litigation in the federal courts cannot be underestimated." *Plump v. Kraft Foods N. Am., Inc.*, 2003 WL 22299019, at *4 (N.D. Ill. Oct. 6, 2003). That said, Hangtime takes the remarkable position that <u>no fees</u> whatsoever should be awarded to Class Counsel for the time and effort they expended while engaging in discovery, such as for the time spent exchanging Rule 26(a)(1) disclosures, issuing and responding to discovery requests (including the discovery requests Plaintiffs successfully moved to compel Hangtime and Hook Mobile to respond to), and reviewing responses and documents produced by Defendants and third parties. Hangtime likewise believes that Class Counsel should not be compensated for being forced to oppose (and defeat) its motion to stay the *Goodman* Action (including stay of all discovery).

Defendant provides two bases for challenging the entirety of Class Counsel's request for attorneys' fees expended on discovery: First, that Plaintiff's discovery responses were "evasive," and second, that the subpoenas issued by Class Counsel were "substantively similar" and did not result in the production of documents. (Ex. 1, pg. 7.) As explained below, not only are Hangtime's objections factually inaccurate and without merit, but all of the discovery engaged in by Class Counsel was both reasonable and necessary to the successful resolution of this case.[8]

First, Plaintiffs' discovery responses were not "evasive," as Hangtime contends, and the one time that Hangtime did complain about Plaintiffs' responses was a result of its own inartful

---

[8] In addition, Edelson PC took the lead in responding to Defendants' discovery requests, resulting in significantly less billing by the Pastor Group, and the Lite DePalma firm in responding to discovery responses. (Scharg Decl. ¶ 5, Ex. B.)

drafting of certain interrogatories, which Hangtime remedied by serving amended interrogatories (to which Plaintiffs promptly provided amended answers). (Scharg Decl. ¶ 7.) At no time during the litigation has Hangtime ever raised any other issues regarding Plaintiffs discovery responses (either with Plaintiffs' counsel or with the Court), and thus, Hangtime's decision to do so for the first time at this stage is disingenuous.

Second, Hangtime contends that Class Counsel shouldn't be allowed to recover any attorneys' fees incurred in discovery because third-party subpoenas issued by Class Counsel were "substantively identical" and did not result in the production of any documents. (Ex. 1 pg. 5.) This contention is also inaccurate. Class Counsel served five separate subpoenas on the following five entities: Neustar, Inc. (the company that maintains records concerning the registration of telephone numbers in North America), Twilio, Inc. (the company that maintained the dialing software used by Defendants to send the text messages at issue), Hook Mobile[9] (Hangtime's marketing partner that supplied technical support and the "longcode" telephone numbers used to send the text messages to Plaintiffs and the class), T-Mobile U.S.A., Inc. (Plaintiff Sims' wireless telephone carrier), and Cellco Partnership, Inc. d/b/a Verizon Wireless (Plaintiff Goodman's wireless carrier). (Scharg Decl. ¶ 6.) In response to these subpoenas, Neustar, Twilio, Hook Mobile, and Verizon produced responsive documents—only T-Mobile U.S.A. failed to respond to Sims' subpoena. (*Id.*) Thus, Hangtime's belief that Class Counsel served overlapping subpoenas is simply wrong.

In short, Hangtime provides no valid basis for denying Class Counsel recovery for time expended in connection with any discovery tasks, which was necessary for the prosecution of

---

[9] Hangtime's counsel also represented (then) third-party Hook Mobile, which responded to Plaintiffs' subpoena and produced responsive documents on December 12, 2014 (Scharg Decl. ¶ 6), making Hangtime's claim that no third party produced documents in a response to a subpoena puzzling.

Plaintiffs' and the Class's claims.

    **ii.**  **Plaintiffs are entitled to their attorneys' fees in connection with their motions for class certification.**

  Hangtime next contends that Class Counsel is not entitled to recover <u>any</u> of their $20,941.50 in attorneys' fees for 56.5 hours spent preparing their motions for class certification because they were "placeholder" motions. (Ex. 1, pg. 9.) This argument also fails given that the time expended on the class certification motions were absolutely reasonable and necessary.

  First, Class Counsel spent 36 hours drafting and filing three "placeholder" class certification motions to protect from Plaintiffs' claims becoming mooted by an offer of judgment or settlement offer.[10] These motions were necessary in light of the state of the law in the Seventh and First Circuits at that time concerning so-called "pick-offs" of named plaintiffs in putative class action lawsuits—a practice so common here in the Seventh Circuit that several judges in this District specifically address the procedures to follow for such motions in their standard case management procedures.[11] *See, e.g., Damasco*, 662 F.3d at 896 *and Yaakov*, 987 F. Supp. 2d at 129. Given the state of the law at that time, filing these types of motions in putative class action lawsuits was necessary to protect them from being mooted by an offer of settlement.[12]

  Second, Plaintiffs also drafted, and were prepared to file, a renewed motion for class certification, which was not a "placeholder" motion, but rather was a fulsome motion for class certification made necessary both by the upcoming April 27, 2015 dispositive motion deadline, as well as to further demonstrate the lack of merit to Defendants' motion to strike class

---

[10] Counsel for Plaintiff Sims spent 28.4 hours drafting Sims' placeholder motion, and counsel for Plaintiff Goodman spent 7.6 hours on two placeholder motions, one filed in State Court (where the Goodman case originated), and one filed in this Court. (Scharg Decl. Ex. B, Pastor Decl. Ex. 1.)

[11] *See, e.g.,* Case Management Procedures of Judge Sarah L. Ellis and Judge Thomas M. Durkin.

[12] As explained above, the ruling in *Damasco* has recently been overruled by *Chapman*, 2015 WL 4652878.

allegations, which was still pending before the Court. (Scharg Decl. ¶ 10.) Plaintiff did not file this motion, however, because after preparing the motion, the parties entered into settlement discussions that ultimately resolved this case. (*Id.*) As such, the time spent by Class Counsel preparing this motion was both reasonable (given this case is a putative class action) and necessary (given pending motions and upcoming deadlines). Attorneys are entitled to recover for time spent on drafting motions—even unfiled ones—if they are reasonably related to the litigation. *See Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109, 1125 (C.D. Cal. 2012) (collecting authorities and noting that "extensive authority supports awarding fees for time spent on unfiled motions.").

In the end, all the time spent by Class Counsel preparing and drafting their motions for class certification was reasonable and necessary, and they are entitled to compensation for their efforts.

### iii.    Plaintiffs are entitled to their attorneys' fees for opposing Defendants' motion to strike class allegations.

Next, Hangtime argues that Class Counsel shouldn't be awarded any compensation for the approximately $30,000 of time spent on responding to its motion to strike for two reasons—(i) the Court never ruled on it, and (ii) it would have won anyways. (Ex. 1, pg. 8.) This argument is absurd. The fact that the Court didn't rule on the motion has nothing to do with whether the work performed was "reasonable and necessary" to the litigation—a test that Class Counsel undisputedly passes given that it was responding to a potentially dispositive motion.

Furthermore, Hangtime's speculation that it had the "stronger position" in the motion to strike due to "the lack of support for scraping" (which Plaintiffs assume refers to Hangtime's contention that it did not surreptitiously collect the phone numbers contained in its users' cell phones) does not withstand scrutiny. First, whether Hangtime engaged in "scraping" had nothing

to do with motion to strike class allegations, which attacked the suitability of class certification. (*Goodman* Dkt. 52.) Second, Hangtime doesn't actually contend that a class cannot be certified in this case—and in fact, entered into a settlement agreement that requires the Court to certify a class—further demonstrating that class treatment is appropriate. *See American Intern. Group, Inc. v. ACE INA Holdings, Inc.*, 2011 WL 3290302, at *3 (N.D. Ill. July 26, 2011) (noting that the Rule 23 analysis conducted for settlement purposes is even more rigorous than when the analysis is conducted adversarially).

Plaintiffs' opposition to Defendants' motion to strike was both reasonable and necessary, and therefore compensable. Defendants do not seriously challenge this fact, and as such, their request to disallow fees for Plaintiffs' opposition should be rejected.

### iv. Class Counsel is entitled to their attorneys' fees for their efforts to coordinate and self-consolidate their respective lawsuits.

Hangtime next contends that Class Counsel are not entitled to attorneys' fees for their motion to consolidate the *Salam* Action with the *Goodman* Action, and likewise are not entitled to compensation for their efforts to coordinate the prosecution of this litigation. (Ex. 1, pgs. 9-10.) Hangtime is incorrect, as these consolidation efforts and coordination among Plaintiffs' counsel are normal in complex class actions, and in fact resulted in minimizing duplicative billing that would have occurred had there been three sets of Plaintiffs' counsel independently prosecuting their clients' claims in three different lawsuits.

Consolidation of similar lawsuits allows courts to shepherd cases to efficient resolution. *Rosen v. Spirit Airlines, Inc.*, 2015 WL 3798150, at *6-7 (N.D. Ill. June 17, 2015); *see also Frere v. Orthofix, Inc.*, 2000 WL 34511335, at *1 (S.D.N.Y. June 7, 2000) ("It is axiomatic that consolidation is a procedural device designed to promote judicial economy. . . .") (internal

citation and quotation omitted). Such is the case here, as Plaintiffs' self-consolidation efforts turned three separate lawsuits into one, thus conserving judicial resources.

As such, Class Counsel is entitled to the $9,119 spent coordinating with co-counsel, and $5,609.50 moving to consolidate, especially considering that these amounts would have been dwarfed by the fees expended if the cases were being litigating separately.

> **v.      Class Counsel is entitled to reasonable attorneys' fees for litigating the *Sims* Action before consolidation with the *Goodman* Action.**

Hangtime resists awarding Class Counsel at Pastor Law Offices LLP (together with Leonard Law Office PC and Sweetnam LLC) any fees expended in the litigation of the *Sims* Action prior to consolidation with the *Goodman* Action because, according to Hangtime, the *Sims* court denied attorneys' fees to Sims' counsel when they dismissed the *Sims* Action to join with the *Goodman* Action. (Ex. 1, pgs. 13-14.) As explained below, such resistance is without merit.

First, contrary to Hangtime's contention, there was **no** decision by **any** court to deny fees to the *Sims* counsel for time related to the *Sims* action. (Pastor Decl. ¶ 13.) As of the time the *Sims* Action was dismissed in that court, Sims' counsel had not moved for an award of attorneys' fees nor had they sought fees in any way. (*Id.*) Hangtime did seek attorney's fees in connection with the dismissal of the *Sims* Action, and Judge Zobel, in her August 26, 2014 Order, referenced by Hangtime, denied Hangtime's request for attorneys' fees and costs. (*Sims* Dkt. 27.) Second, counsel for Sims, prior to filing the action in the District of Massachusetts, conducted an independent factual and legal investigation and then prepared a complaint against Hangtime that was filed in that court in February, 2014. (Pastor Decl. ¶ 13.) Plaintiff Sims' choice to file in Massachusetts was perfectly appropriate, given that Sims is a Massachusetts resident. (*Id.*) Third,

the decision of Sims' counsel to prepare and file a class certification motion in the *Sims* Action was also appropriate and necessary. (*Id.*) As of the time of the filing of the *Sims* Action, the question of whether an unaccepted Rule 68 offer of judgment to the plaintiff in a putative class action, made before the plaintiff files a motion for class certification, moots the entire class action, had been certified for interlocutory appeal to the First Circuit. *Yaakov*, 987 F. Supp. 2d at 129. So Sims had to conduct factual and legal research and prepare and file a class certification motion in the District of Massachusetts. (Pastor Decl. ¶ 13.)

Finally, Sims proposed to Hangtime that the parties stipulate to dismissal of the *Sims* Action in order that Sims join and be consolidated with the *Goodman* Action, but Hangtime refused to agree to that dismissal without payment of attorneys' fees and costs to Hangtime's counsel. (Pastor Decl. ¶ 13.) Hangtime's position on this issue forced Sims to file a motion for voluntary dismissal without prejudice and then to file a reply when Hangtime opposed that motion. (*Id.*) All of this work was necessitated by Hangtime's unreasonable refusal to stipulate to dismissal to allow Sims to consolidate his action with Goodman's in this Court. So there is absolutely no basis for Hangtime's contention that $-0- in attorneys' fees should be awarded for time spent on the *Sims* Action in the District of Massachusetts prior to consolidation with *Goodman*. On the contrary, the entire amount of time spent by Sims' counsel in litigating that action prior to consolidation in this Court with the *Goodman* Action is compensable and should be awarded.

### vi. Hangtime's position that Lite DePalma Greenberg LLC should not be compensated for their time is without merit.

As is the case with counsel in the *Sims* matter, Liaison Counsel Lite DePalma Greenberg, ("LDG") expended considerable time and resources independently investigating, researching, and litigating the *Salam* matter prior to consolidation with *Goodman* (and thereafter). That Salam

ultimately decided to voluntarily dismiss his claims against Hangtime does not obviate any of the hard work performed by LDG in this litigation. Indeed, Salam chose to dismiss his claims primarily because the consolidated action already included another Illinois Plaintiff and Class representative (Goodman), rendering Salam's participation superfluous and unnecessary. (Carroll Decl. ¶ 1.)

As has been noted above, Hangtime itself created a great deal of work for LDG due to its refusal to work cooperatively with Plaintiffs' counsel. From the outset, counsel for Hangtime declined to enter into a stipulation pursuant to *Damasco v. Clearwire Corp.*—common practice in this District—even after Judge Dow requested that the parties do so, necessitating a lengthy back and forth on what should have been a very simple issue. (Carroll Decl. ¶ 5.)

In addition, Hangtime moved before the Judicial Panel on Multidistrict Litigation to transfer the *Goodman, Sims,* and *Salam* matters to the Northern District of California, a motion it ultimately lost, requiring Katrina Carroll to travel to Louisville, Kentucky in October 2014 to represent Plaintiffs and the Class at the JPML hearing. (Carroll Decl. ¶ 5.) In the meantime, counsel in these three matters worked together to consolidate the cases before Judge Bucklo, a self-ordering that the JPML specifically noted in its decision denying Hangtime's transfer motion. (MDL Dkt. 22.)

This is all in addition to the time and effort LDG spent expounding, reviewing, and responding to written discovery and engaging in numerous meet and confers brought about by Hangtime's hostile litigation strategy. (Carroll Decl. ¶ 5.) For Hangtime to suggest that LDG is entitled to compensation for *none* of this work strains credulity, and should not be countenanced by the Court. As reflected by its time records, all of the work LDG conducted was essential to advancing this litigation, and it is entitled to its reasonable lodestar.

vii.    **Hangtime's request that certain of Class Counsel's time be reduced should be rejected.**

Finally, Hangtime makes several block challenges to the reasonableness of the hours expended by Class Counsel on various tasks—without any specific explanation—and urges the Court to arbitrarily reduce the fee request as follows:

- Discounting by one-half (from $22,601.50 to $11,300.50) all of the time spent on Hangtime's removal of the *Goodman* Action, preparing the Complaint, First Amended Complaint, and Consolidated Complaint, and pre-case planning;

- Discounting by two-thirds (from $9,189.00 to $3,063.00) all of the time spent on case management (including court appearances), and communications with opposing counsel;

- Discounting by two-thirds (from $45,686.00 to $15,229.00) all of the time spent by Class Counsel on settlement and preliminary approval for supposed "duplicative billing;" and

- Disallowing compensation altogether for certain—yet unspecified—tasks that were unidentified in Exhibit 1.

(Ex. 1 pgs. 5, 6, 10-11, 12.) Of course, Hangtime doesn't refer to any of the specific billing entries produced by Plaintiffs' counsel to explain why it decided that Class Counsel's hours should be specifically reduced in the amounts identified (e.g., by "one-half" or "two-thirds"). Rather, these seem to be arbitrary numbers selected by Hangtime in order to decrease the amount of fees it believes it should pay.[13]

With respect to the first category, (work on investigation, case planning, and pleadings), the 60 hours spent by Class Counsel (amounting to $22,601.50) was reasonable and necessary to (1) investigate the facts underlying Plaintiffs' lawsuits, (2) draft detailed pleadings based on the investigation, and (3) amend the pleadings to add parties based on facts learned in discovery, (4) and formulate a litigation strategy. (Scharg Decl. ¶¶ 19-20, Ex. B.) Moreover, Hangtime's claims

---

[13] As noted above, Class Counsel has already reviewed their time for potentially duplicative entries and reduced it by over 100 hours prior to providing the Joint Statement to Hangtime to account for potentially duplicative time. (Scharg Decl. ¶ 23.)

of "excessive billing" are belied by Defendants' own time records, which showed they spent 57.1 hours, billing a total of $21,581, on similar work. (*Id*. Ex. C; Ex. 1, pg. 5.) Class Counsel should be compensated fully for their time on these tasks.

As for time expended on case management—which includes communications with opposing counsel and court appearances—the 26.6 hours expended by Class Counsel is entirely reasonable given that Class Counsel repeatedly met and conferred with Hangtime regarding its failure to produce documents and appeared at eleven court hearings. (Scharg Decl. ¶¶ 8, 13.) This reasonableness is further demonstrated by a comparison to Defendants' time records, which show Defendants' counsel spent 25.5 hours, billing a total of $12,700, on similar tasks. (*Id*. Ex. C; Ex. 1, pgs. 10-11.)

Hangtime's challenge to Class Counsel's requested fees for the supposed "duplicative billing" of time expended negotiating the Settlement and obtaining preliminary approval is also without merit. (Ex. 1, pg. 6.) Hangtime is unable to identify any instances of "duplicative billing," and in any event, a review of Class Counsel's records reveals just the opposite— although various attorneys reviewed critical documents, such as the Settlement Agreement and preliminary approval papers, Edelson PC took the laboring oar on all settlement-related tasks. Indeed, the Pastor and Lite DePalma firms only billed a total of 4.1 hours on such activities. (Scharg Decl. ¶ 16; Pastor Decl. Ex. 1; Carroll Decl. Ex. A.) These facts directly contradict Hangtime's baseless position.

Finally, Hangtime's complaint regarding Class Counsel's supposed failure to identify certain tasks with the requisite specificity are—somewhat ironically—so vague that Class Counsel are unable to provide a meaningful response.

### 3. This litigation presented complex legal issues, including novel issues of first impression.

Although this case presented issues that arise in most TCPA class actions—such as whether the equipment used to transmit the text messages at issue constituted an automatic telephone dialing system ("ATDS")[14]—this case presented novel and challenging issues that made the litigation more difficult, and thus justifies Class Counsel's fee request.

A defendant in a TCPA case may plead, as an affirmative defense, that it obtained the "prior express consent" of the text message recipients. While this defense is common in TCPA litigation, the way Defendants sought to assert the defense was not. Hangtime and Hook Mobile aggressively pursued a defense of "intermediary prior express consent,"—a variant that had never before been litigated in state or federal court. In so doing, Defendants relied on a 2014 FCC declaratory ruling, which stated that providers of certain mobile telephone services may obtain "prior express consent" from an individual indirectly (i.e., through an intermediary), and not violate the TCPA if they subsequently send a text message to that individual using an ATDS. *See In re GroupMe, Inc./Skype Communications S.A.R.L Petition for Expedited Declaratory Ruling, Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Declaratory Ruling, 29 FCC Rcd. 3442 (Mar. 27, 2014) (hereinafter "*GroupMe* Order").

Specifically, Defendants argued that the *GroupMe* Order is applicable in this case because: (1) The text messages it transmitted to Plaintiffs and others were informational in nature, and (2) Hangtime users, as "intermediaries," provided prior express consent from the text message recipients to Hangtime and Hook Mobile to send the text messages. Defendants claimed

---

[14] And although this issue arises in many TCPA class actions, that is not to suggest that the issue is uncomplicated, as it involves the application of highly technical evidence to the law regarding what constitutes an ATDS. (Scharg Decl. ¶ 9.) Indeed, both Hook Mobile and Twilio, Inc. produced over a hundred pages of documentation describing the functionality of the dialing equipment, which would likely have required expert analysis to decipher. (*Id.*)

that based on these facts, the FCC's Order setting forth the standards for intermediary consent applied, and it shouldn't be liable under the TCPA. This "intermediary consent" theory was the focal point of the briefing both on Defendants' motion to strike class allegations, and on Plaintiffs supplemental motion for class certification. (*See Goodman* Dkt. 72; Scharg Decl. ¶ 10.) In addition, application of the intermediary consent rule formed the basis of the injunctive relief in the Settlement. (Settlement ¶¶ 2.1, 2.2.)

In short, this intermediary consent issue made this case more complex than a typical TCPA case, and thus supports Class Counsel's fee request here.

4. **Class Counsel's hourly rates are reasonable and have been approved by numerous courts throughout the country.**

The next *Kaiser* factor considers the whether the rates charged by the party seeking fees are the usual and customary charges for comparable services. 164 Ill. App. 3d at 984. Perhaps given Class Counsel's experience and qualifications, Hangtime doesn't even raise a challenge the reasonableness of their hourly rates. Nor would there be any basis to, as Class Counsel's rates are in line with those rates charged by attorneys of similar skill in their respective legal markets, are the same rates that they charge to their hourly-paying clients,[15] and have been found to be reasonable by numerous courts in this District and throughout the country. *See, e.g.*, *Ellison*, No. 11-cv-5935, Dkt. 73 (approving Edelson PC's hourly rates and noting that "the billing rates are reasonable in the California and Chicago legal markets, where Class Counsel's firm is located, and have been approved by state and federal courts in similar settlements); *Gross v. Symantec Corp.*, No. 3:12-cv-00154, Dkt. 88 (N.D. Cal. Mar. 21, 2014) (finding Edelson PC's current "hourly rates are reasonable and have previously been approved by other courts throughout the country"); *Dunstan*, No. 11-cv-5807 at dkt. 369 (same); *Miller v. Redbull North America, Inc.*,

---

[15] *See* Scharg Decl. ¶¶ 25-26 & Ex. B; Pastor Decl. ¶ 7 & Ex. 2.

No. 12-cv-4961, dkt. 58 (N.D. Ill. Aug. 12, 2013) (same); *Miller v. Fresh, Inc.*, 14-cv-0889

(Suffolk (MA) Super. Ct. July 15, 2015) (approving Pastor Law Office's fee request in full at

current rates); *Miller v. J. Crew Group, Inc.*, No. 13-cv-11487 (D. Mass.) (same).

As such, Class Counsel's hourly rates are reasonable, and satisfy this *Kaiser* factor.

### 5. Class Counsel conferred valuable injunctive benefits upon the Class through the Settlement.

When awarding attorneys' fees, Illinois courts also consider the benefits achieved for the

client *Kaiser*, 164 Ill. App. 3d at 984. Here, the Settlement provides industry-changing injunctive

relief that greatly benefits the Class by (i) enjoining Defendants from sending any more spam

text messages to the Class, (ii) requiring Defendants to significantly modify the process by which

they present their terms of service to, and obtain prior express consent from, the Class, and (iii)

preserving the Class's claims to pursue statutory damages. (Settlement ¶¶ 1.20, 2.1, 2.2.) This

Settlement represents a significant victory for the Class, as it ensures that Defendants will stop

sending them spam text messages immediately, while at the same time preserving their rights to

bring an action for statutory damages on either a personal or class-wide basis.

### B. The requested incentive awards are reasonable and should be approved.

Plaintiffs' requested incentive award to Zachary Goodman and Derrick Sims of $4,000

each for serving as the Class Representatives warrants approval as well. Because lead plaintiffs

are essential to any class action, incentive awards are justified when necessary to induce

individuals to become named representatives and "encourage the filing of class actions." *GMAC*

*Mortg. Corp. of Pa. v. Stapleton*, 236 Ill. App. 3d 486, 497 (1st Dist. 1992). In deciding whether

an incentive award is warranted, courts look to: (1) "the actions the plaintiff has taken to protect

the interests of the class," (2) "the degree to which the class has benefitted from those actions,"

and (3) "the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v.*

*Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Here, the proposed incentive award for Mr. Goodman and Mr. Sims is entirely reasonable in that their involvement in this litigation was critical to the ultimate success of this case. (Scharg Decl. ¶ 32.) Further, the proposed incentive award of $4,000 is at or below awards approved in similar class action settlements. *See Weinstein v. 12 AIRIT2ME, Inc.*, No. 1:06-cv-00484 (N.D. Ill.) (approving incentive awards of $10,000 and $5,000 to two plaintiffs); *Lozano*, No. 09-cv-6344 (N.D. Ill.) (allowing incentive award of $15,000 to one plaintiff); *Kramer*, No. 10-cv-2722 (N.D. Cal.) (granting an incentive award of $10,000 to one plaintiff); *Rojas*, No. 10-cv-5260 (N.D. Ill.) (approving an incentive award of $30,000 split among five plaintiffs).

Throughout this litigation there was no pre-agreement concerning an award in exchange for either Plaintiff Goodman's or Plaintiff Sims' involvement. (Scharg Decl. ¶ 32.) Nevertheless, the Plaintiffs contributed their own time and effort in pursuing both their individual claims and the class claims, exhibiting a willingness to participate and undertake the responsibilities and risks attendant with bringing a representative action. (*Id*. ¶ 33.) In fact, Plaintiffs spent many hours assisting in discovery responses and sitting for their depositions. (*Id.* ¶ 34.) Their willingness to make the time commitment and undertake the responsibilities involved in bringing a representative action resulted in the substantial benefit to their fellow class members. (*Id.* ¶ 35.) Thus, the requested incentive award of $4,000 each is reasonable and should be approved.

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court approve Class Counsel's request for (i) an award of attorneys' fees and expenses in the amount of $395,012.98, (ii) an incentive award to the Class Representatives in the amount of $4,000 each, and (iii) any such further relief the Court deems reasonable and just.

Respectfully submitted by:

September 11, 2015 **ZACHARY GOODMAN** and
**DERRICK SIMS**, individually and on
behalf of all others similarly situated.

By:    s/ John C. Ochoa
       *One of Plaintiffs' Attorneys*

Rafey S. Balabanian
rbalabanian@edelson.com
Ari J. Scharg
ascharg@edelson.com
John C. Ochoa
jochoa@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

David Pastor*
dpastor@pastorlawoffice.com
PASTOR LAW OFFICE, LLP
63 Atlantic Avenue, 3rd Floor
Boston, Massachusetts 02110
Tel: 617.742.9700
Fax: 617.742.9201
**Admitted Pro Hac Vice*

*Settlement Class Counsel*

Katrina Carroll
kcarroll@litedepalma.com
Kyle Shamberg
kshamberg@litedepalma.com
LITE DEPALMA GREENBERG, LLC
One South Dearborn, Suite 1200
Chicago, Illinois 60603
Tel: 312.212.4383
Fax: 312.212.5919

*Liaison Counsel*

<u>**CERTIFICATE OF SERVICE**</u>

I, John C. Ochoa, hereby certify that on September 11, 2015, I served the above and

foregoing ***Plaintiffs' Motion and Memorandum in Support of Approval of Attorneys' Fees,***

***Expenses, and Incentive Awards*** by causing true and accurate copies of such paper to be

transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this 11th

day of September 2015.


                                               s/ John C. Ochoa
                                               John C. Ochoa