**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| ZACHARY GOODMAN and DERRICK SIMS, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>    v.<br><br>HANGTIME, INC., a Delaware corporation, and BUC MOBILE, INC. d/b/a Hook Mobile, a Delaware Corporation,<br><br>       Defendants. | Case No. 1:14-cv-01022<br><br>[Hon. John Robert Blakey] |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS**

## I.      INTRODUCTION

Plaintiffs' 32-page brief in support of the requested attorneys' fees went through in detail the reasonableness of their request for some $395,000 in attorneys' fees and $4,000 in service awards to the two named-plaintiffs. To that end, Plaintiffs established that:

- Hangtime, itself, spent over $445,000 on outside counsel (or roughly 10% more than Plaintiffs' counsels' fees) defending this action;

- The amount of effort spent by Class Counsel was a direct result of Hangtime's excessive motion practice, which included its refusal to self-consolidate the various actions pending against them in one jurisdiction, an ill-timed motion to strike class allegations, and even a post-settlement motion for sanctions, which Hangtime admitted to filing simply for public relations purposes; and

- The requested fees are justified by the results obtained, specifically, that the Settlement puts an end to literally millions of illegal text messages, the harm which Congress has valued at $500 a piece.

Hangtime's response largely ignores the factual record and case law set out in Plaintiffs' brief. Instead, it advances a number of unsupported and frankly, odd arguments, including that:

1

(1) the results obtained—which, by the way, included the cessation of illegal text spamming—do not support the requested fees, (2) only the time incurred by the attorneys appointed as Class Counsel is compensable—notwithstanding Hangtime's failure to find a case or cite any authority so stating, (3) plaintiffs supposedly spend less time in general litigating than defense counsel—again without a single expert statement, court cite, or even logical explanation, and (4) its financial condition should somehow limit Class Counsel's fees—once again, without offering a single authority in support.

Perhaps as proof positive of its continued commitment to over-litigate every single issue in this case, Hangtime even takes issue with the modest incentive awards sought by the class representatives. Ignoring the string of cases cited by Plaintiffs establishing that incentive awards of $4,000 are below what many class representatives get for similar cases, Hangtime curiously points to an individual settlement (where of course the plaintiff obtained no class benefit and did not even claim entitlement to an incentive award) where the settling plaintiff negotiated a $1,500 deal. To say that Hangtime's argument is a non sequitur is giving it too much credit.

## II.     Hangtime Failed To Identify A Single Fact Or Case To Support Its Opinion That Class Counsel's Time Was Unreasonable or Excessive.

Hangtime's main argument—which is not so much an argument as it is a plea to the Court to cut the requested attorneys' fees because Hangtime is struggling financially—is that Class Counsel's time is excessive and should be reduced (by "one-half" to "two-thirds) because: (1) the outcome doesn't justify the requested fees, (2) Class Counsel shouldn't be compensated for certain aspects of the litigation (such as written and third-party discovery and class certification briefing), and (3) corporate defendants supposedly always incur more attorneys' fees than do plaintiffs. Hangtime's arguments are frankly all over the place, but the one constant is that none of them are supported by citation to any facts, case law or legal authority

whatsoever. Each of its arguments can be easily dispatched.

A.    Given the goals of the lawsuit and Hangtime's poor financial condition, the Settlement is an excellent result for the Settlement Class.

The first part of Hangtime's argument that the amount sought by Class Counsel is excessive has to do with its apparent view that the results achieved by way of the Settlement do not justify the requested fees. But Hangtime makes no attempt to explain what it means; it simply asserts, in conclusory fashion, that "Plaintiff's fee request in the Goodman Action is unreasonable in light of the outcome." (Hangtime Opp. at 10.) Nor does Defendant cite any authority to support its conclusory statement. Rather, and somewhat strangely, the sole cases that Hangtime cites to support its position are a § 1988 civil rights suit and a an individual lawsuit brought on behalf of a minor under the Handicapped Children's Protection Act, which wasn't even a class action. The cases have absolutely no bearing on the analysis before the Court, which asks whether the requested fees are justified in light of the relief secured on behalf of the Class.

The relief secured here is significant, as it achieves one of the primary goals of the lawsuit. Indeed, the Settlement puts an end to literally millions of illegal text messages, the harm from which Congress has valued at $500 ($1,500 if proven willful) for each unlawful text message. Moreover, the Settlement Class' claims for monetary relief are completely unaffected by the Settlement, leaving them free to pursue those claims—if they so choose—in the future. Thus, no longer will consumers receive unsolicited text messages from Hangtime without it first obtaining their prior express consent, and for those who received them in the past, their claims for statutory damages remain entirely in tact. Such a result is an excellent one for the Class and more than justifies the requested fees. Hangtime's undeveloped argument to the contrary should be summarily rejected.

B.    The reductions demanded by Hangtime are arbitrary and nonsensical.

Next, Hangtime fails to provide any facts or case law to support its view that the Court should substantially reduce Plaintiffs' fees for time spent on (i) investigation and pleadings, (ii) case management matters, and (iii) the drafting of the motion for preliminary approval. While Hangtime argues that a majority of the time spent on these litigation tasks was unreasonable, again, the argument is completely undeveloped and also undercut by the amount of fees billed by its counsel.

In terms of Hangtime's argument that Class Counsel spent too much time on various tasks, in their opening brief, Plaintiffs provided a side-by-side comparison of the time spent in this case on the various categories of litigation, which ultimately showed that Hangtime spent the same amount of time on the very tasks about which it now complains. (*See* Dkt. 116 at 27-28.) Indeed, though it contends that Plaintiffs should only recover "half" of what they spent on the investigation and pleadings (60 hours) because "the facts set forth in the pleadings are not complicated," Hangtime ignores that its own lawyers spent the same amount of time on these tasks (57.1 hours). Likewise, though Hangtime insists that Plaintiffs should only recover "two-thirds" of the time spent on case management tasks (26.6) because of purported "inefficiencies" and duplicative billing entries, Hangtime's lawyers spent almost the exact same amount of time (25.5 hours). The idea that the time spent by Hangtime is reasonable but that it's unreasonable when it comes to Class Counsel shows the absurdity of its argument.

Hangtime's argument that the time spent drafting and presenting the motion for preliminary approval should be reduced by two-thirds is similarly without any basis. Though Hangtime claims that "Plaintiffs expended excessive energies on the motion for preliminary approval because of internecine disputes about drafting," that is simply not true, nor is it reflected in Class Counsels' billing records. Not surprisingly, Hangtime once again fails to

identify any facts or billing entries to support its argument. A quick look at Class Counsel's billing entries puts this argument to rest. In fact, Class Counsel's time records demonstrate that Plaintiffs streamlined the settlement process by appointing Edelson PC to take the laboring oar on all settlement-related tasks and the Pastor and Lite DePalma firms only billed a combined total of 4.1 hours on such activities. It goes without saying that 4.1 hours spent on the preliminary approval process by co-counsel is not excessive.

i. <u>The time spent on discovery, the motion for class certification, motion to consolidate, and opposing Hangtime's motion to stay was reasonable.</u>

Hangtime takes specific aim at the following tasks: (i) written discovery because Plaintiffs discovery responses were supposedly "evasive" and all of the third-party subpoenas were "substantively identical," (ii) "placeholder" and prepared-but-unfiled class certification motions, (iii) the motion to consolidate the underlying class actions, because it somehow didn't advance the litigation, and (iv) the opposition to Hangtime's motion to stay discovery. As already explained in detail in Plaintiffs' opening motion, these arguments have no merit.

First, Plaintiffs' discovery efforts were reasonable and the one time that Hangtime raised an issue with their responses was a result of its own inartful drafting of a certain interrogatory, which Hangtime remedied by serving modified interrogatories (to which Plaintiffs promptly provided amended answers).[1] Hangtime never took issue with those amended answers, nor did it ever bring a motion to compel. Thus, if Hangtime truly believed that Plaintiffs were not fulfilling

---

[1] Specifically, Hangtime's interrogatory initially asked Plaintiffs to "Identify the Hangtime User who sent the text message to You as alleged in the complaint." (*See* Dkt. 117-6 at Interrog. No. 1.) Plaintiffs responded by stating that the complaint alleges that the text message was sent by *Hangtime and Hook Mobile*—and not any current Hangtime Users—and thus, they were unable to provide a response to the interrogatory as drafted. (*Id.*) After Plaintiffs met and conferred with Hangtime's counsel on this issue, Hangtime agreed that the request was imprecise and issued a modified interrogatory, which asked Plaintiffs to identify "the name of the Hangtime User that appeared in the body of the promotional text message at issue," to which Plaintiffs promptly provided amended answers. (*Id.*)

their obligations in discovery, one would assume they would have raised the issue with the Court. But they did nothing. Hangtime also forgets that it was Plaintiffs who were actually forced to file a motion to compel, which the Court granted in its entirety. Further, the third-party subpoenas at issue were not "substantively identical" or overlapping in any way, as they sought different information from five separate entities. (*See* Dkt. 116 at 19-20.) Hangtime's argument to the contrary has absolutely no support in the actual record.

Second, the precautionary motions for class certification were necessary in light of the state of the law in the Seventh Circuit at that time concerning so-called "pick-offs," and the time spent on drafting the fulsome motion for class certification is compensable because it was "reasonably related" to the litigation and would have been filed had Hangtime not settled. (*See* Dkt. 116 at 21-22.)

Third, a motion to consolidate is normal in complex class actions and was especially reasonable in this case given that it eliminated inefficiencies that would otherwise have occurred had three sets of plaintiffs' counsel prosecuted their clients' claims through three different lawsuits in two separate jurisdictions. (Dkt. 116 at 23.) And in any event, Plaintiffs' need to file the motion was entirely of Hangtime's own making, as it could have simply consented to the consolidation instead of objecting to it. (*see* dkt. 33.)

Finally, Hangtime's claim that Plaintiffs shouldn't be compensated for opposing its motion to stay discovery because they didn't "move forward with discovery for months" is a blatant misrepresentation. In fact, after the Court denied Hangtime's motion to stay on July 3, 2014 (dkt. 31), Plaintiffs immediately moved forward with discovery by (i) meeting and conferring with Hangtime in an effort to compel it to produce its Rule 26(a)(1) disclosures, which it did on August 5, 2014, (ii) meeting and conferring with Hangtime to compel it to

respond to the interrogatories and requests to produce that Plaintiffs already served, which it did on August 13, 2014, and (iii) serving a Rule 30(b)(6) deposition notice on Hangtime on July 8, 2014. Like its other arguments, this too is belied by the record.

           ii.     <u>Hangtime's argument that "Plaintiffs' efforts compare unfavorably with Defendants time" is nonsensical.</u>

Hangtime next argues that Plaintiffs' time was somehow unreasonable because they expended more hours litigating the case than Hangtime did. This argument is nonsensical and completely misleading.

First of all, Hangtime's argument strangely assumes that corporate defendants normally spend more on a case than plaintiffs and that "to the extent that [plaintiffs] spend substantial amounts, it is generally on experts and detailed motions for class certification." (Hangtime Opp. at 13.) True to form, Hangtime cites nothing to support its position on this issue, apparently relying entirely on its counsel's unsubstantiated opinion. Hangtime's argument on this point completely ignores the fact that, unlike defendants, plaintiffs must spend a substantial amount of time investigating the lawsuit[2] and conducting due diligence before filing their complaints, which more often includes interviewing numerous potential class members (like they did here), and conferring with experts on the technology at issue.

In terms of the hours spent on the case, Hangtime is misleading the Court by arguing that Plaintiffs billed 68 hours more than Hangtime (889 compared to 821), because Plaintiffs' hours includes time spent litigating the *Goodman*, *Sims*, and *Salam* cases, while Hangtime's hours only account for the time it spent litigating the *Goodman* action. Thus, in reality, Hangtime's

---

[2] Of course, defense counsel has the benefit of simply contacting their clients and asking them for the answers to the questions they have. Plaintiff's counsel, on the other hand, doesn't have ready access to the relevant information, and must litigate the case in order to get those answers, which is why it actually makes sense that plaintiff's counsel would have more time into a case than the defense.

combined time likely far exceeds that incurred by the three firms representing the Plaintiffs in these cases.

Next, Hangtime argues that Plaintiffs' fees are especially unreasonable given that they didn't file any motions with "significant case implications" like Hangtime did when it moved to strike Plaintiffs' class allegations. What Hangtime fails to realize however, is that motions to strike class allegations are procedurally improper in this district, and that by filing it, Hangtime forced Plaintiffs spend a substantial amount of time responding to a motion that was more than likely going to be denied. *See, e.g., Boatwright v. Walgreen Co*., 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011) ("Because a class determination decision generally involves considerations that are enmeshed in the factual and legal issues . . . a decision denying class status by striking class allegations at the pleading stage is inappropriate"); *Buonomo v. Optimum Outcomes, Inc*., 301 F.R.D. 292, 299 (N.D. Ill. 2014) (denying motion to strike class allegations as premature because class discovery was not complete); *De Falco v. Vibram USA, Inc*., 2013 WL 1122825, at *9 (N.D. Ill. Mar. 18, 2013) (denying motion to strike class allegations as premature and finding that issues surrounding class certification "are better raised after the parties have had an opportunity to conduct class discovery and fully brief the motion for class certification").

In the end, Hangtime's entire attack on the reasonableness of the hours spent on the case and fees sought are not based on the facts of the case or the controlling law. It's arguments are completely undeveloped, and frankly, undeserving of this Court's consideration.

### III.    Hangtime's Attempt To Limit The Fee Award To Hours Incurred in the *Goodman* Action By The Four Individuals Identified As "Class Counsel" Should Be Rejected.

Hangtime next argues that (1) the terms of the Settlement Agreement limit an award of attorneys' fees to *only* work performed by Class Counsel in this case, which includes Rafey S. Balabanian, Ari J. Scharg, John C. Ochoa, and David Pastor, and (2) the terms of the Settlement

Agreement disallow any award of fees for work performed in the *Salam* and *Sims* actions before they were consolidated. (Opp. at 7-8.)[3] Both arguments fall short.

A.   The Settlement Agreement does not limit an award of attorneys' fees to only the four individuals named as Class Counsel

Hangtime's first assertion—that only the work performed by the four attorneys identified as Class Counsel in the Settlement is compensable—is based on a tortured reading of the Settlement. The portion of the Settlement Agreement that addresses an award of attorneys fees in this case states as follows:

> Hangtime agrees to pay reasonable attorneys' fees and costs to Class Counsel in an amount to be determined by the Court as the Fee Award upon petition by Class Counsel.

(Settlement ¶ 7.1.) According to Hangtime's interpretation, this clause means that "Hangtime agrees to pay reasonable attorneys fees and costs *for work performed by the four individuals named as Class Counsel, and nobody else.*" But that's not what the Settlement Agreement says at all. Instead, it says that Hangtime will pay *reasonable* attorneys' fees *to* Class Counsel. There is no language that purports to limit *who* may perform compensable work. Rather, the Settlement Agreement specifies who the payment is made to (Class Counsel), and what they should be paid (reasonable attorneys fees determined by the Court).

Not only is Hangtime's interpretation of the Settlement Agreement wrong, but its position ignores that the delegation of certain work to associate attorneys and staff with lower billing rates actually saved it money in this case, and such time is routinely compensated in class actions. *See In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 886 F. Supp. 445, 469 (E.D.

---

[3]  For purposes of clarity, it should be noted that these arguments have little to do with the fees incurred by Edelson PC, and instead, challenge the fees incurred by Pastor before *Sims* was consolidated with *Goodman* and all of the fees incurred by Lite DePalma except those they expended in successfully opposing Hangtime's MDL motion.

Pa. 1995) (finding that Class Counsel's use of over 80 attorneys and paralegals was justified, and that "the use of [] additional employees also allowed simpler tasks to be delegated to lawyers and paralegals charging lower rates than lead attorneys").

Case law, which Hangtime apparently doesn't place much value on, also supports the view that attorneys besides those specifically named as Class Counsel are entitled to recover attorneys' fees in settlement. *See e.g., In re Copley Pharmaceutical, Inc., Albuterol Products Liability Litig.*, 50 F. Supp. 2d 1141 (D. Wyo. 1999), aff'd and remanded, 232 F.3d 900 (10th Cir. 2000) (holding that attorney fee allocation is a private matter to be handled among class counsel because they are in the best position to decide the weight and merit of each other's contributions); *In re Ampicillin Antitrust Litig.*, 81 F.R.D. 395 (D.D.C. 1978) (stating that "it is virtually impossible for the Court to determine as accurately as can the attorneys themselves the internal distribution of work, responsibility and risk"); *Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82 (2d Cir. 2010) (finding that "[s]ince lead counsel is typically well-positioned to weigh the relative merit of other counsel's contributions, it is neither unusual nor inappropriate for courts to consider lead counsel's proposed allocation of attorneys fees. . . ."); *Longden v. Sunderman*, 979 F.2d 1095 (5th Cir. 1992) (holding that the district court, in granting attorney fee petition in connection with class action settlement, acted within its discretion in awarding a lump sum to class counsel based on collective efforts of all counsel involved in case, leaving the allocation of that sum up to attorneys themselves). Moreover, the Advisory Committee's comment to Rule 23(g) recognizes that attorneys, other than class counsel, can be entitled to attorneys' fees. *See* Fed. R. Civ. P. 23(g) advisory committee's note (2003) (stating that "in some situations, there may be a basis for making an award to other counsel whose work produced a beneficial result for the class, such as attorneys who acted for

the class before certification but were not appointed class counsel. . . .")

      B.    <u>The Settlement does not limit a payment of attorneys fees to only work performed in the *Goodman* Action, and it is reasonable for Hangtime to pay attorneys' fees for the work performed in the *Sims* and *Salam* Actions pre-consolidation.</u>

Hangtime next argues that the Settlement does not allow for the compensation of work performed in the *Salam* and *Sims* Actions pre-consolidation. This argument is also not accompanied by citation to any legal authority whatsoever.

First, nowhere in the Settlement does it limit recovery of attorneys' fees to the *Goodman* Action only; nor does it expressly disallow an award of attorneys' fees incurred in the *Salam* and *Sims* Actions pre-consolidation. Instead, as explained above, the touchstone for the Court's analysis is whether it would be *reasonable* to award attorneys' fees for the work performed in the *Sims* and *Salam* cases (which were eventually joined into this Action) pre-consolidation. As one court noted, compensating pre-consolidation litigation efforts are eminently reasonable, as it "encourages attorneys to participate in multidistrict litigation and improve[s] judicial efficiency across our system." *See, e.g., In re Volkswagen & Audi Warranty Extension Litig.*, 2015 WL 848312, at *24 (D. Mass. Feb. 10, 2015) (awarding attorneys' fees to non-class counsel for work performed in separate lawsuits prior to consolidation)*; Gottlieb v. Barry*, 43 F. 3d 474, 488-489 (10th Cir. 1994) (reversing district court's denial of fees to non-designated (i.e., non-class ) counsel for pursuing separate actions prior to consolidation and appointment of class counsel).

Thus, the Court's analysis should center around whether it would be *reasonable* for Hangtime to pay Class Counsel for time expended by the Pastor and Lite DePalma firms in litigating the *Salam* and *Sims* Actions pre-consolidation. And as Plaintiffs set forth in their Motion, Hangtime should be required to pay such fees, not only because the work conducted by the Pastor and Lite DePalma firms materially advanced the separate underlying actions towards

consolidation, and ultimately, settlement, but also because additional work performed in those cases was made necessary by Hangtime's combative litigation tactics and refusal to agree or stipulate to what should have been routine motions. In fact, if Hangtime had simply assented to the Parties' self-consolidation efforts, then the attorneys' fees expended in the *Salam* and *Sims* matters would have been significantly less than what they ultimately were.

Putting aside Hangtime's meritless argument concerning the language of the Settlement Agreement, Hangtime does not present a cogent response as to why the time expended in the *Salam* and *Sims* maters pre-consolidation by the Pastor and Lite DePalma firms was unreasonable, or why it shouldn't be compensated. As such, Plaintiffs should be awarded attorneys fees for the work expended in the *Salam* and *Sims* matters.

## IV.  Hangtime's Final Argument that its Financial Condition Should Somehow Play a Part in Limiting the Fees requested by Class Counsel is Simply Odd.

Finally, Hangtime makes a last minute plea to the Court to reduce the requested fees because of its poor financial condition.  If nothing else, Hangtime has been consistent, since this argument also comes without any support. The simple fact is, Hangtime's financial condition should play no part in assessing the reasonableness of the fees requested. And, unfortunately for Hangtime, it utterly fails to explain why it should. The Court should therefore reject that argument as well.

## V.  Goodman and Sims Are Entitled To Their Requested Incentive Awards

Hangtime argues that Plaintiffs' incentive awards should be reduced to $1,500 each[4] because this is the maximum amount they could recover under the TCPA. Strangely, to support its position, Hangtime points to the fourth case that was filed against them, which was apparently

---

[4]  Hangtime erroneously stated that each Plaintiff is seeking $3,000 each as an incentive award, when in fact Goodman and Sims are each seeking $4,000 each. (Dkt. 116 at 2.)

settled on an individual basis, where the plaintiff recovered $1,500 on account of his individual claim. According to Hangtime, that individual recovery should serve as the benchmark for what the two named-plaintiffs should get here. The argument misunderstands the purpose of incentive awards in class actions, and the legion of case law that supports the awards sought here, which Plaintiffs set out in their opening brief, and Hangtime completely ignored in its response.

It is well-established that incentive awards are not meant as a means to make a class representative "whole," or to compensate them for their individual claims, but rather to reward them for the time and effort they expended serving as the class representative, *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998), and to encourage others to do the same in the future, *GMAC Mortg. Corp. of Pa. v. Stapleton*, 236 Ill. App. 3d 486, 497 (1st Dist. 1992).

Here, the awards sought fulfill these policy objectives, and are entirely justified, given what the Plaintiffs faced in this case. As set forth in Plaintiffs' fee petition, both Goodman and Sims contributed their own time and effort in pursuing both their individual claims and the class claims, and exhibited a willingness to participate and undertake the responsibilities and risks attendant with bringing a representative action. (Dkt. 116 at 32.) In fact, Plaintiffs spent many hours assisting in discovery responses and sitting for their depositions. (*Id.*) As such, they are both entitled to reasonable incentive awards for their efforts, and the $4,000 per plaintiff request falls squarely in line with incentive awards approved in other class action litigation. (*Id.*)

## VI.    CONCLUSION

For these reasons, and those stated in Plaintiffs' Motion for Approval of Award of Attorneys' Fees, Expenses, and Incentive Awards, this Court should grant Plaintiffs motion in full.

Respectfully submitted:

Dated: September 21, 2015

**ZACHARY GOODMAN** and
**DERRICK SIMS**, individually and on
behalf of all others similarly situated.

By: /s/ Ari J. Scharg
*One of Plaintiffs' Attorneys*

Rafey S. Balabanian
rbalabanian@edelson.com
Ari J. Scharg
ascharg@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

David Pastor*
dpastor@pastorlawoffice.com
PASTOR LAW OFFICE, LLP
63 Atlantic Avenue, 3rd Floor
Boston, Massachusetts 02110
Tel: 617.742.9700
Fax: 617.742.9201
*Admitted Pro Hac Vice*

*Settlement Class Counsel*

Katrina Carroll
kcarroll@litedepalma.com
Kyle Shamberg
kshamberg@litedepalma.com
LITE DEPALMA GREENBERG, LLC
One South Dearborn, Suite 1200
Chicago, Illinois 60603
Tel: 312.212.4383
Fax: 312.212.5919

*Liaison Counsel*

## CERTIFICATE OF SERVICE

I, Ari J. Scharg, an attorney, hereby certify that on September 21, 2015, I served the above and foregoing ***Plaintiffs' Reply In Support of Their Motion For Approval of Attorneys' Fees, Expenses, and Incentive Awards,*** by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this 21st day of September 2015.

/s/ Ari J. Scharg